UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WESTERNGECO, § | |
| § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 09-cv-1827 |
| § | |
| ION GEOPHYSICAL CORP., § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiff WesternGeco's Motion to Dismiss Defendant Ion Geophyisical Corp.'s ("Ion") breach of contract and conversion counterclaims (Doc. No. 12), and Ion's Motion to Dismiss WesternGeco's inequitable conduct claims (Doc. No. 20). For the following reasons, WesternGeco's Motion must be granted, and Ion's Motion must be denied.

I.  BACKGROUND

This is a patent case involving marine seismic streamer technology that is towed behind ships. These streamers use acoustic signals and sensors to create three-dimensional maps of the subsurface of the ocean floor to facilitate natural resource exploration and management. For many seismic studies, it is important that the streamers be located at a specific depth and lateral position with respect to one another.[1]

In 1993, Geco, the predecessor to WesternGeco, began developing a positioning device—or "bird"—with two wings, in which the wing angles were controlled independently to allow the bird to adjust the streamer's vertical and horizontal positions.

---

[1] This summary of the technology was generated from Westergeco's and Ion's briefs, Doc. Nos. 13, 16, 23, and 26.

1

(Pl. Brief, Doc. No. 13, at 4.) In April of 1995, Geco and DigiCOURSE, Inc., the predecessor to Ion, entered into a Confidentiality Disclosure Agreement ("Agreement"), the purpose of which was to protect discussions and disclosures between the parties concerning steamer positioning technology. Following that agreement, Bittleston, one of the named inventors in four of the patents asserted against Ion in this case, met with employees of DigiCOURSE. Bittleston was shown working prototypes of new lateral streamer steering devices which were being developed by DigiCOURSE. One such prototype used a two-winged bird, the winds of which could be independently adjusted to control the streamer. Ion believes that Geco did not have an operational streamer steering device with these capabilities at the time of the meeting. (Def. Answer, Doc. No. 6, ¶ 93.)

Following the meetings with DigiCOURSE, Bittleston requested an operational model of the steering device. Believing that the Agreement protected such disclosures, DigiCOURSE sent him the model near the end of 1995. (Def. Resp., Doc No. 16, ¶ 9.) The model was never returned to DigiCOURSE. On September 22, 1995, prior to sending the prototype to Bittleston in late 1995, Ion filed a provisional patent application that resulted in the U.S. Patent No. 6,525,992 ("992 Patent"), issued in February of 2003.

In 1999, Simon Bittleston filed an international patent application under the Patent Cooperation Treaty ("PCT"), disclosing the use of the wings and supporting systems to control the geometry of the streamer array in order to ensure proper collection of seismic data. This patent application was published in April of 2000. Ion asserts that, in this application, Bittleston improperly used information gained from the confidential meetings with DigiCOURSE and the prototype that was later sent to him. (Def. Resp., Doc. No. 16, ¶ 10). Bittleston's first patent, U.S. Patent No. 6,932,017 ("017 Patent"),

was ultimately issued in August of 2005. Ion contends that it did not learn of Bittleston's breach of the Agreement until after the publication of the 017 Patent. (*Id.*) Ion further believes that WesternGeco continued to incorporate more of Ion's confidential information in its later-filed patents. (*Id.*)

WesternGeco brings this suit for patent infringement against Ion, claiming infringement of five patents, four of which name Bittleston as the inventor: the 017 Patent, U.S. Patent Nos. 6,691,038 ("038 Patent"), 7,080,607 ("607 Patent"), 7,162,967 ("967 Patent"), and 7,293,520 ("520 Patent"). In its Answer, Ion asserts, *inter alia*, counterclaims for breach of contract and conversion. WesternGeco now moves to dismiss these counterclaims for failure to state claims upon which relief can be granted. Ion also asserts a counterclaim against WesternGeco for breach of the 992 patent. In its response to this counterclaim, WesternGeco asserts inequitable conduct on the part of Ion in its proceedings before the United States Patent and Trademark Office ("PTO"). Ion now moves to dismiss the inequitable conduct claims as insufficiently pled.

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the [non-moving party]." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

II. **JUDICIAL NOTICE**

WesternGeco alleges that publicly available documents from 1993 and early 1995, including PTO records and a paper written by Brittleston and others, prove that WesternGeco invented a seismic streamer positioning device with two independent wings

3

prior to any of its meetings with Ion. WesternGeco argues that this Court should take judicial notice of this fact, and thereby dismiss Ion's counterclaims for breach of the Agreement and conversion as directly contradictory. Ion argues that, while it is proper for the Court to take judicial notice of the existence of a public record, it is improper to take judicial notice of dispositive issues based on conclusions drawn from that record—here, the dispositive issue is inventorship.

WesternGeco is correct that the court need not accept allegations that contradict matters properly subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). However, under Rule 201(b) "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. CIV. P. 201(b).

WesternGeco asks the Court to take judicial notice of the fact that "WesternGeco invented a seismic streamer positioning device with two independent wings prior to any meetings with Ion." (Pl. Brief, Doc. No. 13, at 8). Ion is correct that this form of judicial notice would be improper. The issue of inventorship in this case is not one generally known or capable of accurate and ready determination. In fact, it is the precise issue over which the parties are now in dispute. Were this Court asked to take notice of the existence of the public documents, it may have done so. Here, however, WesternGeco asks the Court to take notice of its interpretations of the contents of the documents. Findings, conclusions, disputed facts, and unverified data are inappropriate materials for judicial notice. *See In re Cyberonics Inc. Securities Litigation*, 2006 WL 2050696, at *3

(S.D. Tex. 2006). Thus, the Court declines to take notice of WesternGeco's conclusions on the basis of which it seeks to dismiss Ion's breach of contract claim.

## III. CONVERSION OF INTELLECTUAL PROPERTY

WesternGeco asserts that Ion's conversion claim should be dismissed because it is improperly based on intellectual property. Texas conversion law concerns only physical property. *Carson v. Dynergy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003) (citing *Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971)). In *Carson*, the court was careful distinguish between intellectual and physical property in the context of a conversion claim. There, the court found that the allegation that the defendant wrongfully withheld a Microsoft Excel worksheet in its tangible form was a conversion allegation involving physical property, whereas the allegation that defendant wrongfully withheld income generated from the use of the worksheet involved intellectual property rights. *Id.* at 456. The court concluded that the withholding of income claim, which involved only intellectual property, was outside the scope of Texas conversion law and preempted by federal copyright laws. *Id.* In order to crystallize the distinction between the two types of property, the court used this analogy: although a party may own the intellectual property rights to a novel, this would not give that party the right to walk into a bookstore and steal a copy of that book. *Id.* at 457 n.12.

However, courts have recognized that intangible intellectual property can be reduced to tangible forms which are thereby subject to conversion. *See Neles-Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979, 982 (S.D. Tex. 1997) (finding that "[a]lthough Texas law may recognize conversion of intangible property, this new development is limited to cases 'where the underlying intangible right has been merged into a

document'")(citing *Pebble Beach Co. v. Tour 18 I. Ltd.*, 942 F. Supp. 1513, 1569 (S.D. Tex. 1996)); *Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex. 1982) (finding that "[t]he conversion of the document in which the rights had been merged supports a conversion action for the value of the rights represented by it" in the context of alleged conversion of a lease). Thus, this Court must determine whether Ion's allegation states a claim for conversion of Ion's intellectual property, such that the claims must be dismissed, or conversion of an actual item in its tangible form.

Ion's counterclaim for conversion alleges that "Geco misappropriated this information and technology [related to seismic streamers] and has illegally profited from it." (Def. Answer, Doc. No. 8, ¶ 96.) Although Ion mentions that Bittleston took possession of a prototype after his meetings with DigiCOURSE, Ion consistently alleges throughout its counterclaims that WesternGeco unlawfully used DigiCOURSE "information" and "technology." (Def. Answer, Doc No. 6, ¶¶ 94--96.) In using this terminology, this Court finds that Ion alleges the misappropriation of intangible intellectual property, not physical property. The crux of Ion's complaint is not that WesternGeco stole its prototype or unlawfully took ownership and control over it. Rather, Ion alleges that WesternGeco unlawfully used information gleaned from Ion's prototype in applying for its patents. This information falls squarely within the category of intellectual property. Furthermore, unlike in *Neles-Jamesbury* and *Prewitt*, the rights at issue in this case did not merge into the tangible prototype given to Bittleston. The prototype is only a model; the status of the allegedly infringed intellectual property rights remain unaffected by the status and possessor of the prototype itself. Thus, because

intellectual property is not subject to conversion under Texas law, Ion's conversion claim must be dismissed.

## IV. STATUTE OF LIMITATIONS

WesternGeco argues that Ion's breach of contract and conversion claims should be dismissed because they violate the applicable statute of limitations. A statute of limitations defense may be properly asserted in a Rule 12(b)(6) motion to dismiss. *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007). Texas imposes a four-year statute of limitations for breach of contract claims. TEX. CIV. PRAC. & REM. CODE § 16.004. Texas imposes a two-year statute of limitations on conversion claims. TEX. CIV. PRAC. & REM. CODE § 16.003. WesternGeco alleges that, because Ion's breach of contract claim and conversion claims are based on the alleged inclusion of Ion's information in the its patents, and Bittleston's first patent application was filed in 1999 and published in 2000, the alleged breach of contract and conversion occurred nine years ago, five years before the statute of limitations allows.

However, the "discovery rule" operates to toll the statute of limitations. In Texas, the discovery rule is generally permitted "in those cases where the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assocs. Int'l., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). Furthermore, when applicable, the discovery rule "only defers accrual of the cause of action until the plaintiff knew, or should have known through the exercise of reasonable diligence, of the facts giving rise to the cause of action." *Lang v. Nacogdoches*, 942 S.W.2d 752, 758 (Tex. App.—Tyler 1997, pet. denied).

As to the breach of contract claim, the parties disagree sharply as to the point in time from which the statute of limitations should be measured. WesternGeco asserts that the discovery rule is not applicable to this case, and that limitations period should begin to run in 1999, when Bittleston initially applied for his patents in alleged breach of the Agreement. Alternatively, WesternGeco avers that the discovery rule would toll the limitations period only until 2000, when Bittleston's first patent application was published, giving Ion constructive notice of the technology claimed by WesternGeco. Ion asserts that the limitations period should be tolled until August 2005, which marks the issuance and recordation of the first of the WesternGeco patents at issue in this case. Ion further states that, because Bittleston's PCT patent application was published only in Europe in 2000, it cannot be charged with constructive knowledge of its existence at that time.

A person is charged with constructive notice of the actual knowledge that could have been acquired by examining public records. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981). The issuance of a patent and its recordation in the PTO constitutes notice to the world of its existence. *Sontag Chain Stores Co. v. Nat'l Nut Co. of Cal.*, 310 U.S. 281, 295 (1940); *Wine Railway Appliance Co. v. Enter. Ry Equip. Co.*, 297 U.S. 387, 393 (1936); *Sessions v. Romadka*, 145 U.S. 29, 50 (1892).

This Court does not find that Ion can be charged with notice of the alleged breach of contract in 1999, when Bittleston filed his first patent application. At this time, Ion had no way of knowing the contents of the application or even of its existence. Given that the nature of the alleged breach is disclosure of confidential information, it would be

8

unreasonable to assume that Ion would or could have known of the contractual breach at the moment that it was allegedly committed.

The more difficult question is whether the publication of the PCT patent application in 2000 constitutes constructive notice of the breach such that the limitations clock resumed at that time. This Court holds that it does. Upon publication of Bittleston's PCT patent application, the technology claimed by WesternGeco was no longer "inherently undiscoverable." *Computer Assocs.*, 918 S.W.2d at 456. Ion, formerly DigiCOURSE, as a company involved in developing and researching marine seismic technology, has a strong interest in learning about international progress and developments in this area. Thus, it is not unreasonable to expect that Ion would examine the public records published under the PCT to determine what its colleagues around the world are inventing and accomplishing. In the same way that the issuance of a patent by the PTO constitutes notice to the entire world of its existence, regardless of whether other persons take it upon themselves to examine the records, so too, by extension, do the applications published under the PCT constitute notice to the world of their existence, that is, notice of the specific technologies to which the applicants lay claim. *Cf. Sontag Chain Stores Co. v. Nat'l Nut Co. of Cal.*, 310 U.S. 281, 295 (1940) (holding that all the world is chargeable with constructive notice of existence of recorded patents); *Wise v. Hubbard*, 769 F.2d 1, 2 (1st Cir. 1985) (recognizing that the "issuance of a patent and its recordation in the Patent Office constitutes notice to the world of its existence"). This is particularly so since the PCT application at issue here lists the U.S. as one of its Designated States, presumably indicating that this country has an active interest in PCT proceedings. (Lee L. Kaplan Aff., Ex. 1.)

Therefore, because it finds that Ion had constructive notice of WesternGeco's alleged breach of contract nine years ago through the published PCT patent application, this Court holds that this claim is barred by the four-year statute of limitations. As the Court has already found that Ion's conversion claim should be dismissed as improperly alleging the conversion of intellectual property, it finds it unnecessary to address the statute of limitations issue as to that claim.

## V. INEQUITABLE CONDUCT

Ion asserts that WesternGeco's inequitable conduct claims should be dismissed for failure to sufficiently allege a claim upon which relief can be granted. Generally, to survive a Rule 12(b)(6) motion to dismiss, a complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, Ion argues that, in alleging inequitable conduct on the part of Ion, WesternGeco should be held to the heightened pleading standard defined in Federal Rule of Civil Procedure 9(b).

### A. Heightened Pleading Standard Under 9(b)

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of the mind of a person may be averred generally." FED. R. CIV. P. 9(b). The Federal Circuit has now made it abundantly clear that pleading inequitable conduct on patent cases requires a particularized pleading, holding that in such cases "Rule 9(b) requires identification of specific who, when, where, and how of the material

misrepresentation or omission committed before the [PTO]" and that "[a] pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Exergen Corp. v. Walmart Stores, Inc.*, --- F.3d ---, Nos. 2006-1491, 2007-1180, 2009 WL 2366535, at *11 (Fed. Cir. August 4, 2009); *see also Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347 (Fed. Cir. 2007); *Ferguson Beuregard/Logic Controls v. Mega Sys.*, 350 F.3d 1327, 1344 (Fed. Cir. 2003); *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008 (CCPA 1981). Thus, the heightened pleading requirements of Rule 9(b) apply to the allegations of misconduct at issue here. This Court must therefore determine whether WesternGeco's allegations meet this heightened pleading requirement.

### B. Analysis

Here, WesternGeco alleges that the 992 patent is unenforceable due to inequitable conduct before the PTO. (Pl. Answer, Doc. No. 14, ¶ 140.) According to WesternGeco, Ion had actual or constructive knowledge of a paper authored by Simon Bittleston in which he discloses an idea for positioning devices for steering streamers. (*Id.* ¶ 148.) WesternGeco further alleges that over the course of the 1995 meetings between Geco and DigiCOURSE, Bittleston disclosed information to DigiCOURSE that represents prior art to, or inventorship of, the subject matter of the 992 patents. (*Id.* ¶ 150.) Ion failed to disclose this prior art or Bittleston as a co-inventor of the subject matter claimed by the 992 patent to the PTO. (*Id.* ¶ 151.) A reasonable patent examiner would have found this information highly material to the patentability of the 992 patent claims. (*Id.* ¶ 152.)

Ion argues that these allegations are insufficient because they fail to indicate actual knowledge of prior art and to identify what contributions the unnamed inventors provided to the 992 patent. As to the first deficiency, this Court finds Ion's arguments are without merit. WesternGeco alleges that Ion had actual or constructive knowledge of the paper authored by Bittleston; however, it also clearly alleges that Ion had actual knowledge of the disclosures made during the 1995 meetings involving Geco and DigiCOURSE. According to Westergeco, Ion had knowledge of Bittleston's technology as a result of the discussions that took place at these meetings. As to the second asserted deficiency, WesternGeco lays out the prior art purportedly invented by Bittleston by attaching his papers to its response to Ion's counterclaims. (Pl. Answer, Doc. No. 14, Exs. 2-3.) This is an explicit identification and description of some or all of the prior art of which WesternGeco claims Ion had knowledge prior to filing the 992 Patent application. Therefore, Ion's second objection to WesternGeco's pleadings also fail.

As required by the Federal Circuit in *Exergen*, WesternGeco's pleading adequately set for the "who, what, when, where, and how" of Ion's inequitable conduct. The heightened pleading requirements of Rule 9(b) do not require that WesternGeco definitively prove the merits of its claim. What is determinative here is that Ion was given fair notice of the basis for WesternGeco's inequitable conduct defense. The Court also notes that WesternGeco's inequitable conduct claims go to the heart of the issue disputed in this case—namely inventorship of the technology at issue. The Court therefore finds Ion's assertions that it has been inadequately informed of the basis of WesternGeco claims that Ion acted unlawfully before the PTO somewhat disingenuous. Therefore,

Ion's Motion to Dismiss and strike WesternGeco's inequitable conduct counterclaim and defense is denied.

## IV.  CONCLUSION

For the reasons stated above, WesternGeco's Motion (Doc. No. 12) must be granted, and Ion's Motion (Doc. No. 20) must be denied.

**IT IS SO ORDERED.**

SIGNED this 28th day of October, 2009.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE