UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTERNGECO, L.L.C. | § | |
| | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CIVIL ACTION NO. |
| | § | 4:09-CV-01827 |
| ION GEOPHYSICAL CORPORATION | § | |
| | § | |
| DEFENDANT | § | |

**NON-PARTY KONGSBERG MARITIME, INC.'S MOTION TO MODIFY AND ITS OBJECTIONS AND RESPONSE TO PLAINTIFF, WESTERNGECO, L.L.C.'S SUBPOENA**

Non-party Kongsberg Maritime, Inc. ("KMI") files this Motion to Modify pursuant to Federal Rule of Civil Procedure 45 and also files its Objections and Response to the subpoena served upon it by Plaintiff, WesternGeco, L.L.C. ("WesternGeco").

**I.**
**SUMMARY OF MOTION**

1.      Through its subpoena directed to KMI, Plaintiff seeks documents that it believes to be in the possession, custody or control of KMI's parent or affiliates. KMI has produced all responsive documents to the subpoena in its possession, custody or control. KMI has no specific knowledge of whether its parent or affiliated entities, many of which are located outside the United States, have any responsive documents in their custody or possession. Nevertheless, out of an abundance of caution, KMI files this motion to modify and requests that the Court limit the scope of the subpoena to include only those documents that are in KMI's possession, custody or control. Additionally, KMI files its objections and response to the subpoena.

## II.
### BACKGROUND

2. On or about November 13, 2009, WesternGeco served a subpoena (the "Subpoena") on KMI. A true and correct copy of the Subpoena is attached hereto as Exhibit A. The Subpoena requested the production of documents and things on December 14, 2009. Subsequently, on November 20, 2009, WesternGeco stipulated to an extension of time for the Subpoena, extending the time for any response until December 27, 2009. A true and correct copy of the stipulation is attached hereto as Exhibit B. In general terms, the Subpoena seeks documents pertaining to the following: (1) KMI's relationship with ION Geophysical Corporation ("ION"), (2) "Streamer Control Devices" used in monitoring and controlling any towed seismic streamer, and (3) "birds," which are used for positioning of seismic streamers. *See* Exhibit A. KMI has determined that it only has two (2) pages of responsive documents in its possession, custody or control. *See* Declaration of Jan Roger Hellerud, President of KMI, attached hereto as Exhibit C at ¶ 5.

3. Definition No. 1 of Schedule A to the Subpoena states:

> As used herein, "Kongsberg" means Kongsberg Maritime, Inc. and all its predecessors (merged, acquired, or otherwise), successors, subsidiaries, parents, sisters, partnerships and affiliates thereof (including, but not limited to, Kongsberg Maritimes, Kongsberg Maritime AS, Kongsberg Maritime Engineering, Kongsberg Maritime Simulations, Inc., Kongsberg Underwater Technology, Inc., Kongsberg Simrad, Inc, Texas KSI, Inc., GlobalSian, Inc., and Hydroid Inc.), and all directors, officers, agents, employees, attorneys and other persons acting on their behalf.

KMI is a wholly-owned subsidiary of Simrad North America, Inc., which is a Delaware corporation. *See* Exhibit C at ¶ 4. Simrad North America, Inc., in turn, is wholly-owned by Kongsberg Maritime AS, a Norwegian entity. *Id.* Kongsberg Maritime, AS, in turn, is wholly-

2

owned by Kongsberg Gruppen ASA ("KONGSBERG"). *Id.* KONGSBERG is a public limited liability company headquartered in Kongsberg, Norway. *Id.* KONGSBERG'S shares are traded on the Oslo Stock Exchange. *Id.*

5. As listed in the 2008 financials of KONGSBERG, which are available on the internet at www.kongsberg.com, other entities within the KONGSBERG group that are located in the United States include Kongsberg Maritime Simulation, Ltd.; Simrad North America, Inc.; Kongsberg Underwater Technology, Inc.; Kongsberg Defense Corporation, Inc.; Kongsberg Process Simulation, Inc.; Kongsberg Intellifield, LLC; Geo Acoustics, Inc.; Seaflex Riser Technology, Inc.; GlobalSim, Inc; and Hydroid, Inc (collectively the "Subsidiaries"). *Id.* at ¶ 6.

6. KMI has never had any business dealings with ION. *Id.* at ¶ 15. Other than the datasheet KMI has produced in response to the Subpoena, KMI does not have possession, custody or control over any other information pertaining to "Streamer Control Devices" or "Birds" as defined in the Subpoena. *Id.* at ¶¶ 16-17.

### III.
### MOTION TO MODIFY SUBPOENA PURSUANT TO FRCP 45

7. Pursuant to FRCP 45(c)(3)(A)(iv), on a timely filed motion, the issuing court must quash or modify a subpoena that subjects a person to undue burden. Under Rule 45, a court can only command production of documents in a party's "possession, custody, and control." *Goh v. Baldor Electric Co.*, No. 3:98-MC-064-T, 1999 WL 20943 at *1 (N.D. Tex. 1999). Although, KMI has no specific knowledge of whether its foreign parent or affiliates have any documents responsive to the Subpoena, out of an abundance of caution and because Plaintiff has specifically identified KMI's foreign affiliates in the subpoena, KMI requests that the Court

3

modify the subpoena to include only those documents within the possession, custody or control of KMI.

8. "Neither the Federal Rules of Civil Procedure nor the Fifth Circuit offer clear, definitive guidance as to the appropriate definition of control." *Id.* at *2. When determining the sufficiency of control for discovery purposes, the nature of the relationship is the key. *Id.* "The relationship is determined on facts, therefore, [the] court must examine the facts of the case before it, in order to determine if the relationship is such that discovery is to be compelled." *Id.*

9. Here the facts indicate that KMI has only two (2) pages of responsive documents in its possession or custody. *See* Exhibit C at ¶ 5. Thus, the question before the Court is whether KMI has control over documents, if any, that may be in the possession or custody of its parent or foreign or domestic affiliates. In considering the issue, it is important to note that WesternGeco has the burden to prove that KMI's relationship with either its foreign parent or affiliates indicates control over the documents, should they even exist. *Goh.*, 1999 WL 20943 at *1.

10. A similar situation arose in *Goh*, where Plaintiffs served non-party Ernst and Young LLP with a subpoena duces tecum. *Id.* at 1. Ernest & Young produced responsive documents in its possession, but did not produce all requested documents claiming that such documents were prepared by and are in the possession of its foreign affiliates: Ernst & Young Singapore and Ernst & Young Thailand. *Id.* Plaintiffs subsequently filed a motion to compel seeking all responsive documents irrespective of the location of the documents. *Id.* Thus, the central question at issue before the court was "whether Ernst & Young LLP, a nonparty limited liability partnership can be compelled to produce documents allegedly possessed by Ernst & Young Singapore and Ernst & Young Thailand, also both nonparties." *Id.* In holding that Ernst

& Young LLP "does not manifest the legal right, authority, or ability to obtain the documents," the court recognized that each of the Ernst & Young entities were "members of a unified worldwide business entity, namely Ernst & Young International, Ltd., a Cayman Islands Limited Liability Company." *Id.* at 2. However, the evidence indicated that "Ernst & Young LLP, Ernst & Young Singapore, and Ernst & Young Thailand maintain separate revenues and have separate profit pools." *Id.* Additionally, each entity controls its own resources and holds different partners, members, and management. *Id.* at 3. Thus, the court denied plaintiffs' motion to compel. *Id.*

11. Here, KMI presents the following evidence related to its financial relationship with KONGSBERG and the Subsidiaries:

> KMI's financial affairs, including its financial resources and profit pools are maintained separate and apart from the financial affairs of Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG or the Subsidiaries. KMI has separate bank accounts and separate payrolls from Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG or the Subsidiaries. KMI pays the salaries of all of its officers and employees. KMI is solely responsible for paying all of the expenses of operating its business. *See* Exhibit C at ¶ 11.

and

> KMI prepares its own financial statements, which it sends to KONGSBERG for inclusion in KONGSBERG's consolidated financial statements. KMI has its own accounting department and Chief Financial Officer, and does its own billing. *See* Exhibit C at ¶ 7.

12. Moreover, Kongsberg presents the following evidence relating to KMI's operational independence:

5

> No officer or director of KMI holds a position of officer or director at Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG or the Subsidiaries. *See* Exhibit C at ¶ 12.
>
> KMI determines its own operation policies, including, for example its own policies for hiring personnel and approving credits, without interference or oversight by Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG or the Subsidiaries. KMI publishes its own policy, instruction, and employment manuals without prior review or approval of Simrad North America, Inc., Kongsberg Maritime AS and KONGSBERG. *See* Exhibit C at ¶ 10.
>
> KMI is a separate legal entity from each of Simrad North America, Inc., Kongsberg Maritime AS, and KONGSBERG. KMI has its own independent board of directors. KMI's board of directors holds formal board meetings approximately 1 time per year. KMI maintains its own books and records separately from those of Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG and the Subsidiaries. KMI prepares its own financial statements, which it sends to KONGSBERG for inclusion in KONGSBERG's consolidated financial statements. KMI has its own accounting department and Chief Financial Officer, and does its own billing. *See* Exhibit C at ¶ 7.

13. As such in accordance with the guidelines in *Goh*, KMI does not have "control" over any documents responsive to the Subpoena because (1) KMI and its foreign parent and affiliates maintain separate revenues and have separate profit pools, (2) KMI control its own resources and (3) KMI and its foreign parent and affiliates hold different partners, members, and management.

14. U.S. District Courts from other jurisdictions have come to similar rulings when evaluating the relationship of a non-party who had been subpoenaed, where the documents actually sought were in the possession and control of its parent company. In *Power Integrations, Inc. v. Fairchild Semiconducter Intl., Inc.*, the court granted a non-party's motion to quash the subpoena based on a lack of control over the subpoenaed documents. 233 F.R.D. 143 (Del.

2005). The question in *Power Integrations* was whether "a non-party, domestic subsidiary corporation is obligated to obtain documents from its foreign parent corporation in response to a subpoena served on the non-party subsidiary in the United States." *Id.* at 144. The court stated that "[a]lthough parent corporations have been required to produce documents held by their subsidiaries, the converse is not true." *Id.* "A subsidiary, by definition does not control its parent corporation." *Id*; *see also Linde v. Arab Bank, PLC,* No. CV-04-2799, 2009 WL 145673 at *3-4 (E.D.N.Y. 2009) (holding American subsidiary of foreign bank did not have control over its parent's documents, as required to support subpoena for their production.).

15.  In determining that the relationship between the non-party subsidiary and the non-party parent was not the type of relationship that would justify disregarding the discrete, corporate identity of the party who received the subpoena, the *Power Integrations* court recognized that (1) the two entities were separate legal entities; (2) had separate corporate places of incorporation; (3) functioned as separate entities in the business world; and (4) the subpoenaed entity did not use the information requested in the subpoena in the normal course of its business. *Id.* at 145-146.

16.  Here, the subpoenaed party, KMI is a Texas corporation with its principal place of business in Houston, Texas. *See* Exhibit C at ¶ 3. KMI's parent, Simrad North America, Inc, is a Delaware corporation that is wholly-owned by Kongsberg Maritime AS, a Norwegian entity. *See* Exhibit C at ¶ 4. Kongsberg Maritime, AS, in turn, is wholly-owned by KONGSBERG. *Id.* KONGSBERG is a public limited liability company headquartered in Kongsberg, Norway. *Id.* Thus, the first two prongs of the test used in *Power Integrations* are satisfied as KMI and KONGSBERG are separate legal entities, and have separate corporate places of incorporation.

17. KMI presents the following evidence that it functions as a separate business entity from either KONGSBERG or the Subsidiaries:

    a.     KMI has a separate and independent board of directors:

KMI is a separate legal entity from each of Simrad North America, Inc., Kongsberg Maritime AS, and KONGSBERG. KMI has its own independent board of directors. KMI's board of directors holds formal board meetings approximately 1 time per year. *See* Exhibit C at ¶ 7.

    b.     KMI maintains separate books and records:

KMI maintains its own books and records separately from those of Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG and the Subsidiaries. *See* Exhibit C at ¶ 7.

    c.     KMI does not share employees or office space: Specifically:

KMI is a separate legal entity from all of the Subsidiaries. None of the Subsidiaries or their employees report directly to KMI. No KMI employee reports directly to any of the Subsidiaries. KMI is not involved in the day-to-day operations of the Subsidiaries. KMI's financial statements are prepared separately from those of any of the Subsidiaries. KMI does not share any employees with the Subsidiaries. KMI does not share office space with any of the Subsidiaries, except that it does sublet some office space to Seaflex Riser Technology, Inc. and Kongsberg Underwater Technology, Inc. KMI and the Subsidiaries do not have regular contact regarding product sales and marketing. KMI does not regularly request input from any of the Subsidiaries as to KMI's product sales. KMI does not regularly share confidential customer information with any of the Subsidiaries. KMI does not share information regarding confidential transactions with any of the Subsidiaries. KMI maintains separate customer files from those of the Subsidiaries. KMI does not regularly share its customer files with the Subsidiaries. *See* Exhibit C at ¶ 8.

    d.     KMI pays for all of its own advertising:

KMI pays all of its own advertising expenses. *See* Exhibit C at ¶ 9.

8

e.  KMI maintains separate customer files:

KMI maintains separate customer files from those of Simrad North America, Inc., Kongsberg Maritime AS and KONGSBERG. KMI does not regularly share confidential customer information or transactions with Simrad North America, Inc., Kongsberg Maritime AS or KONGSBERG. *See* Exhibit C at ¶ 9.

f.  KMI is in control of its operational policies:

KMI determines its own operation policies, including, for example its own policies for hiring personnel and approving credits, without interference or oversight by Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG or the Subsidiaries. KMI publishes its own policy, instruction, and employment manuals without prior review or approval of Simrad North America, Inc., Kongsberg Maritime AS and KONGSBERG. *See* Exhibit C at ¶ 10.

g.  KMI maintains a separate telephone system:

KMI has a separate telephone system from Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG and the Subsidiaries. KMI does not have the ability to transfer a phone call internally from KMI's system to Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG and the Subsidiaries. *See* Exhibit C at ¶ 13.

h.  KMI maintains a separate computer system:

KMI has a separate computer system from Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG and the Subsidiaries. KMI does not have access to the email accounts belonging to employees of Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG and the Subsidiaries. KMI cannot monitor the internet access of employees of Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG or the Subsidiaries. KMI does not have general access to information or documents of any of Simrad North America, Inc., Kongsberg Maritime AS, KONGSBERG or the Subsidiaries. While KMI does have limited electronic access to certain invoicing and inventory information and documents of Kongsberg Maritime AS, the extent and scope of such access is controlled by Kongsberg Maritime AS and not KMI. *See* Exhibit C at ¶ 14.

18. Finally, KMI did not use the information requested in the subpoena in the normal course of its business.

> Other than the datasheet attached as Exhibit A, KMI does not have possession, custody or control over any other information pertaining to Streamer Control Devices as defined in the Subpoena. *See* Exhibit C at ¶ 16.
>
> Other than the datasheet attached as Exhibit A, KMI does not maintain any documents or information requested in the subpoena in the normal course of its business. KMI does not possess or maintain any documents that it acquired from, or that could be attributed to ION. KMI does not possess or maintain any documents pertaining to Streamer Control Devices. Other than the datasheet attached as Exhibit A, KMI does not maintain any document or information pertaining to the eBird. *See* Exhibit C at ¶ 17.

19. Notably and as a practical matter, "KMI has never had any business dealings with ION Geophysical Corporation ("ION"), and does not have possession, custody or control over information pertaining to ION or any products or services." *See* Exhibit C at ¶ 15.

20. Interestingly, the *Power Integrations* court noted that a party seeking documents from a foreign entity has alternate methods of obtaining the desired documents. *Id*. at 146. Namely, it could apply the processes of the Hague Convention to subpoena the documents from the foreign entity that maintained the documents. It would seem that WesternGeco also is attempting to short-cut the applicable provisions of the Hague Convention by issuing a subpoena to the American subsidiary of a non-party. This legal maneuver is not allowed under the law and these facts, and, as such the Court should modify the subpoena pursuant to Federal Rule of Civil Procedure 45 to apply solely to KMI.

## IV.
### OBJECTIONS AND RESPONSE TO SUBPOENA

21. In the unlikely event that the Court denies KMI's Motion to Modify the Subpoena, KMI files the following objections and response to the Subpoena.

### A. General Objections to The Subpoena

22. In the unlikely event that the Court denies KMI's Motion to Modify the Subpoena, KMI files the following objection and response to the Subpoena. Kongsberg Maritime, Inc. ("KMI") objects to the instructions and definitions as follows:

1. KMI objects to the Definitions and Instructions as overly broad to the extent they are not limited to KMI or otherwise to documents or other responsive materials in its current possession or control.

2. KMI objects to the Definitions and Instructions as overly broad and unduly burdensome to the extent they are not limited to the products accused of infringing the patent claims identified in Subpoena Instructions 5(A)-(E) or otherwise to birds or corresponding control systems offered for sale or sold by KMI to ION Geophysical Corporation ("ION") or purchased by KMI from ION.

3. KMI objects to the Definitions and Instructions to the extent they are not limited to the U.S. and its territories.

4. KMI objects to the Instruction nos. 5, 6 and 15 as overly broad and unduly burdensome to the extent they require KMI to produce documents that may be relevant to claims made by WesternGeco in the future.

5. KMI objects to the Instruction nos. 2, 3 and 6 as vague and ambiguous to the extent they refer to products or information that are not within the possession of KMI.

6. KMI objects to the production of confidential or proprietary information absent the entry of a suitable protective order.

7. KMI objects to the definition of "related to" as ambiguous.

8. KMI objects to these requests for production to the extent that they purport to impose a different or greater burden on Smith in responding than is allowed or required by the Federal Rules of Civil Procedure. To the extent that KMI is required to respond to these requests for production, it is only required by the

11

Federal Rules of Civil Procedure to search for and produce responsive documents within its possession, custody, and control. To the extent that these requests for production seek to impose a greater burden in searching for or producing responsive information or documents, KMI objects on the ground that the request for production is unduly burdensome.

**B. Specific Objections to The Subpoena**

23.     KMI asserts the following objections to the category of documents specifically requested in the Subpoena.

1. Documents sufficient to show the quantity and type of all Streamer Control Devices (including the manufacturer, trade name, model, number, part number, catalog number, and each other designation known to KMI) made, used, licensed, distributed, supplied, purchased, sold, or offered for sale by Kongsberg, including but not limited to any ION Accused Product, on a monthly basis since February 25, 2003 (in electronic form to the extent such electronic files exist), whether made, used, licensed, distributed, supplied, purchased, sold, or offered for sale separately or as part of any other product or service.

    Objections and Response:

    KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited to the U.S. territory, is otherwise not limited to the products accused of infringing the presently asserted patent claims. In addition, the term "ION Accused Product" is ambiguous and otherwise overly broad.

2. All documents related to Kongsberg's purchase, use, operation, and/or offer for sale of any ION Accused Product, including but not limited to DigiBIRD, DigiFIN, and ORCA, and systems or services incorporating or including any or all of these products.

    Objections and Response:

    KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited in time, is not limited to the U.S. territory, and seeks the production of documents available from ION. In addition, the terms "related to" and "ION Accused Product" are ambiguous and otherwise overly broad.

3. All communications between Kongsberg and ION relating to DigiBIRD, DigiFIN, ORCA or any other Streamer Control Device or Bird.

Objections and Response:

KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited to the U.S. territory, is not limited in time, is otherwise not limited to the products accused of infringing the presently asserted patent claims or otherwise to products sold or offered for sale by KMI to ION, and seeks the production of documents available from ION.

4. All documents related to bids, tenders, requests for proposals, or offers for sale Kongsberg has received, transmitted, solicited or responded to which include or relate to Streamer Control Devices, including but not limited to any ION Accused Product.

Objections and Response:

KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited to the U.S. territory, is not limited in time, is otherwise not limited to the products accused of infringing the presently asserted patent claims or otherwise to products sold or offered for sale by KMI to ION, and seeks the production of documents available from ION. In addition, the terms "related to" and "ION Accused Product" are ambiguous and otherwise overly broad.

5. All documents relating to the benefits, advantages, value, or importance of Streamer Control Devices, both in general and as relating to any specific Streamer Control Device.

Objections and Response:

KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited to the U.S. territory, is not limited in time, and is otherwise not limited to the products accused of infringing the presently asserted patent claims or otherwise to products sold or offered for sale by KMI to ION. In addition, the term "relating to" is ambiguous and otherwise overly broad.

6. All documents relating to the benefits, disadvantages, value, or importance of purchasing or not purchasing any products or services from ION, including but not limited to Streamer Control Devices.

Objections and Response:

KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited to the U.S. territory, is not limited in time, is otherwise not limited to the products accused of

infringing the presently asserted patent claims or otherwise to products sold or offered for sale by KMI to ION, and seeks the production of documents available from ION. In addition, the term "relating to" is ambiguous and otherwise overly broad.

7. All documents, including but not limited to studies and tests conducted by Kongsberg, regarding the benefits and deficiencies of any Streamer Control Device, including but not limited to any ION product.

Objections and Response:

KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited to the U.S. territory, is not limited in time, is otherwise not limited to the products accused of infringing the presently asserted patent claims or otherwise to products sold or offered for sale by KMI to ION, and seeks the production of documents available from ION. In addition, the terms "relating to" and "any ION product" are ambiguous and otherwise overly broad.

8. All documents relating to the benefits, advantages, value, or importance of any ION products, including but not limited to Streamer Control Devices, used, licensed, purchased, sold, or offered for sale by Kongsberg.

Objections and Response:

KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited to the U.S. territory, is not limited in time, is otherwise not limited to the products accused of infringing the presently asserted patent claims or otherwise to products sold or offered for sale by KMI to ION, and seeks the production of documents available from ION. In addition, the terms "relating to" and "any ION product" are ambiguous and otherwise overly broad.

9. All documents related to Kongsberg's past, present, or future market share for seismic surveys, including but not limited to those including or involving Streamer Control Devices.

Objections and Response:

KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited to the U.S. territory, is not limited in time, is not limited to the market identified in ION's antitrust counterclaims or otherwise to the market for the technology of the patent that are the subject thereof. In addition, the terms "related to" and "seismic surveys, including but

not limited to those including or involving Streamer Control Devices" are vague and ambiguous.

10. All documents sufficient to identify all Kongsberg competitors with respect to seismic surveys, including but not limited to those involving Streamer Control Devices.

Objections and Response:

KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited to the U.S. territory, is not limited in time, is not limited to the market identified in ION's antitrust counterclaims or otherwise to the market for the technology of the presently asserted patent claims that are the subject of those counterclaims. In addition, the terms "all documents sufficient to identify" and "seismic surveys, including but not limited to those including or involving Streamer Control Devices" are vague, ambiguous and/or incomprehensible.

11. All documents relating to the development, design, operation or function, or proposed development, design, operation or function, or proposed development, design, operation or function, of any Streamer Control Device by WesternGeco, WesternGeco L.L.C., Geco A.S. or Geco-Prakla, by Kongsberg, or by any combination or collaboration between any of the aforementioned entities, including but not limited to documents relating to activities occurring from 1992-1999.

Objections and Response:

KMI objects to this request as overly broad and unduly burdensome to the extent that it is not limited to documents in KMI's current possession or control, is not limited to the U.S. territory, is otherwise not limited to the documents that may be considered prior art to the presently asserted patent claims, and seeks the production of documents available from the parties, their affiliates or any entity other than KMI. In addition, the terms "relating to" and "by any combination or collaboration between any of the aforementioned entities" are ambiguous and otherwise overly broad.

**PRAYER**

WHEREFORE, Kongsberg Maritime, Inc. prays that Plaintiff WesternGeco, L.L.C.'s subpoena be modified and for such other and further relief, general or special, at law or in equity, to which it is entitled.

15

        Respectfully submitted,

        GARDERE WYNNE SEWELL, LLP

By:   /s/ Peter Scaff
      Peter Scaff
      Texas Bar No.: 24027837
      1000 Louisiana, Suite 3400
      Houston, Texas 77002-5011
      713.276.5500 Telephone
      713.276.5555 Facsimile
      ATTORNEY IN CHARGE FOR NONPARTY
      KONGSBERG MARITIME, INC.

OF COUNSEL:
Mike Seely
Texas Bar No. 24054148
1000 Louisiana, Suite 3400
Houston, Texas 77002-5011
713.276.5500 Telephone
713.276.5555 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via ECF on all counsel of record on this 22nd day of December, 2009:

John M. Desmarais
Kirkland & Ellis, L.L.P.
601 Lexington Ave.
New York, NY 10022-4675

Timothy K. Gilman
Kirkland & Ellis, L.L.P.
Citigroup Center
153 East 53rd Street
New York, NY 10022-4675

David Burgert
Ray T. Torgerson
Paul A. Dyson
Porter & Hedges, LLP
1000 Main Street, 36th Floor
Houston, Texas 77002-6336

Lee L. Kaplan
Smyser Kaplan & Veselka, L.L.P.
700 Louisiana, Suite 2300
Houston, Texas 77002


/s/ Mike Seely
Mike Seely

## CERTIFICATE OF CONFERENCE

I certify that on December 18, 2009, I contacted counsel for WesternGeco via email to ascertain whether WesternGeco was opposed to the relief requested in this motion. Counsel for WesternGeco did not respond to my email. Based on prior communications, I expect that WesternGeco will oppose the relief requested.

/s/ Peter Scaff
Peter Scaff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTERNGECO, L.L.C. | § § § | |
| PLAINTIFF | § § | |
| V. | § § | CIVIL ACTION NO. 4:09-CV-01827 |
| ION GEOPHYSICAL CORPORATION | § § § | |
| DEFENDANT | § | |

## ORDER

Came on for consideration this day Non-Party, Kongsberg Maritime, Inc.'s ("KMI") Motion to Modify (the "Motion") a subpoena ("Subpoena") served by Plaintiff, WesternGeco, L.L.C. ("WesternGeco") on or about November 13, 2009. The Court, after considering the Motion, any response, the evidence presented, the argument of counsel, if any, and taking judicial notice of the Court's file, is of the opinion that KMI's Motion should be granted.

It is, therefore, ORDERED that the Subpoena served on KMI by WesterGeco shall be modified to include only the documents in the possession or custody of KMI.

The Court finding that KMI has produced all responsive documents in its possession or custody holds that KMI has fulfilled all of its obligations under the Subpoena.

SIGNED this _____ day of _____, 2009.

_____
PRESIDING JUDGE

HOUSTON 1058170v.1