UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTERNGECO LLC, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 09-cv-1827 |
| | § | |
| ION GEOPHYSICAL CORP., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is a Motion for Relief from WesternGeco's Objections to Ion's Consultants filed by Defendant Ion Geophysical Corporation ("Ion") (Doc. No. 95). Also pending is the Opposition to Ion's Proposed Experts filed by Plaintiff WesternGeco LLC ("WesternGeco") (Doc. No. 97).

Each of these submissions considers Ion's designation of four named individuals (the "Proposed Experts") to serve as expert consultants in this case. WesternGeco opposes the use of the Proposed Experts, asserting that they have conflicts of interest because of work they previously did on behalf of WesternGeco or its parent during which they received confidential and privileged information. The issue has arisen because, as provided in a Protective Order entered herein, Ion notified WesternGeco that it intended for the Proposed Experts to review confidential documents produced in this case. WesternGeco timely objected, as also provided by the Protective Order. WesternGeco now seeks to disqualify these experts from serving as consultants for Ion.

I.      LEGAL STANDARD

1

Disqualification of experts is warranted where: 1) the retaining party and the expert had a relationship that permitted the retaining party to reasonably expect that its communication with the expert would maintained in confidence; and (2) confidential or privileged information was, in fact, provided to the expert by the party seeking disqualification. *Koch Refining Co. v. Jennifer L. Boudreaux M/V*, 85 F.3d 1178, 1182-83 (5th Cir. 1996). Both questions must be answered in the affirmative in order for the witness to be disqualified. *Dyna-Drill Techonologies Inc. v. Conforma Clad Inc.*, 2005 WL 5979403, at *1 (S.D. Tex. May 16, 2005). Courts have generally found that the first prong of this test is met when "the record supports a longstanding series of interactions, which have more likely than not coalesced to create a basic understanding of the [retaining party's] modus operandi, patterns of operations, decision-making process, and the like." *Koch*, 85 F.3d at 1182. By contrast, when the expert was not retained, was not supplied with specific data that is relevant to the case, and was not requested to perform any services, the experts is generally not subject to exclusion. *Id*.

## II.   MR. RICK WORKMAN

After reviewing the submissions of the parties and hearing oral argument, the Court concludes that Mr. Rick Workman should be excluded as an expert in this case. Mr. Workman served as an employee of WesternGeco's predecessor, Western Geophysical ("Western"), for nearly two decades. Although they did not overlap, Mr. Workman worked in the same Applied Technology Group as Mark Zajac, the inventor of one of the patents being asserted in this litigation. Indeed, during oral argument, WesternGeco pointed out that Mr. Workman was titled "Chief Geophysicist" during his tenure with this group. (*See* Workman Decl., Doc. No. 103 Ex. F, ¶¶ 3-6.)   Moreover, Mr. Workman directly participated in technology development for products related to the streamer positioning devices that are at the heart of this dispute, including

2

streamer-cable design and ocean-bottom cable testing. (WesternGeco Br., Doc. No. 97, Ex. 16.) Mr. Workman was also involved with a published patent that deals with "a method for controlling the position and shape of marine seismic streamer cable." (*Id*. Ex. 19.) Ion admits that, during this time, "lateral-streamer steering was a hot topic in the industry and its potential was widely discussed." (Ion Br., Doc. No. 103, at 6.)

Considering these facts, the Court concludes that the first part of the *Koch* test is easily met. Based on the nature and extent of Mr. Workman's employment relationship with WesternGeco's predecessor, there exists an objectively reasonable basis upon which to believe that communications between Mr. Workman and Western were confidential. *See Dyna-Drill*, 2005 WL 5979403, at *1 (noting that it was objectively reasonable for the defendant to believe that a confidential relationship existed between it and its former employee where the employee was substantially involved in the development of the alleged trade secrets at issue).

Ion's primary argument is that the second part of the *Koch* test cannot be met because, during his tenure at Western, Mr. Workman never received or possessed confidential information that it relevant to this litigation. However, given that Mr. Workman's field of expertise closely relates to, if not encompasses, the technology taught by the patents-in-suit, the Court is unpersuaded by Ion's argument. Indeed, it is difficult if not impossible to imagine how Mr. Workman could have performed his apparent high-level function as Chief Geophysicist in charge of projects related to marine seismic cables if confidential or privileged information that is substantially related to the patents-in-suit were not provided to him. Ion also points out that Mr. Workman's work at Western did not involve the specific inventions that are in dispute between these parties. However, at this stage in the dispute, before the confidential information has been fully disclosed and reviewed by Ion's counsel or its experts, the Court lacks confidence in Ion's

ability to accurately assess what knowledge and expertise will be useful in this litigation. It seems logical that, even if Mr. Workman did not work directly on projects involving marine streamer positioning devices—although the published patent attached to WesternGeco's brief reveals that he might have—the expertise and knowledge that he acquired as a senior scientist in the Applied Technology Group of Western will nonetheless be applicable to his evaluation of the confidential documents. As such, Court is convinced that, due to his tenure and senior position in the same group within which at least some of the technology at issue was developed, Mr. Workman did receive confidential information during his time at Western that could, and probably would, be relevant to this litigation. Accordingly, the Court holds that Mr. Workman is disqualified from serving as an expert in this case.

### III.  FTI EXPERTS

As to the three other Proposed Experts—Lance Gunderson, Todd Schoettelkotte, and Armando Chavez ("FTI Experts" collectively)—the Court holds that these experts need not be excluded from participating as experts in this litigation. The parties appear to agree that the FTI Experts did work for WesternGeco's parent, Sclumberger. They differ as to whether the nature or amount of that work should disqualify the experts from serving in this case.

The declarations of the FTI Experts reveals that in September 2007, Mr. Schoettelkotte and Mr. Chavez spent about one month preparing preliminary documents for Schlumberger's in-house counsel to explain what work FTI Consultants, Inc. ("FTI") would do if retained by Schlumberger to work on a royalty dispute. (Schoettelkotte Decl., Doc. 103 Ex. D, ¶¶ 5-6.) These preliminary documents consisted of a royalty work review program and a litigation work review program. (*Id*. ¶ 4.) Mr. Schoettelkotte avers that the bulk of the time spent preparing these documents was spend reviewing publicly available data regarding royalty rates. (*Id*. ¶ 5.)

Apparently, Schlumberger ultimately chose not to hire FTI to do any further work on the dispute. (*Id.* ¶ 6.) Mr. Gunderson attended an initial meeting with Schlumberger, but, after learning of the proposed project and realizing that his services were not needed, left the room and had no further involvement in the project. (Gunderson Decl., Doc. 103 Ex. C, ¶ 4.).

The Court finds and holds that, with respect to the FTI experts, neither prong of the *Koch* test is met. First, it is not entirely clear to this Court that Schlumberger's previous relationship with the FTI Experts may be imputed to WesternGeco, a wholly separate company. But, more importantly, even if this relationship could be imputed, the Court does not find that the relationship between the FTI Experts and Schlumberger is of the long-standing and substantive nature that would give rise to a presumption of confidentiality. Indeed, the relationship between these experts and Schlumberger lasted only one month, and was spent in preparation of preliminary documents. These preliminary communications did not lead to a continuing relationship, as none of the FTI Experts was ultimately retained. Accordingly, the Court finds no evidence that an objectively reasonable confidential relationship existed between these parties. Moreover, the Court fails to see how preliminary work on a royalty dispute over oilfield technologies is related to the technologies at issue in this case. Indeed, in their declarations, the FTI Experts explicitly deny receiving any confidential information from WesternGeco or an affiliated company that relates to this litigation. (Gunderson Decl. ¶¶ 6-7; Schoettelkotte Decl. ¶¶ 9-10; Chavez Decl., Doc. 103 Ex. E, ¶¶ 5-6.) Accordingly, the Court concludes that the FTI experts need not be excluded from serving as experts in this case.

**IV.    CONCLUSION**

Ion's Motion for Miscellaneous Relief (Doc. No. 95) is **GRANTED IN PART** and **DENIED IN PART**. Rick Workman is hereby excluded from serving as an expert in this case. The FTI Experts are not so excluded.

**IT IS SO ORDERED.**

**SIGNED** this 2nd day of June, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE