### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **WESTERNGECO L.L.C.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Case No. 4:09-cv-1827** |
| | § | |
| **ION GEOPHYSICAL CORPORATION,** | § | |
| **et al.** | § | |
| | § | |
| **Defendants.** | § | |

### MEMORANDUM AND ORDER

Pending before the Court are: (1) the Motion to Dismiss Pursuant to Rule 12(b)(6) and, in the Alternative, Rule 12(e) Motion for a More Definite Statement filed by Defendants Fugro-Geoteam, Inc., Fugro, Inc., Fugro (USA), Inc., and Fugro Geoservices, Inc., and joined by Fugro-Geoteam AS and Fugro Norway Marine Services (Doc. No. 123); and (2) the Motion to Dismiss for lack of personal jurisdiction filed by Fugro-Geoteam AS and Fugro Norway Marine Services (Doc. No. 133).[1]

Upon considering the Motions, all responses thereto, and the applicable law, the Court finds that the Motion to Dismiss Pursuant to and, in the Alternative, Rule 12(e) Motion for a More Definite Statement (Doc. No. 123) must be granted in part and denied in part, and the Motion to Dismiss for lack of personal jurisdiction (Doc. No. 133) must be denied.

### I.    BACKGROUND

This is a patent infringement case originally brought by WesternGeco L.L.C. ("Plaintiff" or "WesternGeco") against Ion Geophysical Corporation ("Ion") in 2009. WesternGeco alleges

---

[1] In docket entry 133, Fugro-Geoteam AS and Fugro Norway Marine Services join in the motion to dismiss filed as docket entry 123 and assert a new ground—lack of personal jurisdiction—for dismissal. We will treat docket entry 133's arguments about personal jurisdiction as a separate motion to dismiss for lack of personal jurisdiction.

that Ion has infringed on five of its U.S. patents—U.S. Patent No. 6,932,017 (the "'017 Patent"),

7,080,607 (the "'607 Patent"), 7,162,967 (the "'967 Patent"), and 7,293,520 (the "'520 Patent")

("Bittleston Patents" collectively); and U.S. Patent. No. 6,691,038 (the "'038 Patent" or "Zajac

Patent"). At issue in this case is marine seismic streamer technology that is deployed behind

ships. These streamers, essentially long cables, use acoustic signals and sensors to create three-

dimensional maps of the subsurface of the ocean floor in order to facilitate natural resource

exploration and management. For many seismic studies, greater control over the depth and

lateral position of streamers is important in order to achieve optimal imagery from the signals

and to maneuver around impediments such as rocks and oil rigs. WesternGeco's patents all

pertain to streamer positioning devices, or devices that are used to control the position of a

streamer as it is towed.

### A.  Factual and Procedural History

In June 2010, WesternGeco filed suit against the following six entities: (1) Fugro-

Geoteam, Inc.; (2) Fugro, Inc.; (3) Fugro (USA), Inc.; (4) Fugro Geoservices, Inc.; (5) Fugro-

Geoteam AS; and (6) Fugro Norway Marine Services. (Case No. 4:10-cv-2120). For purposes of

these motions, the following four entities will be referred to as the "Fugro US Defendants": (1)

Fugro-Geoteam, Inc.; (2) Fugro, Inc.; (3) Fugro (USA), Inc.; (4) Fugro Geoservices, Inc. The

entities Fugro-Geoteam AS and Fugro Norway Marine Services will be referred to as the "Fugro

Norway Defendants." When referring to all six entities, we will use the term the "Fugro

Defendants." The case brought by WesternGeco against Fugro Defendants was consolidated with

WesternGeco's suit against Ion.

For purposes of the motions to dismiss, the Court accepts the following factual

allegations in Plaintiff's complaint as true. *Frame v. City of Arlington*, 575 F.3d 432, 434 (5th

Cir. 2009). The Fugro US Defendants and the Fugro Norway Defendants are companies that conduct marine towed streamer surveys. (Compl. ¶ 22.) The Fugro US Defendants are located at a Houston, Texas office (the "Houston Office"). (*Id.* ¶ 30.) In December 2009, a company named Statoil USA E&P, Inc. ("Statoil") applied for and received a Geological & Geophysical Permit from the U.S. Department of the Interior in order to conduct a three-dimensional (3D) marine seismic survey in the Chukchi Sea, off the coast of Alaska. (Compl. Exh. F at 1.) The permit application listed Statoil as the applicant and Fugro-Geoteam, Inc. as the "Service Company or Purchaser" that would be conducting the survey. (*Id.* at 46, 47.) A seismic vessel, the marine vessel *Geo Celtic* towing an airgun array of airgun and hydrophone streamers for data acquisition, would conduct the survey along with two support vessels. (*Id.* at 6.) The specifications for the *Geo Celtic* state that its "Operator" is "Fugro-Geoteam AS" and that "Seismic Management" is conducted by "Fugro Norway Marine Services AS." The survey would utilize Ion's DigiFIN and Compass Birds or DigiBIRD and/or Orca command and control software for streamer control and streamer positioning. (Compl. ¶ 31; Exh. F at 21, 23.) WesternGeco states that both the Fugro US Defendants and the Fugro Norway Defendants have offered for sale products and services for use in the Chukchi Sea survey relying, in part, on equipment, services, and/or support provided from the Houston Office. (Compl. ¶ 32.)

The survey would explore Statoil's lease holdings in the Chukchi Sea. (*Id.* at 6, 8.) These lease holdings are located in the Outer Continental Shelf ("OCS"), approximately 100 miles northwest of Wainwright, Alaska and 150 miles west of Barrow, Alaska. (*Id.* at 8.) The *Geo Celtic* would arrive at Dutch Harbor, Alaska for the load of crew and supplies, before heading to the lease holdings for the seismic survey. (*Id.*) Nome would be the main port for refueling, resupply and crew changes, with Barrow or Wainwright as backup ports for resupply and crew.

(*Id.* at 7.) After the survey was completed, the *Geo Celtic* would demobilize to Dutch Harbor. (*Id.* at 8.)

WesternGeco filed suit against the Fugro Defendants, alleging that the Chukchi Sea survey and other activities constitute infringement of the same five U.S. patents at issue in its suit against Ion. Specifically, WesternGeco claims that the Fugro US Defendants and the Fugro Norway Defendants have violated 35 U.S.C. §§ 271(a), (b), (c), and/or (f) by "making, using, offering to sell, selling and/or supplying in or from the United States products and services relating to steerable streamers (including but not limited to products and services incorporating DigiFIN and ORCA) and/or inducing and/or contributing to such conduct . . . ." (Compl. ¶¶ 34.) In addition, WesternGeco claims that the alleged infringement has been willful, rendering this an exceptional case pursuant to 35 U.S.C. § 285.

WesternGeco served both the Fugro US Defendants and the Fugro Norway Defendants, the latter pursuant to the Convention of November 15, 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention.") The Fugro US Defendants filed a motion to dismiss WesternGeco's complaint pursuant to Rule 12(b)(6) and, in the alternative, a Rule 12(e) motion for a more definite statement. (Doc. No. 123.) The Fugro Norway Defendants joined in this motion to dismiss and asserted lack of personal jurisdiction as a separate ground for dismissal that is specific to the Fugro Norway Defendants. (Doc. No. 133.). The motions to dismiss have been briefed and are ripe for disposition.

### B.  Jurisdictional Facts

WesternGeco avers the following facts in its complaint to support the exercise of personal jurisdiction over the Fugro Norway Defendants. The Fugro Norway Defendants are

subsidiary companies that share a common owner, Fugro N.V., with the Fugro US Defendants. The "Fugro-Geoteam" designation is a business or marketing brand that encompasses some or all of the Fugro entities and has worldwide responsibility for marine seismic data acquisition services within Fugro. Both the Fugro Norway Defendants and the Fugro US Defendants operate as a single, world-wide, integrated company with substantial contacts in Houston, Texas. First, the Fugro Norway Defendants regularly sell products and services, including infringing products and services, to customers within the Southern District. For example, a Fugro Norway Defendant operated the vessel using the allegedly infringing equipment that conducted the Chukchi Sea seismic survey in order to provide seismic 3D data to Statoil, a company doing business in Houston, Texas. The seismic survey was managed by another Fugro Norway Defendant. Second, the Fugro Norway Defendants have offered for sale infringing products and services relying upon equipment, services, and/or support provided from the Southern District. A Fugro US Defendant—Fugro-Geoteam, Inc.—is listed in the permit application for the Chukchi Sea survey as the "Service Company" who will be conducting exploration activity for Statoil, who is listed as the "Purchaser of Data." Third, both the Fugro Norway Defendants and the Fugro US Defendants share overlapping directors and management with each other and with their parent, Fugro N.V. Fourth, the 2009 Annual Report of Fugro N.V. states that "effective cooperation" between the Fugro subsidiaries is promoted at various levels, including "the exchange of equipment, employees and expertise between the various activities." Fifth, both the Fugro Norway Defendants and the Fugro US Defendants share the same website, which is accessible nationally and internationally and is active in interstate commerce. The Fugro Norway Defendants have not submitted any affidavits to controvert WesternGeco's averments.

WesternGeco has also offered the following facts via affidavit. The Fugro Norway Defendants have regular contacts within this District involving their marine surveys. Such contacts include advertising their seismic data acquisition services in a Houston-based oil and gas magazine, advertising and demonstrating their products and services at industry conferences in Texas, shipping seismic survey equipment to customers located in Houston, and receiving equipment through Galveston. The Fugro Norway Defendants list "6100 Hillcroft Houston, Texas" as their address for shipments. Listings for job opportunities with the Fugro Norway Defendants identify Houston, Texas as the location for the jobs. A Fugro Norway Defendant purchased allegedly infringing equipment from Ion, a Houston-based company, and assisted Ion to develop and test the infringing products. The Fugro Norway Defendants have not submitted any affidavits or documentation to controvert WesternGeco's affidavit.

Finally, WesternGeco submitted by affidavit a copy of an application submitted to the U.S. Department of Interior for a permit to conduct seismic surveys in the United States' Exclusive Economic Zone in the Gulf of Mexico. The permit application states that Fugro Geoteam AS, a Fugro Norway Defendant, will conduct seismic surveys for Fugro Multi Client Services, Inc., which is not a party to the litigation. The address for both companies is listed as 6100 Hillcroft Avenue, Houston, Texas, and both have identical telephone and fax numbers. The marine vessels conducting the surveys are the *Geo Coral* and the *Geo Caspian*. Fugro Norway Marine Services AS, a Fugro Norway Defendant, is listed as the entity that operates and conducts seismic management for both vessels. The vessels operate from the ports of Galveston, Texas and Fourchon, Louisiana. In addition, WesternGeco submitted via affidavit discovery material obtained from Ion that lists the *Geo Coral* and the *Geo Caspian* as vessels that use the allegedly infringing Ion device DigiFIN. The Fugro Norway Defendants assert that the facts

contained in the permit application are wrong. They submit declarations from employees of Fugro Multi Client Services, Inc. and Fugro Geoteam, Inc. to assert that Fugro Geoteam Inc., a Fugro US Defendant, rather than Fugro Geoteam AS, a Fugro Norway Defendant, should have been listed on the permit application. As support for this statement, they point out that the employees listed on the application—Hans Christian Vaage, Michael Whitehead, and Steve Garrison—are employees of Fugro Multi Client Services, Inc. and Fugro Geoteam, Inc.    The permit application is also asserted to be incorrect in that it should not have listed Galveston, Texas as a port of operation.

## II.    SUBJECT MATTER JURISDICTION

We briefly address the existence of subject matter jurisdiction. The Fugro Defendants argue that WesternGeco's action should have been filed as a declaratory judgment action because the acts of infringement alleged to occur during the Chukchi Sea survey were in the future at the time of the complaint's filing. We construe this argument as a challenge to the ripeness of the action.

"Ripeness is a component of subject matter jurisdiction, because a court has no power to decide disputes that are not yet justiciable." *Lopez v. City of Houston*, 617 F.3d 336, 342 (5th Cir. 2010) (citing *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003). The key considerations are "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). A claim is not ripe for adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (omitting internal quotation and citation).

7

WesternGeco's complaint sets forth a number of factual allegations about the Fugro Defendants' activities, including their use of allegedly infringing Ion devices in marine towed streamer surveys, a contract with Statoil to conduct a seismic survey using infringing Ion devices, and offers to sell products and services based on use infringing Ion devices. These activities are characterized as having already occurred. At the time of the complaint's filing, the only alleged event that was yet to occur was the Chukchi Sea survey. The Fugro Defendants' activities during the survey are fit for judicial review. Though the survey may appear to be "abstract or hypothetical," it is "sufficiently likely to happen to justify judicial intervention." *Chevron U.S.A., Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993) (citing 13A *Charles Wright, A. Miller & E. Cooper*, *Federal Practice and Procedure* § 3531.12, at 50 (1984). There are no "contingent future events" upon which the Fugro Defendants are relying in order to proceed with the Chukchi Sea survey. Unlike cases where conditions precedent to a potentially unlawful action had not yet occurred, the Department of the Interior has already approved the necessary permit application for the survey. *See Texas v. United States*, 523 U.S. at 300 (facial challenge to the Texas Education Code's provision appointment of special master was unripe when several statutorily-prescribed steps would have to occur before master would be appointed); *Benitec Austl. v. Nucleonics*, 495 F.3d 1340, 1346 (Fed. Cir. 2007) (defendant's actions not ripe for challenge when they would not become infringing until after defendant filed new drug application with FDA); *Monk v. Huston*, 340 F.3d at 283 (action challenging proposed construction of a landfill was unripe when the landfill permit application had not yet been granted); *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1527 (Fed. Cir. 1992) (patent infringement suit unripe where accused defibrillator had only begun clinical trials and was years away from FDA approval). The location of the Fugro Defendant's activities and Ion

device accused of infringing are all known. The infringing Ion device appears to be installed on the *Geo Celtic* and ready for use, as indicated on the survey's Plan of Operations. It appears that no further factual issues need to be developed that would render the court in a better position to adjudicate the issues regarding the Chukchi Sea survey in the future than it is now. *Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010) (omitting citation).

We next consider hardship to the parties if we withhold judicial review. In determining hardship, the doctrine of ripeness overlaps with the doctrine of standing's "examination of whether a plaintiff has suffered a concrete injury." *Texas v. United States*, 497 F.3d 491, 496 (5th Cir. 2007). "The Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being 'force[d] . . . to modify [one's] behavior in order to avoid future adverse consequences.'" *Id.* at 499 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 734 (1998)). WesternGeco faces the invasion of its exclusive patent right by the Fugro Defendants and economic loss if its claim is not adjudicated. This type of hardship is equivalent to a concrete injury to WesternGeco's practical and legal interests. Hardship to the Fugro Defendants will not be mitigated by dismissal since they are likely to face refiling of the same complaint by WesternGeco. On balance, we hold that the fitness of the issues for adjudication and the hardship to the parties demonstrate that the case is ripe for review. The Court possesses subject matter jurisdiction to proceed.

Finally, the Fugro Defendants argue that WesternGeco must file a declaratory judgment action to prevent future infringement. The Federal Circuit has held that the proper vehicle for a suit to redress the future infringement would be an action under the Declaratory Judgment Act, 28 U.S.C. § 2201, rather than a suit under 35 U.S.C. § 271 alone. *See Lang v. Pacific Marine &*

*Supply Co.*, 895 F.2d 761, 765 (Fed. Cir. 1990), *abrogated on other grounds by*, *MedImmune,*

*Inc. v. Genentech*, 549 U.S. 118 (2007). Where, as here, there are a mix of allegations of past and

future infringement, the Court grants WesternGeco leave to amend its complaint to add a request

for a declaratory judgment. *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,

313 F.3d 305, 329 (5th Cir. 2002) ("'[D]istrict courts often afford plaintiffs at least one

opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the

defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend

in a manner that will avoid dismissal.'").

## III.    LEGAL STANDARDS

### A.    Rule 12(b)(2) - Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move for dismissal of

case for lack of personal jurisdiction. Federal Circuit law governs personal jurisdiction

determinations in patent cases. *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558,

1564-65 (Fed. Cir. 1994). Determining whether personal jurisdiction over a nonresident

defendant is proper entails two inquiries: whether a forum state's long-arm statute permits

service of process, and whether the assertion of jurisdiction would be inconsistent with due

process. *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). Because

the Texas long-arm statute has been interpreted to extend as far as due process permits, *see*

*Electrosource, Inc. v. Horizon Battery Techs., Ltd*., 176 F.3d 867, 871 (5th Cir. 1999), the sole

inquiry is whether the exercise of personal jurisdiction over a nonresident defendant comports

with federal constitutional due process requirements. *See Electronics For Imaging*, 340 F.3d at

1349-50; *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir.

1998).

Since subject matter jurisdiction here exists by virtue of a federal question, rather than the diversity of the parties, the Due Process Clause of the Fifth Amendment is at issue. *Akro Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir. 1995). The Due Process Clause permits a court to exercise personal jurisdiction over a foreign defendant when: (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Id.* (adopting the standard imposed by *International Shoe v. Washington,* 326 U.S. 310, 316 (1945), upon cases subject to the Fourteenth Amendment's Due Process Clause).

Courts may exercise personal jurisdiction over defendants on either of two bases: specific or general jurisdiction. *Synthes (U.S.A.) v. G.M. dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009). The Federal Circuit applies a three prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010).[2] In general, when the cause of action at issue arises out of or relates to the defendants' contacts with the forum, the court may properly assert specific jurisdiction, even if the contacts are isolated and sporadic. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). Indeed, a "substantial connection" with a forum arising out of a "single act can support jurisdiction." *Synthes (U.S.A.)*, 563 F.3d at 1297 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)).

---

[2] "With respect to the last prong, the burden of proof is on the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' under the five-factor test articulated by the Supreme Court in *Burger King*." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006) (citations omitted).

To establish the minimum contacts necessary to establish general jurisdiction, a plaintiff bears a higher burden. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1330 (Fed. Cir. 2008). General jurisdiction "requires that the defendant have 'continuous and systematic' contacts with the forum state and confers personal jurisdiction even when the cause of action has no relationship with those contacts." *Silent Drive, Inc.*, 326 F.3d at 1200 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "Neither the United States Supreme Court nor this court has outlined a specific test to follow when analyzing whether a defendant's activities within a [forum] are 'continuous and systematic.'" *Synthes (U.S.A.)*, 563 F.3d at 1297 (quoting *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000)).

If a plaintiff successfully makes a *prima facie* showing of minimum contacts, the burden shifts to the defendant to show that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction. *Patent Rights Prot. Group, LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010). In doing so, a court looks at five factors: (1) the burden upon the nonresident defendant to litigate in that forum; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the several states' shared interest in furthering substantive social policies. *Id.* at 1369.

To survive a motion to dismiss in the absence of jurisdictional discovery, a plaintiff need only make a *prima facie* showing of jurisdiction and all pleadings and affidavits are to be construed in the light most favorable to the plaintiff.[3] *Trintec Indus., Inc. v. Pedre Promotional*

---

[3] In a Sur-Reply, WesternGeco has requested the opportunity to conduct jurisdictional discovery. (Doc. No. 136 at 4 n.1.) Because we conclude that specific and general jurisdiction may be exercised on the basis of the record before us, we do not believe jurisdictional discovery to be necessary. Further, concerns about the possibility of prejudice to

*Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005); *Silent Drive, Inc.*, 326 F.3d at 1201. In

considering a motion to dismiss for lack of personal jurisdiction a district court may consider

"affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized

methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *see also Lab.*

*Corp. of Am. Holdings v. Chiron Corp.*, 384 F.3d 1326, 1330 (Fed. Cir. 2004) (stating that

procedural matters that are not unique to patent issues shall be governed by the law of the

particular regional circuit court where appeals from the district court would normally lie).

Allegations of the plaintiff's complaint are taken as true except to the extent that they are

controverted by defendant's affidavits. *Elecs. for Imaging, Inc.*, 340 F.3d at 1349. Any genuine,

material conflicts between the facts established by the parties' affidavits and other evidence are

resolved in favor of plaintiff for purposes of determining whether a *prima facie* case exists. *Id.* at

1349; *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009);

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed.

Cir. 2002); *Akro Corp.*, 45 F.3d at 1543. However, the plaintiff is entitled only to those

inferences that are reasonable. *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334,

1338 (Fed. Cir. 2006).

### B.    Rule 12(b)(6)

A court may dismiss a complaint for "failure to state a claim upon which relief can be

granted." FED. R. CIV. P. 12(b)(6).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint

'does not need detailed factual allegations,' but must provide the plaintiff's grounds for

entitlement to relief—including factual allegations that when assumed to be true 'raise a right to

relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing

---

the Fugro Norway Defendants due to the lack of discovery are mitigated because the Fugro Norway Defendants object to jurisdictional discovery.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted). The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)). A district court can consider the contents of the pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Furthermore, a court may refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp.*, 212 F.3d 595, 595 (5th Cir. 2000). Importantly, the court should not evaluate the merits of the allegation, but must satisfy itself only that plaintiff has

adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation omitted); *Duke Energy Intern., L.L.C. v. Napoli*, Case No. H-09-2408, 2010 WL 3749298, *7 (S.D. Tex. Sept. 21, 2010).

## IV.   ANALYSIS

The Fugro Defendants argue that the Complaint fails to allege any action that could be an infringement of U.S. patents has occurred or will occur in the United States. In addition, three of the Fugro US Defendants (Fugro, Inc., Fugro (USA), Inc., and Fugro Geoservices, Inc.) argue that there is no allegation of infringement as to any of them in *any* location. Alternatively, the Fugro Defendants request a more definite statement under Rule 12(e). The Fugro Norway Defendants assert that the Complaint does not allege facts necessary to assert personal jurisdiction over them. WesternGeco contests all of these arguments.

### A.   Personal Jurisdiction

The Fugro Norway Defendants contest personal jurisdiction by arguing that WesternGeco has not established a *prima facie* case for either general or specific jurisdiction. The Fugro Norway Defendants contend that personal jurisdiction can arise only when the defendant has specific continuous and systematic contacts with Texas or when the cause of action arises from the defendant's activities within Texas. (Doc. No. 133 at 2.) Further, the Fugro Norway Defendants argue that, because WesternGeco has not shown and cannot show that an act of infringement will occur in the United States, they are not subject to personal jurisdiction. WesternGeco argues that it has provided sufficient facts for both general and specific personal jurisdiction, and that the exercise of such jurisdiction would be reasonable.

As an initial matter, we address an issue that the Fugro Norway Defendants argue precludes the exercise of both specific and general jurisdiction. The Fugro Norway Defendants contend that no personal jurisdiction can exist because WesternGeco has not shown and cannot show that an act of infringement has occurred or will occur in the United States, or, specifically, in Texas. However, the question of whether WesternGeco has made a *prima facie* case of patent infringement in the United States is different from whether WesternGeco has established a *prima facie* of personal jurisdiction. *See Syntheses (USA)*, 563 F.3d at 1298-99 (declining to address whether defendant's activities constituted direct infringement when determining personal jurisdiction). Only the latter question is before us for purposes of this motion. In determining whether personal jurisdiction exists, we may consider the Fugro Norway Defendants' contacts with the forum even though they do not constitute infringing actions in themselves. *See Akro Corp.*, 45 F.3d at 1547-48 (quoting with approval *B&J Mfg. v. Solar Indus.*, 483 F.2d 594, 598-99 (8th Cir. 1973)) ("The fact that the defendant has, itself, not directly or indirectly sold the [competing product at issue] in the state because it did not wish the plaintiff to be able to obtain jurisdiction over it in this action hardly defeats jurisdiction here."); *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (recognizing general jurisdiction over defendant who made sales of non-infringing products to customers in forum state). Therefore, we need only analyze whether exercising jurisdiction over the Fugro Norway Defendants comports with federal constitutional due process. *Syntheses (USA)*, 563 F.3d at 1298.

### 1.    Specific Jurisdiction

The Court agrees with WesternGeco that the facts set forth in its complaint and affidavits confers specific jurisdiction over the Fugro Norway Defendants. When the cause of action at issue arises out of or relates to the defendants' contacts with the forum, the court may properly

assert specific jurisdiction, even if the contacts are isolated and sporadic. *Silent Drive, Inc.*, 326 F.3d at 1200. WesternGeco's averments about the Fugro Norway Defendants' activities directed at the residents of this forum fall into several categories. *See Akro Corp.*, 45 F.3d at 1547 ("[P]laintiff need not be the forum resident toward whom any, much less all, of the defendant's relevant's activities were purposefully directed.")

First, WesternGeco points to the relationship between the Fugro Norway Defendants and the Fugro US Defendants—which the Fugro Norway Defendants do not contest—in collaborating and cooperating in seismic data acquisition generally and the Chukchi Sea survey specifically. The Fugro Norway Defendants operates and manages the *Geo Celtic*, the vessel utilizing the allegedly infringing Ion devices, while the Fugro US Defendants are listed as the "Service Company" that provides the data acquired by the Ion devices to Statoil, the "Purchaser of Data." The Fugro US Defendants are located in and conduct business from their Houston Office. This type of relationship between the co-defendants, one a forum resident and one an out-of-state resident, serves as purposeful activities that the Fugro Norway Defendants have directed toward the forum resident. *See Nuance Comm'ns, Inc.*, 626 F.3d at 1232 (finding purposefully directed activities due in part to the relationship between commonly owned sister companies operating under a consolidated global management team); *Centre One v. Vonage Holdings Corp.*, Case No. 6:08cv467, 2009 U.S. Dist. LEXIS 69683, *11 (E.D. Tex. Aug. 10, 2009) (finding minimal contacts where out-of-state regional telephone companies had an ongoing business relationship with co-defendant resident telephone company to facilitate the use of infringing technology). Moreover, these activities—the shared management and operation of the Chukchi Sea survey—are related to the cause of action because the method of data acquisition during the survey is alleged to have infringed upon WesternGeco's patents. *See Freedom*

*Wireless, Inc. v. Suncom Wireless Holdings, Inc.*, Case No. 2:07-cv-152, 2008 U.S. Dist. LEXIS 25941, *4-*5 (E.D. Tex. Mar. 31, 2008) (finding specific jurisdiction where foreign co-defendant's ongoing business relationship with resident co-defendant enabled resident's allegedly infringing activity). Even if the Fugro Norway Defendants' submission of seismic data and information from the survey to the Fugro US Defendants was isolated and sporadic, it is proper to assume personal jurisdiction over the Fugro Norway Defendants because the seismic data acquisition methods are related to WesternGeco's infringement claims. *Silent Drive, Inc.*, 326 F.3d at 1200.

Second, specific jurisdiction is appropriate because the Fugro Norway Defendants provided the services requiring use of the infringing Ion device to Statoil, which is alleged to be a Texas resident because it is located and conducts business from its office in Houston. In a patent infringement case, specific jurisdiction over a foreign defendant may be proper if the defendant sells the infringing item to customers in the forum state.[4] *See Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1280 (Fed. Cir. 2005) (holding that the site of injury for purposes of jurisdictional analysis includes the site of the infringing sale); *North Am. Philips Corp. v. American Vending Sales*, 35 F.3d 1576, 1579 (Fed. Cir. 1994) ("[T]o sell an infringing article to a buyer in [the forum state] is to commit a tort there."); *Moore v. Harney Hardware*, Case No. H-05-4054, 2006 U.S. Dist. LEXIS 32925, *2 (S.D. Tex. May 15, 2006) (same). Here, the Fugro Norway Defendants, in conjunction with the Fugro US Defendants, sold their services to Statoil, a Texas resident, when they agreed to operate the vessels conducting the Chukchi Sea survey. Statoil's status as a buyer is confirmed by its characterization as "Purchaser

---

[4] Sales of services that require infringement of a patent, without accompanying sales of an infringing physical item, have also been considered in the personal jurisdiction analysis. *See Centre One*, 2009 U.S. Dist. LEXIS 69683 at *5 (considering sales of a service allowing customers to make phone calls using Voice over Internet Protocol technology, which allegedly infringed in plaintiff's patent, in the personal jurisdiction analysis).

of Data" in the Chukchi Sea survey permit application. This transaction gives rise to the cause of action because the Fugro Norway Defendants used the infringing Ion device while carrying out their obligation to Statoil to complete the survey. The Fugro Norway Defendants assert in briefing that they "do not have any ongoing contractual obligations to be performed in Texas." (Doc. No. 135 at 6.) This statement cannot be the basis of a genuine factual dispute because it has not been proffered through affidavit or a recognizable form of discovery. *See Elecs. for Imaging, Inc.*, 340 F.3d at 1349; *Stuart*, 772 F.2d at 1192. Even if appropriate to consider, we note that having a contractual obligation to be performed "in Texas" is not the same as "purposefully directing activities" at Texas residents. It is the latter standard that we must apply. *See Nuance Communs., Inc.*, 626 F.3d at 1231.

In a similar vein, WesternGeco asserts that specific jurisdiction is conferred by the Fugro Norway Defendants' recent application for a permit from the U.S. Department of the Interior to conduct a seismic survey exploration in the Gulf of Mexico.[5] In the permit application, Fugro Geoteam AS, a Fugro Norway Defendant, is listed as the entity conducting the seismic survey for the "Purchaser of Data," a non-party Fugro entity (Fugro Multi Client Services, Inc.) that is located in Houston, Texas. Fugro Norway Marine Services AS, the other Fugro Norway Defendant, will operate and conduct seismic management for the two marine vessels, the *Geo Coral* and *Geo Caspian*, collecting the seismic data. Similar to their relationship with Statoil, the Fugro Norway Defendants are providing services to an in-state customer. In addition, WesternGeco has submitted evidence that the *Geo Coral* and *Geo Caspian* utilize Ion's allegedly infringing DigiFIN technology. The Fugro Norway Defendants controvert WesternGeco's evidence by offering declarations stating that Fugro Geoteam AS was mistakenly listed on the

---

[5] WesternGeco supplied this evidence through a motion to file supplemental evidence. (Doc. No. 140.) The Fugro Norway Defendants did not object to the submission of supplemental evidence.

permit application instead of Fugro Geoteam, Inc., a Fugro US Defendant. The Fugro Norway

Defendants do not suggest that the non-party Fugro Multi Client Services, Inc. is not a Texas

resident or that the *Geo Celtic* and *Geo Coral* will not be the vessels collecting seismic data. The

court must resolve genuine factual conflicts among parties' affidavits and evidence in favor of

plaintiff for purposes of establishing a *prima facie* case.[6] Thus, we accept the facts contained in

the original, unamended permit application listing Fugro GeoteamAS as the "Service Company"

and assume that both of the Fugro Norway Defendants will provide seismic data acquisition

services to a Texas resident. These services are related to the cause of action because they rely on

use of the allegedly infringing Ion devices. We find that these facts support a *prima facie* case of

specific jurisdiction over the Fugro Norway Defendants.

However, we do not find a *prima facie* case of specific jurisdiction to be supported by

evidence of the Fugro Norway Defendants' presence at trade shows and trade association

meetings or advertisement in *World Oil*. The trade show evidence presented fails to describe the

activities in which the Fugro Norway Defendants' employees were engaged, much less to

establish that the Fugro Norway Defendants were advertising and/or sold infringing products or

services at the shows. The advertisement in *World Oil* advertisement may confer personal

jurisdiction but is not accompanied by appropriate evidence to demonstrate that *World Oil* is a

Texas-based publication that is distributed to Texas residents.

Neither will we consider the Fugro Norway Defendants' transactions with other Houston-

based customers because of the quality of evidence submitted in support of these links. As

evidence of the Fugro Norway Defendants' sales to other Texas residents, WesternGeco relies on

an averment in its complaint, excerpts from the annual reports of various oil companies located

---

[6] The Court notes again that the Fugro Norway Defendants did not request jurisdictional discovery, nor have they agreed to WesternGeco's request for jurisdictional discovery. Thus, in the absence of jurisdictional discovery, it is appropriate to resolve the factual disputes in favor of WesternGeco. *See Trintec Indus., Inc*, 395 F.3d at 1282.

in Houston, and excerpts from a website called Panjiva that purports to list several Houston-located companies as customers of the Fugro Norway Defendants. Though the fact of sales to these companies is uncontroverted, [7] WesternGeco has not provided evidence that these transactions give rise to or relate to the alleged infringement.

Similarly, we do not base our finding of specific jurisdiction upon WesternGeco's assertion that the Fugro Norway Defendants' relationship as purchaser of products from Ion, a co-defendant in this litigation, subjects them to specific jurisdiction. Although WesternGeco claims that Ion Geophysical Inc., a Texas resident, sold the infringing Ion devices to the Fugro Defendants, the purchasing and collaboration agreement submitted as evidence identifies Concept Systems Limited and Ion Marine as the selling parties, which do not appear to be Texas residents. The two DigiFIN Evaluation Test Reports that are copyrighted by Ion Geophysical Inc. document testing and collaboration, rather than sales, between the entities that occurred outside of Texas.

In sum, we find that WesternGeco has established a *prima facie* case of personal jurisdiction over the Fugro Norway Defendants based on the Fugro Norway Defendants' contacts with the Fugro US Defendants, with Statoil, and identification on the Gulf of Mexico survey permit application, all of which give rise to or relate to WesternGeco's claims of patent infringement.

    2.    **General Jurisdiction**

The Court agrees with WesternGeco that the facts set forth in its complaint and affidavits confer general jurisdiction over the Fugro Norway Defendants. WesternGeco argues that the

---

[7] The Fugro Norway Defendants aver in their Reply to their Motion to Dismiss that they "do not have any ongoing contractual obligations to be performed in Texas." (Doc. No. 135 at 6.) This statement cannot be the basis of a genuine factual conflict with WesternGeco's averments because it has not been submitted via affidavit or other form of discoverable evidence. *See Elecs. for Imaging, Inc.*, 340 F.3d at 1349; *Stuart*, 772 F.2d at 1192..

Fugro Norway Defendants have "continuous and systematic" contacts with Texas because they regularly advertise, sell, and ship products and services to and purchase products from Texas residents. In addition, WesternGeco contends that the Fugro Norway Defendants rely on the Houston Office for its headquarters for managing marine surveys and receiving marine seismic products. In addition, the Fugro Norway Defendants' collaboration with Ion in the development of the infringing products and services confer general jurisdiction.

Neither the Supreme Court nor the Federal Circuit has outlined a specific test to follow in order to determine whether a defendant's activities within a forum are "continuous and systematic." *Synthes (U.S.A.)*, 563 F.3d at 1297. However, caselaw suggest that an ongoing business relationship with forum residents, rather than occasional advertisements and attendance at trade shows, can support a finding of continuous and systematic contacts. In *Synthes (USA)*, the Federal Circuit held that a foreign defendant's attendance at trade shows in the forum, purchases of parts and a machine in the forum, the sale of a product to a customer in the forum, and consultations in the forum about product development did not rise to the level of continuous and systematic contacts. *Id.* In *Centre One*, a district court examined the relationship between regional Verizon telephone companies and Verizon Southwest, a forum resident. All Verizon defendants were accused of infringing plaintiff's patent by offering nationwide Voice over Internet Protocol ("VoIP") service. The regional Verizons, although not incorporated nor having places of business in Texas, worked together with Verizon Southwest to provide a telecommunications network to their customers that included VoiP service. The court found both specific and general jurisdiction because the regional Verizons had "an ongoing business relationship with Verizon Southwest to facilitate the accused instrumentality." 2009 U.S. Dist. LEXIS 69683 at *11-*12. In *ReedHycalog UK, Ltd.*, a district court found general jurisdiction

appropriate over a foreign corporation that did not have a place of business, own assets, possess registration to do business in, or conduct business in Texas. However, the foreign corporation manufactured, developed, leased, sold, and delivered allegedly infringing products to affiliated companies in Texas. 2009 U.S. Dist. LEXIS 77654 at *10-*11. Finally, in *Avery Dennison Corp.*, an Ohio district court found general jurisdiction over an out-of-state defendant who did not have a regular and established place of business in Ohio and where no infringing activity occurred in Ohio. *Avery Dennison Corp. v. Alien Technology Corp.*, 632 F. Supp. 2d 700, 710 (N.D. Ohio 2008) The determinative facts included the defendant's development contracts with Ohio universities, customers and distributors in Ohio, the physical presence of a key defendant employee in Ohio, and the defendant's "solutions center" was located in Ohio. *Id.* at 711.

At this stage, without the opportunity for discovery, WesternGeco need only make a *prima facie* case for personal jurisdiction; jurisdiction will need to be proved by a preponderance of the evidence at trial. *See Mullins v. TestAmerica Inc.*, 564 F.3d 386, 399 (5th Cir. 2009). The strongest allegations that WesternGeco submits for the exercise of general jurisdiction consists of the Fugro Norway Defendants' own ties to Texas. In its complaint, WesternGeco avers Fugro operates as a single, world-wide, integrated company with substantial contacts in Texas. In addition, WesternGeco avers that the Fugro entities that have offered for sale allegedly infringing products and services relied, in part, on services and/or support provided from Fugro's Houston office. In support of the averments in the complaint, WesternGeco offers documentation of a relationship between the Fugro Norway Defendants, on one hand, and the Fugro US Defendants residing in Texas, on the other. For example, Fugro-Geoteam AS operates and Fugro Norway Marine Services AS performs seismic management for the *Geo Celtic*, which will carry out the seismic data acquisition in the Chukchi Sea on behalf of Fugro Geoteam, Inc., a Texas resident

located at "6100 Hillcroft, Houston, TX." Similarly, the companies will operate and conduct seismic management for the *Geo Pacific* and *Geo Coral*, which will carry out seismic data acquisition in the Gulf of Mexico on behalf of Fugro Multi Client Services, Inc., a Texas resident located at "6100 Hillcroft Houston, TX." This fact is not controverted by the Fugro Norway Defendants. In addition to the Fugro Norway Defendants' connections to Fugro entities residing in Texas, WesternGeco contends that the Fugro Norway Defendants are themselves located and conducting business in Texas. Fugro Geoteam AS is listed as the Service Company/Provider on the permit application for the Gulf of Mexico survey. In the application, Fugro Geoteam AS's address is "6100 Hillcroft, Ho[u]ston, TX." The Fugro Norway Defendants contend that Fugro Geoteam, Inc. should have been listed in place of Fugro Geoteam, AS, but we will resolve this factual dispute in favor of WesternGeco. In addition, Fugro Norway Marine Services is listed on an ocean bill of lading as having an address of "6100 Hillcroft Houston, Texas."[8] Finally, a job posting for Fugro Geoteam AS lists "TX-Offshore" as the location for the job, while a job posting for Fugro Norway Marine Services AS lists "Houston, TX" as either the location for the job or the location of the employer.[9]

However, the presence of employees of the Fugro Norway Defendants at two trade association meetings, without description of their activities at those meetings, and a single advertisement in a magazine does not create continuous and systematic contacts with Texas. *See*

---

[8] The Fugro Norway Defendants object to the excerpt from the website Panjiva as being unreliable because it is based on unverified data. We do not consider the Panjiva excerpt in our analysis. However, we do consider the ocean bill of lading excerpted from the website ImportGenius, to which the Fugro Norway Defendants do not object. In any case, by making various evidentiary objections to the sworn statements and exhibits presented by WesternGeco, the Fugro Norway Defendants misconstrue the plaintiff's burden at this stage. *Autobytel, Inc. v. InsWeb Corp.*, 2009 U.S. Dist. LEXIS 31287, *7 n.3 (E.D. Tex. Mar. 31, 2009) (quoting *Trintec Indus.*, 395 F.3d at 1283) (stating that "the district court must construe all pleadings and affidavits in the light most favorable to the plaintiff").

[9] The Fugro Norway Defendants quibble with the text of these job postings, arguing in their briefing that the language of the postings demonstrate that the employees will work upon offshore vessels. While that may be true, the text of the postings do support an inference that the employee will perform some work in Texas and that Fugro Marine Norway Services is located in Houston, Texas.

*Syntheses (USA)*, 563 F.3d at 1297. Neither can the Fugro Norway Defendants' purported purchase from Ion serve as contacts with Texas because WesternGeco's evidence does not establish that the Ion entity selling devices is a Texas resident. The collaborative testing of allegedly infringing Ion devices by Ion Geophysical, Inc. and the Fugro Norway Defendants does not identify activity that could constitute the Fugro Norway Defendants' continuous or systematic contacts with Texas. Finally, the two sales to Sercel, Inc., a company that has an address in Houston, TX, in December 2007 and July 2009 do not establish that the Fugro Norway Defendants had a high level of sales in Texas or to Texas residents.

We are required to construe all pleadings and affidavits in the light most favorable to WesternGeco and take as true all uncontroverted allegations in WesternGeoc's complaint. As such, we find that WesternGeco's averments that the Fugro Norway Defendants have an ongoing business relationship with the Fugro US Defendants residing in Texas, and that they maintain regular and ongoing contacts with Texas themselves. Such inferences are reasonable in light of the evidence that WesternGeco has submitted. Therefore, we find that WesternGeco has established a *prima facie* case for the exercise of general jurisdiction.

### 3.    Fair Play and Substantial Justice

Finally, we examine whether the Fugro Norway Defendants have met their burden in establishing that the exercise of jurisdiction would offend principles of fair play and substantial justice. The Fugro Norway Defendants have not submitted any evidence or argument to this effect.

Based on our review of the five factors set forth by the Supreme Court in *Burger King*, we conclude that exercise of jurisdiction would not be constitutionally unreasonable. First, the burden on Fugro Norway Defendants would appear to be significant, although they have not

argued this themselves. The Fugro Norway Defendants would be required to defend themselves in a foreign court's judicial system, and some of their employees may have to travel to the United States. *See Syntheses (USA)*, 563 F.3d at 1299. However, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Id.* (omitting citations). In addition, the Fugro Norway Defendants burden may be minimized because they share the same counsel with the Fugro US Defendants and, according to their 2009 Annual Report, already exchange of equipment and personnel with their US colleagues. *See Nuance Commun., Inc.*, 626 F.3d at 1234. Second, WesternGeco possesses a high level of interest in obtaining relief here in Texas because it is a resident of Texas and has brought related claims against Ion and the Fugro US Defendants in this forum. *See Akro*, 45 F.3d at 1549. Third, Texas possesses an interest in this dispute because the alleged patent infringement has harmed WesternGeco, a resident of the state. Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of controversies is not present here because no alternative state's forum has been proposed for resolution of this dispute. Fifth, the shared interest of the several states in furthering fundamental substantive social policies "plays little role in this patent dispute." *Breckenridge Pharm., Inc.*, 444 F.3d at 1368. Thus, the second and third factors favor WesternGeco and the last two factors are minimally relevant. Even assuming that the first factor favors the Fugro Norway Defendants, they have not met their burden in demonstrating a "compelling case" that the exercise of personal jurisdiction would be unfair under *Burger King*.

In sum, we conclude that WesternGeco has established a *prima facie* case for the exercise of specific and general personal jurisdiction over the Fugro Norway Defendants.[10]

---

[10] As a result of this holding, we need not address WesternGeco's argument that the Fugro Norway Defendants be judicially estopped from contesting jurisdiction based on the representations of their counsel during court hearings held when only Ion was a defendant.

### B.        Failure to State a Claim

The Fugro Defendants argue that WesternGeco's allegations of infringement in the Chukchi Sea survey are not actionable under U.S. patent law. Further, three entities (Fugro, Inc., Fugro (USA), Inc., and Fugro Geoservices, Inc.) argue that dismissal is required on the additional ground that there is no allegation that these defendants infringed WesternGeco's patents in any location. Alternatively, the Fugro Defendants request that the Court order a more definite statement by WesternGeco pursuant to Rule 12(e).

In response, WesternGeco argues, first, that its complaint tracks Form 18 of the Federal Rules of Civil Procedure, which provides a form patent infringement complaint, and therefore is sufficient to avoid dismissal for failure to state a claim. Next, WesternGeco argues that acts taking place in the Chukchi Sea are acts within the United States for purposes of patent law. Finally, WesternGeco argues that components supplied from Dutch Harbor, Alaska are sufficient to state a claim for infringement under 35 U.S.C. § 271(f).

The Fugro Defendants' attack on WesternGeco's complaint can be divided into two categories: arguments that the pleadings do not meet Rule 8's pleading standards, and arguments that the pleadings, even if sufficient under Rule 8, fail as a matter of law. We will first address whether WesternGeco's complaint, and specifically its use of Form 18, complies with Rule 8's pleading standards. Next, we review whether, as a matter of law, the activities in the Chukchi Sea can constitute direct infringement by the Fugro Defendants under 35 U.S.C. § 271(a). Finally, we determine whether, as a matter of law, the supply of the *Geo Celtic* from Dutch Harbor, Alaska falls within the § 271(f)'s proscription on the supply of components from the United States or is exempt under 35 U.S.C. § 272.

### 1.        Sufficiency of Form 18 Complaint

As a general matter, we review whether WesternGeco's use of Form 18 of the Federal Rules of Civil Procedure as a template for its patent infringement complaint allows it to meet the pleading standards of Rule 8. The Federal Circuit has held that a complaint pleaded in conformity with Form 18 is sufficient to avoid dismissal for failure to state a claim even after the Supreme Court's decision in *Twombly*. *See McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-58 (Fed. Cir. 2007); *see also Petersen Indus. v. Hol-Mac Corp.*, No. 4:10-cv-152-CWR-FKB, 2011 U.S. Dist. LEXIS 13369 (S.D. Miss. Feb. 9, 2011) (holding that the logic of *McZeal* still stands after *Twombly* and *Iqbal*). Here, WesternGeco's complaint conforms to the structure and content of Form 18. In addition, paragraphs 34, 40, 46, 52, and 58 in WesternGeco's complaint are factual recitations as opposed to legal conclusions, and fulfill the general pleading requirements for patent infringement under §§ 271(a), (b), (c), and (f). *See, e.g.*, *McZeal*, 501 F.3d at 1356-57; *Tune Hunter, Inc. v. Samsung Telcoms. Am., LLC*, Civ. Action No. 2:09-cv-148-TJW, 2010 U.S. Dist. LEXIS 31980, *11-*13 (E.D. Tex. Apr. 1, 2010).

However, we cannot stop here. With respect to WesternGeco's claim for inducement of infringement under § 271(b),[11] the Federal Circuit has held that a plaintiff must show "that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements. The requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part) (internal quotations and citations omitted). Here, WesternGeco's complaint states that the Fugro Defendants were aware of WesternGeco's patents, used Ion's allegedly infringing devices in its seismic data acquisition, acted willfully to infringe WesternGeco's patents, and induced the infringement of those patents. We find these

---

[11] "Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).

allegations sufficient to state a claim for inducing infringement. This analysis is consistent with those of other courts, which have not required specific intent to induce infringement to be pleaded in the complaint. *See Tune Hunter, Inc.*, 2010 U.S. Dist. LEXIS 31980 at *12; *Mesh Comm, LLC v. EKA Sys.*, Case No. 8:09-cv-1064-T-33TGW, 2010 U.S. Dist. LEXIS 19452, *4 (M.D. Fla. Mar. 4, 2010); *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 927 (W.D. Wis. 2010); *Schindler Elevator Corp. v. Otis Elevator Co.*, Case No. 09-cv-0560, 2010 U.S. Dist. LEXIS 24906, *28-*29 (D.N.J. Mar. 16, 2010).

Similarly, contributory infringement under § 271(c)[12] requires knowledge on the part of the defendant that particular components of an invention being sold, offered to be sold, or imported into the United States are specially made for infringement. Here, the Fugro Defendants are alleged to be aware of WesternGeco's patents and to contribute to the infringement of those patents. Courts have found that this level of pleading is sufficient to state claim for contributory infringement. *See Tune Hunter, Inc.*, 2010 U.S. Dist. LEXIS 31980 at *12; *Mesh Comm, LLC v. EKA Sys.*, Case No. 8:09-cv-1064-T-33TGW, 2010 U.S. Dist. LEXIS 19452, *4 (M.D. Fla. Mar. 4, 2010).

Finally, WesternGeco's use of the collective term "Fugro" to refer to the actions of all Fugro Defendants, without distinguishing among the acts of each defendant, is not fatal to its complaint. The Federal Circuit has approved the use of a collective term within a complaint to refer to acts of all defendants without distinction among the exact infringing acts performed by each one. *See McZeal*, 501 F.3d at 1357 (holding that a complaint alleging only that "defendants" had offered an infringing product for sale, without regard to which of the two

---

[12] "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

defendants specifically had offered the product for sale, contained "enough detail to allow the defendants to answer"). In addition, WesternGeco's averments in its complaint, which we must accept as true, indicate that the Fugro Defendants operate as a world-wide integrated organization and under the trade name "Fugro Geo-team," which encompasses some or all of the Fugro Defendants. At this stage, WesternGeco may not know which Fugro Defendant performed what role in the allegedly infringing activity. However, the specific roles of each Fugro Defendant may be determined in discovery. *See id.* at 1357-58 (holding that plaintiff's complaint fashioned on publicly available information about how defendants' purportedly infringing device was sufficient and that specifics could be determined through discovery). The Fugro Defendants attempt to introduce facts about each Fugro Defendant in their motion to dismiss, but because they are unsubstantiated by attachments to the motion, we cannot consider such statements in our determination. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. Tex. 2000) (approving of use of *documents* attached by a defendant to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim."). We note the patent infringement cases cited by the Fugro Defendants in support of their argument that undistinguished facts asserted against multiple defendants generally in insufficient to state a claim against each. *See, e.g.*, *PLS-Pacific Laser Sys. V. TLZ Inc.*, 2007 U.S. Dist. LEXIS 53176 (N.D. Cal. July 9, 2007). However, we decline to follow these cases and instead adopt an approach we believe to be approved by the Federal Circuit in *McZeal*.

## 2. Direct Infringement in Chukchi Sea Survey

The Fugro Norway Defendants argue that none of the acts alleged to be infringing during the Chukchi Sea survey constitute infringement under U.S. patent law because they occur outside of the United States. Specifically, the survey's Plan of Operations identifies Statoil's location of

the lease holdings being surveyed as approximately 100 miles off the coast of Alaska.

WesternGeco contends that the lease holdings are within the Outer Continental Shelf ("OSC")

and the Exclusive Economic Zone ("EEZ") of the United States, both of which are within the

United States for purposes of U.S. patent law.

Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells

any patented invention, within the United States" infringes the patent. "It is well-established that

the reach of section 271(a) is limited to infringing activities that occur within the United States."

*See MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1376

(Fed. Cir. 2005); *Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000)

(quoting *Dowagiac Mfg. Co. v. Minn. Moline Plow Co*., 235 U.S. 641, 650 (1915)) ("[T]he right

conferred by a patent under our law is confined to the United States and its territories, and

infringement of this right cannot be predicated of acts wholly done in a foreign country."). The

term "United States" is defined broadly to include the "United States of America, its territories

and possessions." 35 U.S.C. § 100(c);

The issue presented here is whether the seas located approximately 100 miles away from

Alaska can be considered "territory" of the United States for purposes of patent law. Many cases

analyze the particular type of patent, and the "situs" of the infringing activity, in order to

determine whether infringement was within the United States. *See, e.g.*, *Transocean Offshore

Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1307-10 (Fed. Cir.

2010) (whether "offers to sell" occurred within the United States); *NTP, Inc. v. Research In

Motion, Ltd.*, 418 F.3d 1282, 1313-24 (Fed. Cir. 2005) (whether infringement of system and

method patent occurred in the United States); *MEMC Elec. Materials, Inc.*, 420 F.3d at 1375-77

(whether "offers to sell" occurred within the United States); *Rotec Indus.*, 215 F.3d at 1251-57 (same).

Far fewer courts have addressed whether a particular geographic area is United States territory. The line of cases begin with *Brown v. Duchesne*, 60 U.S. (19 How.) 183 (1857), in which the Supreme Court held that U.S. patent law did not apply to foreign commercial vessels coming into the ports of the United States temporarily that carried, but did not use, infringing items. *Brown* did not squarely answer a question of whether a particular area constituted territory of the United States, but referred to use of a patented invention on the high seas as "out of the jurisdiction of the United States." *Id.* at 599-600. Distinguishing *Brown*, the next case, *Gardiner v. Howe*, 9 F. Cas. 1157 (C.C.D. Mass. 1865), held that U.S. patent law reached infringement occurring upon a U.S. flag vessel on the high seas. Recognizing that patent law affords "no protection to inventions beyond or outside the jurisdiction of the United States," the court nonetheless concluded that, because the decks of American vessels were subject to U.S. jurisdiction, the vessels would be subject to U.S. patent law. *Id.* at 1158. In *Marconi Wireless Tel. Co. v. United States*, 99 Ct. Cl. 1 (Ct. Cl. 1942), *aff'd in part and rev'd in part on other grounds*, 320 U.S. 1 (1943), a district court relied on *Gardiner* and *Brown* to hold that the manufacture and use of infringing receivers in the United States Naval Radio Station at the American Legion in Peking, China, occurred within the "United States, and the Territories thereof." *Id.* at 67-68. *Marconi* and *Gardiner* have fared poorly. In *Decca Ltd. v. United States*, 210 Ct. Cl. 546 (Ct. Cl. 1976), the Court of Claims declined to rely on the cases in addressing whether infringing activity was within the reach of our patent law. The infringing device at issue was the U.S. Government's worldwide Omega system for position ships and aircraft. The system comprised radio stations in the United States and Norway and receivers on U.S. ships and

aircraft. The court noted that intervening case law involving the reach of United States law to United States flag ships at sea and to vessels beneficially owned by United States nationals, but under foreign flags, made reliance on *Gardiner* and *Marconi* difficult. Instead, the court chose to interpret the system as "located" in the United States, not because of the receivers on the ships, because of the radio stations built in the United States. *Id.* at 553.  In *Ocean Science Engineering, Inc. v. United States*, 595 F.2d 572 (Ct. Cl. 1979), the court went further to recognize that the Supreme Court "has strictly limited the scope of patent laws (which create monopolies) to the express provisions of the statute." *Id.* at 573 (citing *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229-30 (1964)). Under the doctrine of strict construction, the court in *Ocean Science* believed that Congress's intent to have U.S. patent law apply to processes carried out on U.S. flag ships and planes at sea was dubious. With this case law in mind, we determine whether the seas traversed by the Fugro Defendants' vessels may be considered territory of the United States for purposes of our patent law.

### a. The High Seas as U.S. Territory

An examination of the territorial reach of U.S. patent law must begin with the fact that "patents arise out of an act by the government of the granting country." 3 *Moy's Walker on Patents* § 12:10, at 12-25 (4th ed. 2004). As such, "a patent is a sovereign grant and has no force beyond the territorial limits of sovereignty." *Hanover Star Milling Co. v. Allen & Wheeler Co.*, 208 Fed. 513 (7th Cir. 1913); Opinion of the Comptroller General of the United States, 150 U.S.P.Q. 298, 300, 1968 WL 8347 (Comp. Gen. 1968) ("It is a fundamental concept that territorial limitations of sovereignty preclude a country from giving extraterritorial effect to its patent laws.").

The United States possesses different forms of sovereign rights and territorial jurisdiction over a series of geographic zones that extend away from the terrestrial limits of its coast. *See Louisiana Boundary Case*, 394 U.S. 11, 22-23 (1969). First, the United States possesses complete sovereignty over the territorial sea—a belt of sea that extends no more than 12 miles seaward of the baseline[13] of the coastal state. *See* Presidential Proclamation No. 5928, Dec. 27, 1988, 54 Fed. Reg. 777 (1988); *Restatement (3d) of the Foreign Relations Law of the United States* § 511(a) (1987) [hereinafter Restatement (3d) of Foreign Relations Law]; Third United Nations Convention on the Law of the Sea arts. 2, 3, Dec. 10, 1982, 1833 U.N.T.S. 397 (1982) [hereinafter UNCLOS].[14] Second, the United States possesses limited policy rights within the contiguous zone—a belt of sea contiguous to the territorial sea, which extends up to 24 miles seaward of baseline from which the territorial sea is measured.[15] *See* Presidential Proclamation No. 7219, Sept. 2, 1999, 64 Fed. Reg. 48701 (1999); Restatement (3d) of Foreign Relations Law § 511(b), cmt. a; UNCLOS arts. 1, 2. Third, the United States possesses sovereign rights over the natural resources located in the continental shelf—the seabed and subsoil of the submarine areas

---

[13] The "baseline" is defined as either the "low-water line along the coast or the seaward limit of the internal waters of the coastal state." Restatement (3d) of Foreign Relations Law § 511(a). The United States has complete sovereignty over its internal waters. *Louisiana Boundary Case*, 394 U.S. at 22.

[14] Though the United States is a signatory to UNCLOS, the Senate has not ratified it. *See United States v. Kun Yun Jho*, 534 F.3d 398, 406 (5th Cir. 2008). However, because customary international law is part of the law of the United States, certain provisions of UNCLOS that reflect customary international law are binding upon the United States. *See The Paquete Habana*, 175 U.S. 677 (1900); 1 *Thomas J. Schoenbaum*, *Admiralty and Mar. Law* § 2-2, at 23 (4th ed. 2004) [hereinafter Schoenbaum, Admiralty and Mar. Law]. "With respect to the 'traditional uses' of the sea . . . the United States accepts [UNCLOS] as customary international law, binding upon the United States." Schoenbaum, Admiralty and Mar. Law § 2-2, at 24 (relying upon Presidential statement accompanying Presidential Proclamation No. 5030, which states that the "traditional uses of the ocean" outlined in UNCLOS "generally confirm international law and practice" and that the United States will accept and act in accordance with the traditional uses). Specifically, the United States has acknowledged that the provisions of UNCLOS regarding the EEZ are declarative of customary international law. *See Mayaguezanos por la Salud y el Ambiente v. United States*, 198 F.3d 297, 305 n.14 (1st Cir. 1999); Restatement (3d) of Foreign Relations Law § 514, cmt. a, Reporter's Note 1. Additionally, as a signatory to the Convention, the United States is generally "obliged to refrain from acts that would defeat the object and purpose of the agreement." *Mayaguezanos*, 198 F.3d at 305 n. 14 (citing *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 638 n.9 (5th Cir. 1994); Restatement (3d) of Foreign Relations Law, introductory note, at 145).

[15] These policy rights include the ability to prevent violations of its customs, fiscal, immigration, or sanitary laws. *See* Presidential Proclamation No. 7219.

that extend beyond its territorial seas. Restatement (3d) of Foreign Relations Law § 511(c), cmt. a; UNCLOS arts. 76-77. Fourth, the United States possesses sovereign rights in economic exploitation of natural resources and jurisdiction over marine scientific research within the Exclusive Economic Zone ("EEZ")—a belt of sea that extends no more than 200 miles seaward of the baseline from which the breadth of the territorial sea is measured. *See* 16 U.S.C. § 1811; Presidential Proclamation No. 5030, Mar. 10, 1983, 48 Fed. Reg. 10605 (1983); Restatement (3d) of Foreign Relations Law § 511(d), cmt. a; UNCLOS arts. 55-57. Finally, "[o]utside the territorial sea are the high seas, which are international waters not subject to the dominion of any single nation." *Louisiana Boundary Case*, 394 U.S. at 23; *see also* Convention on the High Seas, art. 1, Apr. 29, 1958, 13 U.S.T. 2312, 450 U.N.T.S. 82 (the high seas are "all parts of the sea not included in the territorial sea or in the internal waters of a State.") [hereinafter "Convention on the High Seas"]. UNCLOS changed the definition of the high seas to "all parts of the sea that are not included in the exclusive economic zone, in the territorial sea or in the internal waters of State," but also confirmed that a significant proportion of the freedom of the high seas are applicable in the EEZ.[16] UNCLOS arts. 58(1), 86; Restatement (3d) of Foreign Relations Law § 521 cmt. a (recognizing conflicting definitions of "high seas" in UNCLOS and the Convention on the High Seas).

Here, we must review the three different statuses of the portion of the Chukchi Sea surveyed by the Fugro Norway Defendants—as high seas, as U.S. EEZ, and as superjacent to U.S. continental shelf—in order to determine whether the geographic area can be deemed U.S. territory subject to U.S. patent law. First, we determine whether the Chukchi Sea, when

---

[16] The freedom of the high seas include freedom of navigation, freedom of overflight, and subject to certain conditions outlined in UNCLOS, freedom to lay submarine cables and pipelines, freedom to construct artificial islands and other installations permitted under international law, freedom of fishing, and freedom of scientific research. UNCLOS art. 87.

considered as "high seas," is U.S. territory. It is a fundamental principle of customary international law that no state may exercise sovereignty over the high seas. *Louisiana Boundary Case*, 394 U.S. at 23; *see also* Restatement (3d) of Foreign Relations Law § 521 cmt. a ("No state may appropriate any part of the high seas or otherwise subject the high seas to its sovereignty."); *Ian Brownlie*, *Principles of Public International Law* 226 (7th ed. 2008) ("The high seas being open to all nations, no State may validly purport to subject any part of them to its sovereignty.").[17] Courts have recognized that the high seas are not territory of the United States. *Ocean Science & Engineering, Inc.*, 219 Ct. Cl. at 573 (high seas are "outside the United States" as defined in 35 U.S.C. § 100); *Brown v. Duchesne*, 60 U.S. (19 How.) at 599-600 (high seas are "out of the jurisdiction of the United States" and the reach of U.S. patent law). In addition, jurisdiction over ships on the high seas is determined according to the law of the flag doctrine. *Lauritzen v. Larsen*, 345 U.S. 571, 585 (1953). Under this doctrine, a ship on the high seas is considered to be "part of the territory of the country whose flag she flies, and [] actions aboard that ship are subject to the laws of the flag state." *Kun Yun Jho*, 534 F.3d at 405-06 (citing *Cunard S.S. Co. v. Mellon*, 262 U.S. 100, 123 (1923)); *see also* Convention on the High Seas art. 6; UNCLOS art. 92. Though one court has recognized that U.S. patent law reaches infringement occurring upon a U.S. flag vessel on the high seas, *see Gardiner v. Howe*, 9 F. Cas. 1157 (C.C.D. Mass. 1865), no court has extended this holding to foreign flag vessels on the high seas. The *Geo Celtic*, which carries the Ion devices, is flown under the flag of Norway. The law of the flag doctrine instructs us that the *Geo Celtic* is subject to the jurisdiction and laws of Norway. While

---

[17] Although a state may, in limited circumstances, extend its jurisdiction beyond the territorial limits of its sovereignty, any such extension is "subject to the consent of other nations." *See United States v. Louisiana*, 363 U.S. 1, 34 (1960); *see also United States v. California*, 332 U.S. 19, 35 (1947) (stating that "whatever any nation does in the open sea, which detracts from its common usefulness to nations, or which another nation may charge detracts from it, is a question for consideration among nations as such, and not their separate governmental units" (footnote omitted)). The requirement of consent again confirms that the high seas cannot be considered the territory of any one State.

the *Geo Celtic* sails the high seas, the United States's sovereignty does not extend to the vessel or to the high seas it traverses. Thus, U.S. patent law, which limits direct infringement to acts occurring within the United States and its territories, cannot proscribe the *Geo Celtic*'s direct infringement when it occurs upon the high seas.

### b. The EEZ as U.S. Territory

Second, we determine whether the Chukchi Sea, when considered as the U.S. EEZ, is U.S. territory. The Presidential Proclamation establishing the EEZ stated that:

> Within the Exclusive Economic Zone, the United States has, to the extent permitted by international law, (a) sovereign rights for the purpose of exploring, exploiting, conserving and managing natural resources, both living and non-living, of the seabed and subsoil and the superjacent waters and with regard to other activities for the economic exploitation and exploration of the zone, such as the production of energy from the water, currents and winds; and (b) jurisdiction with regard to the establishment and use of artificial islands, and installations and structures having economic purposes, and the protection and preservation of the marine environment.

Presidential Proclamation No. 5030. Congress has enacted extensive legislation to implement the sovereign rights recognized by this Presidential statement. *See* Schoenbaum, Admiralty & Mar. Law § 2-16, at 39 (citing legislation). However, the Proclamation also explicitly provides that, "[w]ithout prejudice to the sovereign rights and jurisdiction of the United States, the Exclusive Economic Zone remains an area beyond the territory and territorial sea of the United States in which all States enjoy the high seas freedoms of navigation, overflight, the laying of submarine cables and pipelines, and other internationally lawful uses of the sea." Presidential Proclamation No. 5030. This provision incorporates the principle that the sovereign rights that the United States enjoys in its EEZ and continental shelf are "functional in character, limited to specified activities." Restatement (3d) of Foreign Relations Law § 511 cmt. b.

The Fugro Norway Defendants are engaged in activity that arguably could be characterized as exploration of "natural resources, both living and non-living, of the seabed and

subsoil" in the EEZ, which is subject to the United States's sovereign rights. Under one

analytical approach, the fact that the United States possesses a subset of resource-related

sovereign rights over these activities in the EEZ and possesses the power to enforce patent law

within the territorial limits of its sovereignty leads to the conclusion that U.S. patent law applies

to natural resource-related activity that occurs in the EEZ. However, we decline to take that

approach for three reasons. First, the Presidential Proclamation establishing the EEZ explicitly

acknowledges that the extension of sovereign rights over the EEZ does not change the EEZ's

character as outside the territory of the United States. Customary international law and UNCLOS

reaffirm the principle that a country's EEZ retains its character as outside the territory of that

country and largely maintains its status as high seas. The Australian patent statute cited by

WesternGeco as support for the proposition that a country's patent law covers the EEZ may be

interpreted in an opposite manner. The statute expressly states that it shall "extend to: (a) each

external territory; and (b) the Australian continental shelf; and (c) the waters above the

Australian continental shelf; and (d) the airspace above Australia, each external Territory and the

Australian continental shelf." Patents Act 1990 (Cth) § 12 (Australia). The provision "the waters

above the Australian continental shelf" would refer to the Australian EEZ. Rather than firmly

establishing that Australia considers the EEZ to be part of its territory, the statute supports an

interpretation that Australia has made a separate provision for the application of its patent law to

the EEZ because the EEZ is not its territory. The opposite reading—that Australia considers the

EEZ to be its territory—would render the phrase "waters above the Australian continental shelf"

superfluous because the statute already contains text extending the patent law to "each external

territory." *See TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal citations and quotation

marks omitted) ("It is a cardinal principle of statutory construction that a statute ought, upon the

whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

Second, the United States does not possess full sovereign rights over the EEZ, but only a certain subset of rights related to economic exploration and exploitation. Moreover, its jurisdiction is even further circumscribed to the establishment and use of artificial islands, installations and structures, and protection of the marine environment, and does not include jurisdiction over marine scientific research. Presidential Proclamation No. 5030. The *Geo Celtic* is a marine vessel that does not fall within the categories of items or issues subject to U.S. jurisdiction. WesternGeco cites a South African case holding that South African patent law extends to the South African EEZ, but fails to note that the infringing activity concerned a pipeline, which was held to be an "installation" as defined by UNCLOS and subject to South African jurisdiction. *See Schlumberger Logelco, Inc. v. CoFlexip*, Case No. 700/98 (Supr. Ct. App. S. Afr. May 25, 2000).

Third, Congress has not enacted legislation that extends U.S. patent law to cover infringement occurring in the EEZ. Without express statutory instruction, courts are reluctant to extend the geographic reach of a patent right. *See John Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1367 (Fed. Cir. 1998) (declining to extend 35 U.S.C. § 283 to enjoin activities in a foreign country that did not constitute infringement within the United States); *Rotec Indus.*, 215 F.3d at 1257-58 (declining to extend the amendment to 35 U.S.C. § 271(a) to § 271(f)(2) in order to proscribe "offers to supply" from the United States components of a patented invention where offers were made in the United States); *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518 (1972), *superseded by statute*, 35 U.S.C. § 271(f) (declining to enjoin the manufacture of parts of a patented invention in the United States as "making" under § 271(a) when the operable

assembly of the parts did not occur within the United States). In *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437 (2007), the Supreme Court reaffirmed that the "presumption that United States law governs domestically but does not rule the world applies with particular force in patent law." *Id.* at 454-55. At issue in *Microsoft* was the supply of intangible data from the United States for copying abroad, which AT&T argued should be actionable under § 271(f). Though the installation of copied data allowed infringement to occur abroad, the Supreme Court held that the supply of "component" under § 271(f) applied only to tangible forms of software. *Id.* at 451-52. Noting that such an interpretation of § 271(f) left a "loophole" that could be exploited by software makers, the Court nevertheless believed the loophole to be "properly left for Congress to consider, and to close if it finds such action warranted" due to the "expanded extraterritorial thrust" closure would require. *Id.* at 457, 458 (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 431 (1984) ("In a case like this, in which Congress has not plainly marked our course, we must be circumspect in construing the scope of rights created by legislative enactment which never contemplated such a calculus of interests.").

    A similar loophole would appear to exist here—as the EEZ is outside of the territorial United States, and Congress has limited the reach of U.S. patent law to the United States and its territories, infringing activity would not be actionable under U.S. patent law. Even though U.S. jurisdiction has been extended to the EEZ for some, but not all activities, this begs the question of whether it takes U.S. patent law—which territorially limited—along with it. Congress could extend the reach of U.S. patent law to encompass marine scientific research occurring in the EEZ, as countries such as Australia and the United Kingdom have done. *See Litecubes, LLC v. Northern Light Products, Inc.*, 523 F.3d 1353, 1363 (Fed. Cir. 2008) (quoting *EEOC v. Arabian Am. Oil. Co.*, 499 U.S. 244, 248 (1991)) ("Congress has the authority to enforce its laws beyond

the territorial boundaries of the United States."); Patents Act 1990 (Cth) § 12(c) (Australia);

Patents Act 1977 § 132(4) (UK); *cf.* UNCLOS art. 246 ("Coastal States, in the exercise of their

jurisdiction, have the right to regulate, authorize and conduct marine scientific research in their

exclusive economic zone and on their continental shelf in accordance with the relevant

provisions of this Convention."). With Congressional action, however, we refrain from doing so.

Thus, we find that the Fugro Norway Defendants' activities in the EEZ do not occur

within the territory of the United States for purposes of U.S. patent law.

### c.      The Outer Continental Shelf as U.S. Territory

Finally, we examine whether the Fugro Norway Defendants' activities with respect to the

continental shelf are considered to be within the territory of the United States. Under the Outer

Continental Shelf Lands Act ("OCSLA"), the federal government has jurisdiction and control

over the continental shelf. *See* 43 U.S.C. §§ 1301, 1331(a), 1332. OSCLA mandates:

> The Constitution and laws and civil and political jurisdiction of the United States are
> hereby extended to the subsoil and seabed of the outer Continental Shelf and to all
> artificial islands, and all installations and other devices permanently or temporarily
> attached to the seabed, which may be erected thereon for the purpose of exploring for,
> developing, or producing resources therefrom, or any such installation or other device
> (other than a ship or vessel) for the purpose of transporting such resources, to the same
> extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction
> located within a State: Provided, however, That mineral leases on the outer Continental
> Shelf shall be maintained or issued only under the provisions of this Act.

43 U.S.C. § 1333(a)(1); *see also Shell Oil Co. v. Iowa Dep't of Revenue*, 488 U.S. 19, 27 (1988).

However, OCSLA must be "construed in such a manner that the character of the waters above

the outer Continental Shelf as high seas . . . shall not be affected." 43 U.S.C. § 1332(2); *see also*

UNCLOS art. 78(1) ("The rights of the coastal State over the continental shelf do not affect the

legal status of the superjacent waters or of the air space above those waters."). Federal district

courts have jurisdiction over cases and controversies arising out of operations conducted on the

OCS "which involve[] exploration, development, or production of the minerals, of the subsoil and seabed of the [OCS] . . . ." 43 U.S.C. § 1349(b)(1). "Exploration" is defined under OCSLA as "the process of searching for minerals, including (1) geophysical surveys where magnetic, gravity, seismic, or other systems are used to detect or imply the presence of such minerals . . ." 43 U.S.C. § 1331(k).

OCSLA can be read as providing the Court with subject matter jurisdiction to hear this dispute because it relates to the exploration of lease holdings in the OCS. *See* 43 U.S.C. § 1331(k); *Texaco Exploration & Prod. v. Amclyde Engineered Prods.*, 448 F.3d 760, 769 (5th Cir. 2006) (recognizing that OCSLA's jurisdictional grant is broad). However, the broad grant of subject matter jurisdiction does not also extend the reach of U.S. substantive law, including patent law, to exploration activities. Rather, substantive law is provided via § 1333, which states that United States law applies to the seabed and subsoil of the OCS, to devices permanently or temporarily attached to the seabed, or to devices or vessels meant to transport resources obtained from the seabed. *See* 43 U.S.C. § 1333(a)(1); *see also Demette v. Falcon Drilling Co.*, 280 F.3d 492, 496 (5th Cir. 2002), *overruled on other grounds by Grand Isle Shipyard Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 788 (5th Cir. 2009). Section 1333 does not extend substantive law to vessels traversing the seas above the OSC for purposes of conducting seismic exploration, and that are neither permanent nor temporarily attached to the seabed.

WesternGeco conflates the character of the OSC as an area subject to federal regulatory and permitting authority with the character of the seas above the OSC, which both customary international law and OSCLA maintain as "high seas." WesternGeco has not alleged facts to suggest that the *Geo Celtic* falls within any of the categories set forth in § 1333(a)(1) as subject to the laws of the United States. Indeed, the *Geo Celtic* appears to perform seismic data

acquisition while traversing the seas above the OCS and does not attach itself to the seabed. Thus, OCSLA's extension of U.S. law cannot be used to extend U.S. patent law to cover the acts of infringement alleged here. *See Offshore Logistics v. Tallentire*, 477 U.S. 207, 218 (1986) ("The extension of OCSLA far beyond its intended locale to the accident in this case simply cannot be reconciled with either the narrowly circumscribed area defined by the statute or the statutory prescription that the Act not be construed to affect the high seas which cover the Continental Shelf.").

In sum, we hold that the acts of direct infringement the Fugro Norway Defendants are alleged to have performed while surveying Statoil's lease holdings in the Chukchi Sea are outside the territory of the United States and thus not actionable under 35 U.S.C. § 271(a). We note, however, the limited nature of this holding. The Fugro Defendants have not challenged WesternGeco's allegations of their direct infringement in the form of "sale" or "offers to sell" in the United States. In addition, The parties have not contested, and we decline to decide, whether the Chukchi Sea survey can, as a matter of law, constitute inducing or contributory infringement under §§ 271(b), (c). Indeed, several courts have held that § 271(b) "applies to exclusively territorial conduct." *Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co.*, 479 F. Supp. 2d 388, 409 (S.D.N.Y. 2007) (collecting cases). The Federal Circuit has not definitively addressed whether inducing activity extraterritorially can give rise to liability under U.S. patent law, *see MEMC Electronics Materials, Inc.*, 420 F.3d at 1379 (leaving open the question), but has not rejected the principle out of hand. *See DSU Medical Corp.*, 471 F.3d at 1305 (en banc) (quoting with approval jury instruction stating, "Unlike direct infringement, which must take place in the United States, induced infringement does not require any activity by the indirect infringer in this country, as long as the direct infringement occurs here."); *Crystal Semiconductor*

43

*Corp. v. Tritech Microelectronics Int'l*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (holding that, though defendant did not practice the claimed method in the United States and could not be held liable for direct infringement, its sale of an infringing chip to a U.S. customer constituted active inducement under 35 U.S.C. § 271(b)). As for the requirement that inducing and contributory infringement require the presence of direct infringement, the acts of direct infringement may be performed by a party other than the Fugro Defendants. *See Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement though the direct infringer is typically someone other than the defendant accused of indirect infringement."). Thus, we leave intact WesternGeco's claims for inducing and contributory infringement under §§ 271(b), (c).

### 3.    Infringement under § 271(f) in Dutch Harbor, Alaska

The Fugro US Defendants and the Fugro Norway Defendants argue that the complaint fails to allege that any act of infringement will occur in the port of Dutch Harbor, Alaska. The Plan of Operations for the Chukchi Sea survey states that Dutch Harbor is where the *Geo Celtic* will load crew and supplies before heading to the lease holdings to conduct the survey. Even if an act of infringement were to take place in Dutch Harbor, the Fugro Defendants argue that this activity falls within the exemption of 35 U.S.C. § 272. WesternGeco argues that infringing components and equipment will be provided from Dutch Harbor, Alaska in violation of 35 U.S.C. § 271(f) and that § 272 does not exempt the Fugro Defendants from liability.

### a.    Does WesternGeco's complaint state a claim for infringement under § 271(f)?

Section 271(f) states:

(1) Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

(2) Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f). This section requires that the infringing act—supplying or causing to be supplied components for infringement upon a patent—take place within the United States. *See Pellegrini v. Analog Devices, Inc.*, 375 F.3d 1113, 1117 (Fed. Cir. 2004) (§ 271(f) "applies only where components of a patent invention are physically present in the United States and then either sold or exported "in such a manner as to actively induce the combination of such components outside the United States in a manner that would infringe the patent if such combination occurred within the United States."). "Supplying or causing to be supplied" in § 271(f)(1) refers to the "physical supply of components, not simply to the supply of instructions or corporate oversight." *Id.* at 1118. Section 271(f) does not apply to method patents. *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 576 F.3d 1348, 1365 (Fed. Cir. 2009).

Here, all five patents owned by WesternGeco recite apparatus claims and fall within the scope of § 271(f), though their method claims cannot be infringed under § 271(f). WesternGeco bases its § 271(f) allegation on the theory that the Fugro Defendants have supplied or caused to be supplied from Dutch Harbor components of infringing seismic streamer technology. The Plan of Operations of the Chukchi Sea survey states that the *Geo Celtic* will be "supplied" from Dutch Harbor before it travels to the Chukchi Sea to complete its survey, which allegedly will use

infringing Ion seismic streamer arrays. No further detail is provided in the Plan of Operations or in the complaint itself about the items to be supplied when the *Geo Celtic* berths at Dutch Harbor. The description of the *Geo Celtic*'s specifications suggests that allegedly infringing Ion software and products are already installed on the *Geo Celtic*. Viewing the facts alleged in the light most favorable to WesternGeco, as we must, the complaint alleges sufficient facts to make out a plausible claim that components of the infringing apparatus were supplied by the Fugro Defendants to the *Geo Celtic* while it was located in Dutch Harbor. This is not an "unwarranted deduction" because the entire purpose of the Chukchi Sea survey was to perform seismic data acquisition. Thus, "supply" of the *Geo Celtic* before it set off on its seismic survey may have included supply of the components needed to perform the survey. Further, the complaint alleges that the Fugro Defendants were aware of WesternGeco's patents, thereby providing sufficient allegations that the Fugro Defendants possessed the requisite intent under § 271(f) to induce the combination of components in a manner that would infringe the patents. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006). Thus, we conclude that WesternGeco has stated a claim against the Fugro Defendants for infringement under § 271(f) of the apparatus claims of its patents.

> **b.      Do the Fugro Defendants' activities fall within the exemption of § 272?**

Section 272 provides that:

> The use of any invention in any vessel, aircraft or vehicle of any country which affords similar privileges to vessels, aircraft or vehicles of the United States, entering the United States temporarily or accidentally, shall not constitute infringement of any patent, if the invention is used exclusively for the needs of the vessel, aircraft or vehicle and is not offered for sale or sold in or used for the manufacture of anything to be sold in or exported from the United States.

35 U.S.C. § 272. A vehicle entering the United States "temporarily" is one "entering the United States for a limited period of time for the sole purpose of engaging in international commerce." *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1329 (Fed. Cir. 2004). In *Nat'l Steel Car*, the Federal Circuit found "international commerce" fulfilled where a train car entered the United States "to unload foreign goods and/or to load domestic goods destined for foreign markets." *Id.* at 1331. An invention is "used exclusively for the needs of the vessel" where it used either in the construction or operation of the vehicle. *Id.* at 1333.

WesternGeco argues that the infringing Ion devices installed on the *Geo Celtic* are neither used "in" the *Geo Celtic* (in other words, they are towed "behind" the vessel) nor used exclusively for the needs of the vessel. In addition, WesternGeco argues that the *Geo Celtic* will not be in the United States temporarily and that the infringing Ion products will be used in the manufacture of seismic data to be sold in and exported from the United States. The Fugro Defendants argue that the Ion devices are a need of the *Geo Celtic*, that they are used "in" the *Geo Celtic*, that the *Geo Celtic* is in the United States temporarily, and that the Ion products will not be sold in the United States.

The complaint and its attachments allege that the *Geo Celtic* will use the Ion devices to conduct a seismic survey of the Chukchi Sea. The seismic survey is "designed to collect 3D data of the deep sub-surface in the area of Statoil's lease holdings" in order to "support future oil and gas exploration within the area of coverage." (Compl., Ex. F at 1.) These facts indicate the use of Ion's devices—the allegedly infringing invention—to manufacture 3D data. Next, the party to be provided with the 3D data is Statoil, a company located and doing business in the United States according to the Plan of Operations. Statoil has contracted with Fugro Geoteam, Inc., which uses vessels operated and managed by the Fugro Norway Defendants, to obtain the 3D data. The 3D

data has been sold in the United States in the sense that it has been sold by one U.S. company to

another. Since we conclude that, based on the complaint and the attachments, the *Geo Celtic*

used the allegedly infringing invention for the manufacture of an item to be sold in the United

States, we need not review the other issues related to exclusive use for the needs of the vessel,

use within the vessel, and temporary presence.

## V.      CONCLUSION

For the reasons stated above, the Fugro Norway Defendants' Motion to Dismiss for lack

of personal jurisdiction (Doc. No. 133) is **DENIED**. The Fugro US Defendants and the Fugro

Norway Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) and, in the Alternative, Rule

12(e) Motion for a More Definite Statement (Doc. No. 123) is **GRANTED IN PART** and

**DENIED IN PART**, as follows:

1. To the extent the motion seeks dismissal of claims of direct infringement under 35

   U.S.C. § 271(a) based upon the Fugro Defendants' acts located in or upon Statoil's

   lease holdings in the Chukchi Sea, the motion is **GRANTED**.

2. In all other respects, the motion is **DENIED**.

WesternGeco is **GRANTED** leave to amend its complaint within ten (10) days of this Order to

add a request for a declaratory judgment under 28 U.S.C. § 2201.

**IT IS SO ORDERED**.

**SIGNED** this 2nd day of March, 2011.

_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE