IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTERNGECO L.L.C., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:09-CV-01827 |
| | ) | |
| ION GEOPHYSICAL CORPORATION, | ) | **Jury Trial Demanded** |
| FUGRO-GEOTEAM, INC., FUGRO-GEOTEAM | ) | |
| AS, FUGRO NORWAY MARINE SERVICES AS, | ) | |
| FUGRO, INC., FUGRO (USA), INC. | ) | |
| and FUGRO GEOSERVICES, INC., | ) | |
| | ) | |
| *Defendants.* | ) | |

## WESTERNGECO'S MOTION FOR SUMMARY JUDGMENT ON ION'S INEQUITABLE CONDUCT DEFENSE AND ANTITRUST COUNTERCLAIM REGARDING THE ZAJAC '038 PATENT

*Of Counsel:*

Gregg F. LoCascio, P.C.
gregg.locascio@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Tel.: (202) 879-5000
Fax: (202) 879-5200

Timothy K. Gilman
timothy.gilman@kirkland.com
Simeon G. Papacostas
simeon.papacostas@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel.: (212) 446-4800
Fax: (212) 446-4900

Dated: October 7, 2011

Lee L. Kaplan
lkaplan@skv.com
SMYSER KAPLAN
  & VESELKA, L.L.P.
Bank of America Center
700 Louisiana, Suite 2300
Houston, TX 77002
Tel: (713) 221-2323
Fax: (713) 221-2320

*Attorneys for Plaintiff/Counterclaim Defendant
WesternGeco L.L.C.*

WesternGeco L.L.C. ("WesternGeco") respectfully moves for summary judgment on ION Geophysical Corp.'s ("ION's") Fourth Affirmative Defense and Eleventh Counterclaim and defendants Fugro-Geoteam, Inc.'s, Fugro-Geoteam AS', Fugro Norway Marine Services AS', Fugro, Inc.'s, Fugro (USA), Inc.'s, and Fugro Geoservices, Inc.'s (collectively, "Fugro's") Fourth Affirmative Defense and Second Counterclaim premised on alleged inequitable conduct before the United States Patent & Trademark Office ("PTO") during the prosecution of United States Patent No. 6,691,038 ("the Zajac '038 patent").

## SUMMARY OF ARGUMENT

WesternGeco filed its Complaint on June 12, 2009 to halt Defendants' willful infringement of, *inter alia*, the Zajac '038 patent. (D.I. 1) In response, ION filed an affirmative defense that the Zajac '038 patent is unenforceable due to alleged inequitable conduct before the PTO. (D.I. 6) ION also filed a counterclaim for an antitrust violation for WesternGeco's assertion of a patent obtained through this alleged inequitable conduct. (*Id.*) After being joined to this case, Fugro filed a similar affirmative defense and declaratory judgment counterclaim for the alleged unenforceability of the Zajac '038 patent. (D.I. 165) The sole basis for all of these defenses and counterclaims is that the attorney prosecuting the application that led to the Zajac '038 patent allegedly mischaracterized a prior art reference that he had previously disclosed to the PTO.

Even if the Defendants' allegation were true—which it is not—it is insufficient as a matter of law to prove inequitable conduct. The Federal Circuit has repeatedly held that an alleged mischaracterization of disclosed prior art is mere attorney argument. It is not a mischaracterization of material fact. Accordingly, courts routinely grant summary judgment against defenses and counterclaims premised on such allegations. This case is no different—ION's "Fourth Affirmative Defense" and "Eleventh Counterclaim," and Fugro's "Fourth

Affirmative Defense" and "Second Counterclaim," all fail as a matter of law and should be resolved at this stage of the proceedings.

## NATURE AND STAGE OF THE PROCEEDING

WesternGeco filed its Complaint on June 12, 2009 to halt ION's willful infringement of five patents relating to steerable seismic streamers. (D.I. 1) On June 16, 2009, ION filed its Answer, Affirmative Defenses, And Counterclaims ("ION's Answer") asserting seven affirmative defenses and eleven counterclaims. (D.I. 6) On July 16, 2010, WesternGeco's claims against Fugro for willful infringement of the same five patents based on, *inter alia*, Fugro's use of ION equipment, were joined with this case. (D.I. 119) On August 26, 2011, the Fugro defendants filed their Answer to WesternGeco's Amended Complaint ("Fugro's Answer") asserting seven affirmative defenses and two counterclaims. (D.I. 165)

Trial was originally scheduled to begin last year. (D.I. 22) The September 13, 2010 trial date was stayed due to the consolidation of WesternGeco's claims against Fugro and the parties have jointly proposed a trial date of May 21, 2012. (D.I. 166)

## STATEMENT OF FACTS

The Zajac '038 patent is titled "Active Separation Tracking and Positioning Systems for Towed Seismic Arrays," and is based on United States Patent Application No. 09/882,952, filed on June 15, 2001. (Ex. 1 at WG 1) It claims a seismic streamer "tracking and positioning system" for controlling the geometry of arrays of marine streamers towed by seismic vessels. (*See, e.g., id.* at WG 13, col. 11, lns. 14-26) This includes "issuing positioning commands . . . to adjust a vertical and horizontal position . . . for maintaining a specified array geometry." (*Id.*)

G. Michael Roebuck, the attorney prosecuting the patent application on behalf of WesternGeco, filed an Information Disclosure Statement ("IDS") on January 14, 2002 that disclosed Patent Cooperation Treaty Publication No. WO 00/20895 ("the '895 publication" or

2

"the Hillesund reference") as a potential prior art reference. (Ex. 2 at WG 147-148) The '895 publication discloses a "Control System for Positioning of Marine Seismic Streamers." (Ex. 3 at WG 25219) It also discloses streamer positioning devices, or "birds," that are "vertically and horizontally steerable." (*See, e.g., id.* at WG 25226) Much of the specification of the '895 publication, however, focuses on the horizontal steering of streamers. (*Id.* at WG 25226 (discussing "horizontal steering"); WG 25227 (discussing "horizontal positions")) The '895 publication does not mention a "tracking and positioning system" or "array geometry." (Ex. 3)

After the '895 publication was disclosed to the PTO by Mr. Roebuck, the PTO Examiner initialed the IDS entry for the reference, indicating that he reviewed and considered this prior art in evaluating the Zajac patent application. (Ex. 2 at WG 148) The '895 publication is also discussed as prior art in the Zajac application itself, which the Examiner reviewed as well. (*Id.* at WG 68-69).

On March 31, 2003, the PTO Examiner issued a non-final rejection of the pending claims of the Zajac application, arguing that the '895 publication anticipated those claims. (*Id.* at WG 122-145) In his June 26, 2003 response, Mr. Roebuck amended the pending claims, noted that the '895 publication was already discussed and distinguished in the application itself, and argued that the '895 publication did not anticipate the Zajac invention because it did not disclose every limitation of the pending claims. (Ex. 2 at WG 155-183) In response to these amendments and arguments, the Examiner withdrew his rejection and issued a Notice of Allowance on July 21, 2003. (*Id.* at WG 196-199) The Zajac '038 patent issued on February 10, 2004. (Ex. 1 at WG 1)

In response to WesternGeco's Complaint, ION asserted a "Fourth Affirmative Defense" that the Zajac '038 patent is unenforceable due to alleged inequitable conduct that was purportedly committed during this prosecution:

3

>WesternGeco also procured the [Zajac] '038 Patent through inequitable conduct before the PTO. During the prosecution of the '038 patent, the patent examiner cited the Hillesund reference (WO 00/20895) . . . against the '038 Patent application. The attorney prosecuting the '038 Patent responded to the PTO by stating that the Hillesund reference "does not disclose positioning a streamer vertically and horizontally relative to a second streamer in the array as claimed. . . . The prosecuting attorney's argument, however, was a blatant misrepresentation of the teachings of Hillesund.

(D.I. 6 at ¶¶ 51-52) ION's "Eleventh Counterclaim—Antitrust Violation as to the '038 Patent" is similarly allegedly based on "WesternGeco's deliberate and intentional misrepresentation of the true teaching of the Hillesund ['895] reference." (*Id.* at ¶ 122) As confirmed during discovery, this is the sole basis for ION's antitrust counterclaim as to the Zajac '038 patent. (Ex. 4 at 9-10) Similarly, Fugro's "Fourth Affirmative Defense" and "Second Counterclaim—Declaratory Judgment (Invalidity)" are based on the same alleged inequitable conduct. (D.I. 165 at ¶¶ 82-84, 105-107; Ex. 5 at 14)

## STATEMENT OF ISSUES

1. Whether there is no genuine dispute as to any material fact, and WesternGeco is entitled to judgment as a matter of law that attorney argument regarding disclosed prior art cannot comprise the material misrepresentation of a material fact?

2. Whether there is no genuine dispute as to any material fact, and WesternGeco is entitled to judgment as a matter of law that the Zajac '038 patent is not unenforceable for alleged inequitable conduct for purportedly deliberately and intentionally misrepresenting prior art that was disclosed ot the Patent & Trademark Office?

## ARGUMENT

Summary judgment "should properly be granted when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.'" *Desper Prods. Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) (quoting FED. R. CIV. P. 56(c)). "Summary judgment is as appropriate in a patent case as in any other." *Barmag Barmer Maschinefabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

I.  **ATTORNEY ARGUMENT REGARDING DISCLOSED ART IS INSUFFICIENT AS A MATTER OF LAW TO PROVE INEQUITABLE CONDUCT**

"Inequitable conduct includes affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1378 (Fed. Cir. 2008) (citations omitted). "The accused infringer must prove both elements—intent and materiality—by clear and convincing evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F. 3d 1276, 2011 WL 2028255, at *7 (Fed. Cir. 2011) (citations omitted).[1]  An attorney's discussion of the disclosed prior art, therefore, is mere argument and is not a "misrepresentation of a material fact." As discussed by the Federal Circuit in *Innogenetics*:

> [Patentee's] representation of the [prior art] amounted to mere attorney argument and our precedent has made clear that an applicant is free to advocate its interpretation of its claims and the teachings of prior art. . . . Given that the [prior art] had been submitted for the patent examiner to examine herself, she was free to accept or reject the patentee's arguments distinguishing its invention from the prior art.

*Id.* at 1379 (affirming summary judgment of no inequitable conduct). This is established law, as reflected in many other Federal Circuit decisions. *Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed. Cir. 2007) ("We therefore fail to see how the statements . . . which consist of attorney argument and an interpretation of what the prior art discloses, constitute affirmative misrepresentations of material fact."); *Life Techs., Inc. v. Clonetech Labs., Inc.*, 224 F.3d 1320, 1326 (Fed. Cir. 2000) ("[I]n making the argument, the inventors merely advocated a particular interpretation of teachings of the [prior art]..., which the Examiner was free to accept or reject."); *Akzo N.V. v. U.S.I.T.C.*, 808 F.2d 1471, 1482 (Fed. Cir. 1986) ("The mere fact that Du

---

[1]  Because WesternGeco did not engage in—nor have the Defendants alleged—any "affirmative acts of egregious misconduct," Defendants are bound by a but-for standard for materiality. *See Therasense*, 2011 WL 2028255, at *12.

5

Pont attempted to distinguish the Blades process from the prior art does not constitute a material omission or misrepresentation."). And it is true even if the attorney argument is later found to have been inaccurate. *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331 (Fed. Cir. 2004) (affirming summary judgment of no inequitable conduct).

In applying this Federal Circuit precedent, district courts have routinely dismissed inequitable conduct charges based on only attorney argument regarding disclosed prior art:

> [T]he only allegation of misconduct is premised entirely on attorney arguments .... Such statements, even if inconsistent, do not constitute inequitable conduct, as it is "*clear that an applicant is free to advocate its interpretation of its claims and the teachings of prior art.*" *Innogenetics N.V. v. Abbott Laboratories*, 512 F.3d 1363, 1379 (Fed. Cir. 2008); see *Rothman v. Target Corp.*, 556 F.3d 1310, 1329 (Fed. Cir. 2009).

*Dicar, Inc. v. Stafford Corrugated Prods., Inc.*, No. 2:05-cv-5426, 2010 WL 988548, at *15 (D.N.J. Mar. 12, 2010) (Ex. 6);[2] *see also AstraZeneca Pharmas. LP v. Teva Pharmas. USA*, 567 F. Supp. 2d 683, 699-700 (D.N.J. 2008) (granting summary judgment of no inequitable conduct because the allegedly mischaracterized prior art had been disclosed to the Examiner, who "could draw his own conclusions"); *K-Tec, Inc. v. Vita-Mix Corp.*, No. 2:06-cv-108, 2010 WL 446974, at *1-3 (D. Utah Feb. 2, 2010) (same) (Ex. 7); *World Wide Stationary Mfg. Co. v. U.S. Ring Binder, L.P.*, 632 F. Supp. 2d 912, 915 (E.D. Mo. 2009) (same); *Liposome Co. v. Vestar, Inc.*, 36 U.S.P.Q.2d 1295, 1316 (D. Del. 1994) ("Since TLC disclosed the existence of Racker to the PTO ... its misleading arguments on the article's significance, were not misrepresentations of fact and did not breach any duty of candor ...."). As summarized by the United States District Court for the Central District of California:

> ***Defendant's affirmative defense of inequitable conduct based upon misrepresentations made to the Examiner in prosecuting the '345 patent must***

---

[2] Unless otherwise indicated, all emphases are added.

6

> ***fail as a matter of law.*** Defendant has failed to make even a threshold showing of materiality or intent to deceive. . . . Defendant argues that Plaintiff, in statements made during the prosecution of the '345 patent, mischaracterized the prior art embodied in the Cool-Ray tag. . . . [I]t is undisputed that the Examiner, in determining the validity of the '345 patent had the Seaver patent and the Cool-Ray prior art before him. ***Thus, the Examiner was free to disregard Plaintiff's interpretation of the Cool-Ray catalogues and the Seaver patent.***

*Al-Site Corp. v. Bonneau Co.*, 30 U.S.P.Q.2d 1123, 1129 (C.D. Cal. 1993) (granting summary judgment of no inequitable conduct). "The law is clear that a prosecuting attorney is free to present arguments about why an invention may be patented over disclosed prior art without 'without fear of committing inequitable conduct.'" *Wright Asphalt Products Co., LLC v. Pelican Refining Co., LLC*, No. H-09-1145, 2011 WL 2037631 (S.D. Tex. May 20, 2011) (quoting *Rothman*, 556 F. 3d at1329-30).

## II. DEFENDANTS' INEQUITABLE CONDUCT DEFENSE FAILS BECAUSE IT IS BASED SOLELY ON ATTORNEY ARGUMENT REGARDING DISCLOSED PRIOR ART

The sole basis for ION's Fourth Affirmative Defense and Eleventh Counterclaim and Fugro's Fourth Affirmative Defense and Second Counterclaim is that WesternGeco allegedly committed inequitable conduct by mischaracterizing prior art. (D.I. 6 at ¶¶ 51-52; D.I. 165 at ¶¶ 83-84; Ex. 4 at 9-10; Ex. 5 at 14) However, the prosecuting attorney merely stated that the '895 publication "does not disclose positioning a streamer vertically and horizontally relative to a second streamer in the array, ***as claimed***." (Ex. 2 at WG 172) As discussed above, the '895 publication does not recite a "tracking and positioning system" or "array geometry," which are both part of the '038 patent's claimed positioning of streamers vertically and horizontally:

> 1. ***A seismic streamer array tracking and positioning system comprising:***
> a towing vessel for towing a seismic array;
> an array comprising a plurality of seismic streamers;
> an active streamer positioning device (ASPD) attached to at least one seismic streamer for positioning the seismic streamer relative to other seismic streamers within the array; and

7

> a master controller for issuing positioning commands to each ASPD to adjust a vertical and horizontal position of a first streamer relative to a second streamer within the array *for maintaining a specified array geometry.*

(*E.g.*, Ex. 1 at WG 13, col. 11, lns. 14-26) Although the '895 publication disclosed horizontal and vertical steering in general, Mr. Roebuck's argument merely distinguished the '895 publication as not disclosing such steering "as claimed," *i.e.*, as part of a "tracking and positioning system . . . for maintaining a specified array geometry." No record evidence exists that Mr. Roebuck intended to deceive the PTO.

Defendants concede that their affirmative defenses are based on merely "[t]he prosecuting attorney's argument" regarding the prior art. (D.I. 6 at ¶ 52; D.I. 165 at ¶84) But Mr. Roebuck merely "advocate[d] [his] interpretation of [the] claims and the teachings of the prior art," as he was free to do. *Dicar*, 2010 WL 988548, at *15 (quoting *Innogenetics*, 512 F.3d at 1379). The underlying '895 publication was disclosed to the PTO, the Examiner was free to consult the reference in its entirety and to draw his own conclusions. *AstraZeneca*, 567 F. Supp. 2d at 699-700 (granting summary judgment of no inequitable conduct because the Examiner "could draw his own conclusions" regarding disclosed prior art).

Defendants' allegation of inequitable conduct is insufficient as a matter of law and must fail—mere attorney argument regarding disclosed prior art cannot comprise the requisite "material misrepresentation of material fact." *Innogenetics*, 512 F.3d at 1379; *Young*, 492 F.3d at 1349 ("We therefore fail to see how the statements . . . which consist of attorney argument and an interpretation of what the prior art discloses, constitute affirmative misrepresentations of material fact."); *Life Techs.*, 224 F.3d at 1326 ("[T]he inventors merely advocated a particular interpretation of teachings of the [prior art]..., which the Examiner was free to accept or reject."); *Akzo*, 808 F.2d at 1482 ("The mere fact that Du Pont attempted to distinguish the

8

Blades process from the prior art does not constitute a material omission or misrepresentation."). Summary judgment against ION on its inequitable conduct defense should therefore be granted.

### III. ION'S ANTITRUST COUNTERCLAIM AND THE FUGRO DEFENDANTS' DECLARATORY JUDGMENT COUNTERCLAIM ARE DERIVATIVE OF DEFENDANTS' INEQUITABLE CONDUCT DEFENSE AND THEREFORE FAIL AS WELL

Assertion of a patent obtained through "knowing and willful fraud" on the PTO can be the basis for an antitrust violation. *Walker Process Equip., Inc. v. Food Mach. and Chem. Corp.*, 382 U.S. 172, 179 (1965). Although not sufficient by itself, inequitable conduct is a prerequisite to proving such fraud. *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1346 (Fed. Cir. 2007) ("[I]nequitable conduct is a broader, more inclusive concept that the common law fraud needed to support a *Walker Process* counterclaim.") If no inequitable conduct exists, no antitrust violation can be proven.[3] *Id.*

ION's "Eleventh Counterclaim—Antitrust Violation as to the '038 Patent" is based on the same purported inequitable conduct committed during the prosecution of the Zajac '038 patent. (D.I. 6, at ¶¶ 121-22, 128; *see also* Ex. 4 at 9-10). And Fugro's "Second Counterclaim—Declaratory Judgment (Invalidity)" is similarly based on the same purported inequitable conduct. (D.I. 165, at ¶¶ 106-107; *see also* Ex. 5 at 14) Because Defendants' inequitable conduct theory fails as a matter of law—*see* § II, *supra*—ION's derivative antitrust counterclaim and Fugro's derivative declaratory judgment counterclaim must both fail as well. *Dippin' Dots*, 476 F.3d at 1346.

---

[3] *See TransWeb, LLC v. 3M Innovative Properties Co.*, CIV.A. 10-4413 FSH, 2011 WL 2181189, at *12 (D.N.J. Jun.1, 2011) ("*Therasense,* however, provided no indication that the elements of *Walker Process* fraud changed.") (Ex. 8)

9

## CONCLUSION

Because attorney argument regarding a disclosed prior art reference is insufficient as a matter of law to prove inequitable conduct, ION's Fourth Affirmative Defense and Eleventh Counterclaim and Fugro's Fourth Affirmative Defense and Second Counterclaim must fail, and summary judgment should be entered in WesternGeco's favor.

Dated: October 7, 2011

*Of Counsel:*

Gregg F. LoCascio, P.C.
gregg.locascio@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Tel.: (202) 879-5000
Fax: (202) 879-5200

Timothy K. Gilman
timothy.gilman@kirkland.com
Simeon G. Papacostas
simeon.papacostas@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel.: (212) 446-4800
Fax: (212) 446-4900

Respectfully submitted,

/s/ Lee L. Kaplan

Lee L. Kaplan
lkaplan@skv.com
SMYSER KAPLAN
 & VESELKA, L.L.P.
Bank of America Center
700 Louisiana, Suite 2300
Houston, TX 77002
Tel: (713) 221-2323
Fax: (713) 221-2320

*Attorneys for Plaintiff/Counterclaim Defendant WesternGeco L.L.C.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record pursuant to Federal Rules of Civil Procedure on this the 7th day of October, 2011.

                                                                       Lee L. Kaplan