UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTERNGECO L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:09-cv-1827 |
| | § | |
| ION GEOPHYSICAL CORPORATION, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

# MEMORANDUM AND ORDER

A number of motions for summary judgment are now pending before the Court. In this Memorandum and Order, the Court considers the Motion for Summary Judgment of Non-Infringement filed by Defendant ION Geophysical Corporation ("ION"), jointly with Defendants Fugro-Geoteam, Inc., Fugro Geoteam AS, Fugro Norway Marine Services AS, Fugro, Inc., Fugro (USA), Inc., and Fugro Geoservices, Inc. (collectively, "Fugro" or "the Fugro Defendants"). (Doc. No. 244.) After considering Defendants' motion, all responses thereto, and the applicable law, the Court finds that Defendants' motion must be GRANTED IN PART and DENIED IN PART.

Plaintiff WesternGeco, L.L.C. ("WesternGeco") has brought claims against Defendants under 35 U.S.C. § 271 based on the alleged infringement of the following method claims in WesternGeco's patents: (1) claims 1-3 of U.S. Patent No. 6,932,017 (the "017 Patent"); (2) claims 1-3 of U.S. Patent No. 7,080,607 (the "607 Patent"); (3) claims 1 and 6-8 of U.S. Patent No. 7,162,967 (the "967 Patent"); (4) claims 1-3, 6-7, and 9-14 of U.S. Patent No. 7,293,520 (the "520 Patent"); and (5) claims 28-29, 36, and 39 of

1

U.S. Patent No. 6,691,038 (the "038 Patent").[1] Defendants move for summary judgment on all of WesternGeco's method claims. As the Court has described the factual background of this case in three prior Orders (Doc. Nos. 144, 164, 234), it will not do so again here.

## I.   LEGAL STANDARD

Summary judgment is appropriate where the pleadings and evidence show that no genuine issue of material fact exists, and that the movant therefore is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). If the moving party meets this burden, the nonmoving party must then go beyond the pleadings to identify specific facts showing there is a genuine issue for trial. *Id.* "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citation omitted).

Factual controversies should be resolved in favor of the nonmoving party. *Liquid Air Corp.*, 37 F.3d at 1075. However, "summary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Id.* at 1076 (internal quotations omitted). Importantly, "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence." *Diaz v. Superior Energy Servs., LLC*, 341 Fed. App'x 26, 28 (5th Cir. 2009) (citation omitted).

---

[1] WesternGeco also has asserted a number of apparatus claims, which are not addressed in the instant motion.

2

A court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts. *Liquid Air Corp.*, 37 F.3d at 1075.

**II.    ANALYSIS**

Defendants contend that they did not infringe WesternGeco's method claims directly or indirectly.

### A.  Direct Infringement under 35 U.S.C. § 271(a)

A patent grants to the patentee "the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States." 35 U.S.C. § 154(a)(1). Thus, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Defendants contend that they did not directly infringe WesternGeco's method claims, as they did not make, use, offer for sale, or sell the claimed methods in the United States. Specifically, Defendants argue that they did not directly infringe under the "make" or "use" prongs, because they did not make or use WesternGeco's methods in the United States. Defendants contend that they did not directly infringe under the "sells" or "offers to sell" prongs, because, according to Defendants, those prongs do not apply to method claims. The Court considers each of Defendants' arguments below.

### 1.  Whether Defendants Directly Infringed WesternGeco's Methods Under the "Make" or Use" Prongs

"A method or process consists of one or more operative steps, and, accordingly, '[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized.'" *NTP*, 418 F.3d at 1318 (quoting *Roberts Dairy Co. v. United States*, 530 F.2d 1342, 1354 (Ct. Cl. 1976)). Because patents

3

are directly infringed only if they are infringed within the United States, a claim for direct patent infringement under § 271(a) requires, as an element of the claim, proof that the infringing activity took place in the United States. *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1313 (Fed. Cir. 2005). The Patent Act of 1952 (the "Patent Act") defines United States as "the United States of America, its territories and possessions." 35 U.S.C. § 100(c). In two prior Orders, this Court has held that the high seas, including the Chukchi Sea, and the United States' Exclusive Economic Zone ("EEZ"), including the EEZ in the Gulf of Mexico, are not U.S. territories or possessions for purposes of the Patent Act. (Doc. No. 164, at 19-20; Doc. No. 144, at 37, 41). The question now before the Court is whether there is evidence giving rise to a genuine issue of material fact as to whether Defendants infringed WesternGeco's method claims within the United States.

The method claims that WesternGeco alleges were infringed in this case are summarized as follows: The method claims at issue in the '017 patent include a method of "controlling the positions of marine seismic streamers in an array of such streamers being towed by a seismic survey vessel, the streamers having respective streamer positioning devices therealong." (Doc. No. 244-A.) These methods comprise the steps of "obtaining a predicted position of the streamer positioning devices; obtaining an estimated velocity of the streamer positioning devices; . . . calculating desire changes in the orientation of their wings . . . ; and actuating the wing motors to produce said desired changes in wing orientation." (*Id.*) The method claims at issue in the '607 patent include the steps of "(a) towing an [] array of streamers each having a plurality of streamer positioning devices there along; (b) predicting positions of at least some of the streamer positioning devices; (c) using the predicted positions to calculate desired changes in

4

position . . . ; and (d) implementing at least some of the desired changes." (Doc. No. 244-B.) The method claims at issue in the '967 patent include the steps of "(a) towing an array of streamers each having a plurality of streamer positioning devices there along . . . (b) transmitting from a global control system location information to at least one local control system on at least one streamer positioning device . . . ; and (c) adjusting the wing using the local control system." (Doc. No. 244-C.) The method claims at issue in the '520 patent each include "(a) towing an array of streamers each having a plurality of streamer positioning devices there along . . . ; (b) controlling the streamer positioning devices with a control system." (Doc. No. 244-D.) Finally, the method claims at issue in the '038 patent include a "method for tracking and positioning a seismic streamer array," which includes "towing a seismic array comprising a plurality of seismic streamers; attaching an active streamer positioning device (ASPD) each seismic streamer for positioning the seismic streamer relative to other seismic streamers . . . ; and issuing vertical and horizontal positioning commands to each ASPD." (Doc. No. 244-E.) In sum, each of the method claims at issue in this case requires the towing of an array of streamers, having streamer positioning devices there along, receiving commands from a control system.[2]

Defendants offer evidence that neither ION nor Fugro has, within the United States, towed an array of streamers, with streamer positioning devices attached there along, receiving commands from a control system. As to Fugro, Defendants submit the

---

[2] Although a control system is not expressly referenced in the independent method claims of the '017 and '607 Patents, the Court agrees with Defendants that the "prediction" and "calculation" aspects necessarily occur in some sort of control system. Moreover, as Defendants note, WesternGeco has taken the position throughout this litigation that control systems are an integral part of the patented methods. (*See* Doc. No. 167 at 17 ("As discussed above, the Bittleson patents cover control systems for steering streamer arrays. Dr. Bittleston's inventions include apportioning control between global and local components of the control system, using predicted positions for generating steering commands, and implementing global control modes for steering streamer arrays."); Doc. No. 197 at 1 ("WesternGeco's asserted Bittleston patents cover control systems for lateral steering of seismic streamer arrays.").)

5

declarations of Hans Christian Vaage and Adam Jackson, Fugro employees who testify that Fugro has not towed an array of streamers with streamer positioning devices attached thereto, including DigiBIRDs and/or DigiFINs, "in any United States waterway or in the United States' territorial sea—the belt of sea that extends no more than 12 miles seaward of the baseline of the coastal state." (Vaage Decl. ¶ 3, Doc. No. 244-I; Jackson Decl. ¶¶ 3-6, Doc. No. 244-J.)

In an effort to contradict this evidence and create a factual issue, WesternGeco points to the testimony of three Fugro witnesses who discuss Fugro's use of the DigiFIN to conduct surveys in "American waters." WesternGeco submits the deposition of Fugro employee Roar Lunde in which Lunde discusses Fugro's use of the DigiFIN to conduct surveys. (Lunde Dep. at 113:21-25, 124:8-19, Doc. No. 262-11.) However, the cited testimony makes clear that Lunde is referring to surveys conducted in the Gulf of Mexico and in the Chukchi Sea. As the Court held in its August 2011 order, the Fugro Defendants' acts in the Chukchi Sea and in the EEZ in the Gulf of Mexico cannot support a claim of direct infringement. (Doc. No. 164 at 32.) Thus, the two surveys to which Lunde refers cannot support WesternGeco's claim. The testimony of Fugro employee Kevin Douglas Stiver refers to the same two surveys, and is similarly unpersuasive. (Stiver Dep. at 167:19-168:18, 190:11-18, Doc. No. 262-14.) Finally, the testimony of Fugro employee Hans Christian Vaage refers only to the Chukchi survey, and again, does not support a finding that Fugro used the DigiFIN in the United States. (Vaage Dep. at 196:15-17, Doc. No. 262-15.) In sum, none of the testimony submitted by WesternGeco shows that Fugro was conducting surveys with the DigiFIN or any other allegedly infringing device in the United States.

WesternGeco also submits the testimony of Helen Elizabeth Bjerke Christensen, a Fugro employee who has expressed her belief that a Fugro vessel has come into port in the United States. (Christensen Dep. at 29:14-17, Doc. No. 262-17.) Evidence that Fugro docked in a U.S. port is insufficient to support a claim that Fugro infringed on each step of the claimed methods while in the port, and the deposition testimony submitted by Fugro indicates that it did not. There is no genuine issue of material fact as to whether the Fugro Defendants infringed on WesternGeco's method claims under the "make" or "use" prongs, and the Court concludes that they did not.

WesternGeco has produced no further evidence to indicate that ION infringed on the method claims through the "make" or "use" prongs. ION offers the declaration of ION employee Andre Olivier in which Olivier states that, to his knowledge, ION has not towed an array of streamers with a streamer positioning device attached "within 12 miles of any coastline of the United States or its territories." (Olivier Decl. at ¶ 3, Doc. No. 244-H.) Olivier indicates that all of ION's testing of its streamer positioning devices on an array of streamers "was conducted at least 13 nautical miles from the coastline of the United States and its territories." (*Id.*) In light of this uncontroverted evidence, ION cannot be held liable for direct infringement under the "make" or "use" prongs.

### 2. Whether Defendants Directly Infringed under the "Sells" or "Offers to Sell" Prongs

Defendants argue that they did not directly infringe WesternGeco's method claims under the "sells" or "offers to sell" prongs of § 271(a), because the sale of the performance of a method or the offer to perform that method cannot infringe under this prong. In its August 2011 Memorandum and Order, the Court considered Defendants' Motion to Dismiss WesternGeco's claims based on direct infringement under the "sells"

or "offers to sell" prong. (Doc. No. 164 at 26-27.) The Court acknowledged that, though the Federal Circuit in *NTP* left open the question of whether method claims can be infringed under the "sells" and "offers to sell" prongs of § 271(a), "it recognized that the legislative history of § 271(a) indicated Congress's understanding that method claims could be directly infringed only under the 'use' prong of § 271(a)." (Doc. No. 164 at 26 (citing *NTP*, 418 F.3d at 1320).) The Court also noted the *NTP* court's recognition of the difficulty of applying the concept of a "sale" to a method claim consisting of a series of acts. *Id.* (citing *NTP*, 418 F.3d at 319.) The Court concluded that, in this case, "it is similarly difficult to understand how the Fugro Defendants sold or offered for sale WesternGeco's method claims, because the concept of 'sale' includes the 'concept of a transfer of title or property.'" *Id.* (quoting *NTP*, 418 F.3d at 1319). Ultimately, however, the Court declined to dismiss WesternGeco's claim under the "sells" or "offers to sell" prongs. (Doc. No. 164 at 26.)

Although the Federal Circuit has never found a method claim to infringe under the "sells" or "offers to sell" prongs, it has, contrary to Defendants' contentions, left open the possibility that a method claim could infringe under this prong. In *Ricoh*, the Federal Circuit held that selling "instructions to perform a process" does not constitute infringement under the "sells" or "offers to sell" prongs, because the seller does not perform the method. *Ricoh*, 550 F.3d at 1335. In reaching this conclusion, the court in *Ricoh* implied that, if the alleged infringer sold "the performance of the process itself," this might constitute infringement under § 271(a). *Ricoh*, 550 F.3d at 1335. In *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 667 F. Supp. 2d 29, 37 (D.D.C. 2009), the court noted that *Ricoh's* implication that a method can be sold for purposes of § 271(a) is supported by

8

the Supreme Court's decision in *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008), which held that a method could be sold for purposes of "patent exhaustion." This Court echoes the conclusion reached in *CLS Bank* that, if a method may be sold for exhaustion purposes, there is "no persuasive reason why a method could not also be sold for infringement purposes." 667 F. Supp. 2d at 37.

However, after *Ricoh*, it is clear that the alleged infringer must sell the performance of the process itself in order for the sale to be actionable as direct infringement. The uncontroverted evidence in this case demonstrates that ION does not sell or offer to sell the performance of WesternGeco's patented methods. Dale Lambert, an ION employee, testifies that "ION does not provide (or offer to sell) its customers the vessel necessary to conduct the marine seismic survey," and "simply is not in the business of conducting marine seismic surveys." (Lambert Decl. ¶ 3, Doc. No. 244-G.) Because it cannot actually perform WesternGeco's patented methods, and does not offer to do so, ION does not sell or offer to sell the performance of those methods.

The evidence as to the Fugro Defendants is less clear. Fugro submits testimonial evidence from a Fugro employee that Fugro has not offered to perform any of WesternGeco's patented methods in the United States since the patents issued. (Vaage Decl. ¶ 4; Jackson Decl. ¶¶ 4, 6.) However, WesternGeco points to three of Fugro's tender documents, and urges that these documents "reflect [Fugro's] offer to perform these surveys using the infringing technology." (Doc. No. 262 at 14 (citing Doc. Nos. 262-18 at FGRPROD002081384; 262-19 at FGRPROD000115329; 262-20 at FGRPROD000075543).) These documents list as Fugro's contact Kevin Stiver in Fugro's Houston office. (Doc. Nos. 262-18 at FGRPROD002081365; 262-19 at

9

FGRPROD000115328; 262-20 at FGRPROD000075512.) Reading this admittedly sparse evidence in the light most favorable to the Fugro Defendants, these documents indicate that Fugro may have sold, or offered for sale, the performance of marine seismic surveys using DigiFIN from Fugro's Houston office.

The Court acknowledges that this is a close question. The Federal Circuit made clear in *NTP* that simply the performance of steps comprising a patentee's asserted method claims cannot be used to support a claim for direct infringement under the "sells" or "offers to sell" prongs of § 271(a). *NTP*, 418 F.3d at 1320-21. Thus, had the Fugro Defendants submitted evidence demonstrating that their offers were offers to perform only some of the steps comprising WesternGeco's method claims, then summary judgment would be appropriate in favor of Defendants. Similarly, in light of the reasoning in *Ricoh*, had the Fugro Defendants submitted evidence proving that they were not actually offering to perform these services, but only selling the products themselves, summary judgment would be appropriate. However, the tender documents indicate that Fugro offered to provide both the allegedly infringing products (including the DigiFIN), and the staff to put these products to use. (*See, e.g.*, Doc. No. 262-18 at FGRPROD000115352.) Defendants do not reply to this evidence, and a jury could find that, by offering to conduct marine seismic surveys using the DigiFIN, Fugro was offering to sell not only an allegedly infringing device, but also its own performance of WesternGeco's methods.

### B.  Indirect Infringement under 35 U.S.C. §§ 271(b) and (c)

Absent proof of direct infringement of method claims, any claim of indirect infringement also must fail. *Joy Techs.*, 6 F.3d at 774 ("Liability for either active

inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement."); *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007) ("Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement."). Because WesternGeco's claim of direct infringement of its methods has failed as against ION, its claim for indirect infringement of those methods as against ION also must fail. As against the Fugro Defendants, WesternGeco's claim may proceed.

### III. CONCLUSION

For the reasons discussed above, the Court concludes that Defendants' motion for summary judgment must be **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 25th day of April, 2012.

_____
THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE