UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTERNGECO L.L.C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:09-cv-1827 |
| | § | |
| ION GEOPHYSICAL CORPORATION, et al., | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Now pending before the Court—in addition to five summary judgment motions, which the Court will consider in separate orders—are two motions for reconsideration. One of the motions was filed by Defendants Fugro-Geoteam, Inc.; Fugro Geoteam AS; Fugro Norway Marine Services AS; Fugro, Inc.; Fugro (USA), Inc.; and Fugro Geoservices, Inc. (collectively, "Fugro" or "the Fugro Defendants") (Doc. No. 310); the other was filed by Plaintiff WesternGeco L.L.C. ("Plaintiff" or "WesternGeco") (Doc. No. 301). After considering both motions, all responses thereto, and the applicable law, the Court finds that the Fugro Defendants' motion must be denied; WesternGeco's motion must be granted.

### I. BACKGROUND

On April 25, 2012, the Court ruled on a Motion for Summary Judgment of Non-Infringement filed jointly by the Fugro Defendants and Defendant ION Geophysical Corporation ("ION") (collectively, the "Defendants"). In their motion (Doc. No. 244),

Defendants moved for summary judgment on WesternGeco's "method" claims, asserting that they could not be held liable for direct infringement of those claims under 35 U.S.C. § 271(a), or for indirect infringement of such claims under 35 U.S.C. §§ 271(b) and (c).

As to direct infringement, the question before the Court was whether Defendants infringed WesternGeco's methods by "making, using, offering for sale, or selling" them in the United States. 35 U.S.C. § 154(a)(a); *see also* 35 U.S.C. § 271(a). Defendants contended that they could not be held liable because they did not engage in any of these activities within the United States. The Court agreed that Defendants did not "make" or "use" the claimed methods in the United States. (Doc. No. 300 at 3-7.) However, the Court held that there was a genuine issue of material fact as to whether the Fugro Defendants directly infringed under the "sells" or "offers to sell" prongs. The Court explained that, while "[t]he uncontroverted evidence in this case demonstrates that ION does not sell or offer to sell the performance of WesternGeco's patented methods," there is evidence suggesting Fugro's offers to sell and sale of the patented methods. (*Id.* at 9.) The Court pointed to three tender documents submitted by WesternGeco which demonstrated Fugro's offer to perform surveys using infringing technology. (*Id.*) The documents suggested that Fugro's offers to perform these surveys were made from its Houston office. (*Id.*) Noting that the Defendants had failed to reply to this evidence, the Court concluded that a reasonable jury could find that, by offering, from its office in the United States, to conduct surveys using an infringing product, the Fugro Defendants directly infringed under 35 U.S.C. § 271(a). (*Id.* at 10.)

In considering indirect infringement, the Court noted that proof of direct infringement of method claims must exist in order for a claim of indirect infringement to

proceed. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993). The Court reasoned that, because WesternGeco's claim of direct infringement failed as against ION, its claim for indirect infringement against ION failed, as well. (*Id.* at 11.) As to the Fugro Defendants, the Court held that WesternGeco's claim of indirect infringement could proceed along with its claim for direct infringement. (*Id.*)

## II.     LEGAL STANDARD

Because the Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004), such motions are generally analyzed under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Hamilton Plaintiffs v. Williams Plaintiffs*, 147 F.3d 367, 371 n. 10 (5th Cir. 1998). Rule 59(e) governs when the reconsideration motion is filed within 28 days of the challenged order. *Amegy Bank Nat. Ass'n v. Monarch Flight II, LLC*, 2011 WL 6091807, at *5 (S.D. Tex. Dec. 7, 2011); *In re BP Shareholder Derivative Litig.*, 2011 WL 5880946, at *2 (S.D. Tex. Nov. 23, 2011). Because less than 28 days passed between the Court's Memorandum and Order and the parties' motions for reconsideration, Rule 59(e) applies in this case.

A motion to alter or amend under Rule 59(e) "should not be granted unless the [challenging party] can show: (1) an intervening change in controlling law; (2) the availability of new evidence previously not available; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice." *Lewkut v. Struker Corp.*, 724 F. Supp. 2d 648, 660 (S.D. Tex. 2010) (citation omitted). A district court has "considerable discretion" to grant or deny a motion under Rule 59(e). *Edward H. Bohlin Co. v. Banning*

*Co.*, 6 F.3d 350, 355 (5th Cir. 1993). However, the Fifth Circuit cautions that reconsideration under Rule 59(e) is an extraordinary remedy that courts should use sparingly. *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

### III.    ANALYSIS

#### A.  Direct Infringement

The Fugro Defendants move for reconsideration of the Court's holding regarding direct infringement. They urge that the Court erred in holding that, because they sold services from their Houston offices, the Fugro Defendants' offers to sell took place in the United States. Fugro contends that, after *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contrs. USA, Inc.*, 617 F.3d 1296 (Fed. Cir. 2010), courts must look to the place where services are to be performed in order to determine whether a sale or offer for sale takes place in the United States. The Court acknowledges Plaintiff's position that Fugro could, and should, have raised this matter in its motion or its reply thereto, and that *Transocean* cannot be considered an intervening change in the law. However, because Fugro argues that the Court made a clear error of law, the Court will consider the motion.

In *Transocean*, the Federal Circuit considered whether an offer to sell, the negotiations and contractual execution of which took place outside of the United States, could nonetheless give rise to liability where the product was to be sold, delivered, and used within the United States. 617 F.3d at 1308-09. The court held that, "[i]n order for an offer to sell to constitute infringement, the offer must be to sell a patented invention within the United States. The focus should not be on the location of the offer, but rather *the location of the future sale* that would occur pursuant to the offer." *Id.* at 1309 (emphasis added). In proposing that *Transocean* directs courts to look to the place of

4

performance, Defendants mischaracterize the holding of that case. *Transocean* clarifies that the location of negotiation and contracting does not control, and that courts "may also consider other factors such as the place of performance." *Id.* at 1310. After *Transocean*, however, the most important consideration clearly is the location of the future sale, not necessarily the place of performance.

In *ION, Inc. v. Sercel, Inc.*, CA No. 5:06-CV-236-DF, 2010 WL 37681110, *4 (E.D. Tex Sept. 16, 2010) *aff'd*, 2010 WL 884868 (Fed. Cir. 2012), the court considered the implications of *Transocean* in a case where the devices at issue "were manufactured, sold, and delivered abroad while the offers for those devices were made in the U.S." Unlike *Transocean*, which involved foreign offers for domestic sales, *ION* involved domestic offers for foreign sales. *Id.* Noting that the case presented "an altogether different scenario than the Federal Circuit addressed in *Transocean*," the Court nonetheless followed *Transocean*'s directive to look not to the place of the offer, but instead to the location of the future sale. Even though the transactions at issue in *ION* involved price quotations from Houston offices, orders received in Houston, and payment received in Houston, the court emphasized that the devices at issue "were manufactured in Europe and distributed exclusively to Venezuela, Brazil and Canada without touching U.S. soil." *Id.* Apparently interpreting these activities to constitute the "sale" at issue, the court concluded that the offers were outside the scope of U.S. patent law. *Id.*

Unlike *ION* and *Transocean*, which involved patented *devices*, the claims at issue in this case involve patented methods used in conducting marine seismic surveys. Were the Court considering apparatus claims, *ION* would apply, and offers from the Fugro Defendants' Houston offices would be insufficient to bring the transaction within the

ambit of U.S. patent law if the actual sales of the apparatuses occurred abroad. However, the analysis is slightly different when method claims are at issue. First, if Defendants' interpretation were correct—that is, if the location of the sale of the infringing method were the place of performance—then the "sale" prong of 35 U.S.C. § 271(a) would essentially become coterminous with the "use" prong, as liability under both would derive from the performance of the patented method within the United States. The Court thinks an analysis rendering one of these prongs superfluous is ill-advised,[1] if not legally incorrect.[2]

Secondly, and perhaps more importantly, method claims necessitate a unique analysis as to where a sale can be said to have taken place. In *Enercon GmbH v. Int'l Trade Comm'n*, 151 F.3d 1376, 1382–83, (Fed. Cir. 1998), the Federal Circuit construed the term "sale" as used in the Tariff Act, which, like the Patent Act, does not define the term within the statute or its legislative history. Turning to the ordinary meaning of "sale," and relying on the Uniform Commercial Code, the Federal Circuit held that "sale" meant the promise to transfer a good in the future. *Id.* at 1382. The court clarified that the term "sale," at least as used in the Tariff Act, did not require an immediate delivery of goods. *Id.* If a sale does not require a delivery of goods, as it does not in the case of method claims, then the rationale applied in *ION* loses some of its force. Indeed, at least two courts writing before *Transocean* concluded that, as to method claims, the location of

---

[1] It is arguable that, in affirming *ION*, the Federal Circuit sanctioned such a result. The *ION* court looked, in part, to the place of manufacturing—in other terms, the place "making"—potentially conflating the "makes" prong and the "offers to sell" prong. However, the Court finds *ION* distinguishable in that it considered apparatuses, rather than methods, and is not persuaded that such conflation is appropriate here.

[2] Courts must "give effect, if possible, to every clause and word of a statute." *Moskal v. United States*, 498 U.S. 103, 109 (1990) (internal quotation marks omitted) (citation omitted) (rejecting construction of statute that would equate the separately recited "falsely made" with "forged" and "counterfeited").

6

the sale occurs where the offer to perform is made. In *CLS Bank Intern. v. Alice Corp. Pty. Ltd.*, 2009 WL 3683121, *6–7 (D.D.C. 2009), the accused infringer moved for summary judgment that it could not have infringed method claims by making an offer in the United States to perform a method outside of the United States. The court held that, as long as the offer to perform is made in the United States, it does not matter that the performance of the method may be completed outside of the country. *Id.* The Court explained that the accused infringer confused the standard for "use" of a method with the standard for "sale." *Id.* "[N]otwithstanding that all of the steps of a method are performed abroad, an infringing 'sale' or 'offer to sell' can still occur within the United States if 'all of the essential activity pertaining to the offer and sale of that activity has taken place in the United States.'" *Id.* Similarly, in *Synaptic Pharm. Corp. v. MDS Panlabs, Inc.*, 265 F. Supp. 2d 452 (D.N.J. 2002), the court rejected the argument that a purchase of services to be performed abroad could not "constitute an offer to sell or a sale . . . within the meaning of § 271(a)." *Id.* at 462-63. Although the services in that case were performed in Taiwan, "all of the essential activity pertaining to the offer and sale of that activity [had] taken place in the United States." *Id.* at 463. Because the defendant offered "to sell the allegedly infringing assays in the United States," and because the sales were "consummated in the United States," the Court held that the defendant could be held liable under Section 271(a). *Id.*

       The Court thinks the analyses in *CLS Bank* and *Synaptic* provide the appropriate framework for considering whether a method claim is infringed in the United States, as the cases thoughtfully consider where the "sale" of an activity infringing a method claim can be said to take place. Read in conjunction with *Transocean*, which directs the Court

7

to look to the place of sale, *CLS Bank* and *Synaptic* are especially helpful. Here, WesternGeco presented evidence that Fugro's Houston office "makes sales for marine seismic services in the U.S." (Stiver Dep., Doc. No. 262-14 at 52:19-53:3.) It also submitted three tender offers stating that customers should contact Kevin Stiver in Fugro's Houston office. (Doc. Nos. 262-18, 262-19, 262-20.) This evidence persuades the Court that a genuine issue of material fact remains as whether the contemplated sales were located in the United States. The Court therefore finds no clear error of law warranting reconsideration of the Court's previous Memorandum and Order on the issue of direct infringement.

### B. Indirect Infringement

WesternGeco moves for reconsideration of the Court's holding regarding indirect infringement. WesternGeco points out that, while proof of direct infringement is a necessary prerequisite to a finding of indirect infringement, the same party need not commit the direct infringement in order for indirect infringement against that party to lie. *See, e.g.*, *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("[A] person [indirectly] infringes by actively and knowingly aiding and abetting another's direct infringement.); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement . . . can only arise in the presence of direct infringement though the direct infringer is typically someone other than the defendant accused of indirect infringement."). In light of this well-established law, WesternGeco urges that, if its claims of direct infringement proceed against the Fugro Defendants, then its claims of indirect infringement should proceed against both the Fugro Defendants and ION. In response to WesternGeco's motion, ION confirms that, if

8

the Court "maintains WesternGeco's claims against Fugro for direct infringement under § 271(a) based on alleged sales or offers to sell, then [WesternGeco's] alleged claims against ION for indirect infringement under §§ 271(b) and (c) for the three alleged sales or offers to sell that WesternGeco has identified would remain part of this case." (Doc. No. 317 at 2.) Because the Court has determined that WeternGeco's direct infringement claims can proceed against the Fugro Defendants, WesternGeco's claims for indirect infringement can proceed against ION. The Court therefore reconsiders and reverses this portion of its previous Memorandum and Order, finding that it was a clear error of law.

### IV. CONCLUSION

In light of the foregoing, the Court concludes that the Fugro Defendants' Motion for Reconsideration must be **DENIED**. WesternGeco's Motion for Reconsideration must be **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this 15th day of May, 2012.

_____
THE HONORABLE KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE