UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WESTERNGECO L.L.C., | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:09-cv-1827 |
| | § | |
| ION GEOPHYSICAL CORPORATION, et al., | § | |
| | § | |
| | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

Now pending before the Court is a portion of Plaintiff's Motion for Summary Judgment of Willful Infringement of the '520 Patent (Doc. No. 276), in which Plaintiff WesternGeco L.L.C. ("Plaintiff" or "WesternGeco") moves for summary judgment of infringement under 35 U.S.C. § 271(f). After considering the parties' supplemental briefing and all responses thereto, the Court concludes that the portion of Plaintiff's motion now before the Court must be granted in part and denied in part.

### I.    BACKGROUND

In the Court's June 11, 2012 Memorandum and Order (Doc. No. 345), amended by its June 26, 2012 Amended Memorandum and Order (Doc. No. 365), the Court requested supplemental briefing from the parties on the mental state requirements under 35 U.S.C. § 271(f). The parties, including WesternGeco; Defendant ION Geophysical Corporation ("ION"); and Defendants Fugro-Geoteam, Inc., Fugro Geoteam AS, Fugro Norway Marine Services AS, Fugro, Inc., Fugro (USA), Inc., and Fugro Geoservices,

Inc. (collectively, "Fugro"), have submitted the requested supplemental briefing. The Court now considers the nature of these mental state requirements and their effect on Plaintiff's motion for summary judgment.

## I. SECTION 271(f)(1)

### A. Mental State Requirement

Section 271(f)(1) provides as follows:

> Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(1). In its request for supplemental briefing, the Court asked the parties whether this language requires only that an infringer actively induce the combination of components, which are later combined in a manner that would infringe the patent if the combination occurred within the United States. Conversely, the Court inquired as to whether the language instead requires that an infringer actively induce, and therefore intend, that the combination be done in such a way that the infringer knows would infringe the patent if it occurred in the United States.

After considering the parties' supplemental briefing, the Court concludes that the plain language of Section 271(f)(1) is unambiguous and can be read in only one way. The phrase "the combination of such components" immediately follows "to actively induce." The natural reading of this language is that the activity being induced is the combination of components. *Cf. Barnhart v. Thomas*, 540 U.S. 20, 26 ("[A] limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately

2

follows.") That a violation of this Section requires the assembly of the components "outside of the United States in a manner that would infringe the patent if such combination occurred in the United States" does not require that the infringer be aware of, or intend the infringement of, the patent. Rather, this requirement ensures that the conduct made unlawful by Section 271(f)(1) is only the exportation and the encouragement of assembly, which assembly would be an infringement if it were done in the United States.

The Court acknowledges that certain aspects of the legislative history might favor attributing a higher mental state requirement—specifically, knowledge that the assembly would be an infringement—to Section 271(f)(1).[1] However, "[i]t is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). The language here is plain, and the disposition required by the text is as reasonable as any other (and at least arguably, as WesternGeco urges, advisable as a policy matter). Thus, even if the legislative history is read as Defendants urge, it cannot counter the unambiguous statutory language. The Court also briefly notes that model patent jury instructions developed by the Federal Circuit Bar Association, which ION cites in its supplemental briefing, are inconsistent

---

[1] In enacting Section 271(f), Congress explained that a principal aim for the Section was "[t]o declare it to be patent infringement to supply components of an invention patented in the United States for final assembly abroad if the purpose of the shipment abroad is to circumvent a U.S. patent." S. Rep. No. 98-663, at 1 (1984).

with this Court's reading of the statute.[2] Model Patent Jury Instructions, The Federal Circuit Bar Association (2012). The instructions misread the statute and are not persuasive authority on this issue.

Finally, Defendants emphasize that Sections 271(f)(1) and (f)(2) are modeled after Sections 271(b) and (c). That is undeniably correct in some respects. For example, the Federal Circuit has recognized that "[t]he language of section 271(f) itself mimics the language of the indirect infringement provisions of Sections 271(b) and (c)." *Zoltek Corp. v. United States*, 672 F.3d 1309, 1334 (Fed. Cir. 2012). However, the conclusion that Defendants draw—that the mental state requirements under Section 271(f) therefore must be identical to those under Sections 271(b) and (c)—is flawed. The Federal Circuit has acknowledged that Section 271(f) is not identical to Sections 271(b) and (c). In *Waymark Corp. v. Porta Sys. Corp.*, the Federal Circuit placed Section 271(f)(2) on its own footing, distinguishing it from Section 271(c) by holding that, under Section 271(f)(2), there need not be any proof of a completed assembly abroad. 245 F.3d 1364, 1367-68. The Federal Circuit thus has begun to forge a new path for the statutory construction of Section 271(f), distinguishing it from other provisions from which its language was drawn. In determining the applicable mental state, the requirements of Section 271(f) are not presumptively identical to those of Sections 271(b) and (c). The Court concludes that Section 271(f)(1) requires that an alleged infringer (1) actively induce the combination of the components in question; and (2) that the combination of those components would infringe the patent if such combination occurred within the United States.

---

[2] ION also cites the Model Patent Jury Instructions of the American Intellectual Property Law Association ("AIPLA"). Model Patent Jury Instructions, American Intellectual Property Law Association (2008). The Court reads AIPLA's model instructions on Section 271(f)(1) as tracing the statutory language and therefore as consistent with this Court's reading of the statute.

### B. Analysis

There is little question, as discussed in the Court's prior Memorandum and Order, that WesternGeco has proven the first requirement of Section 271(f)(1)—that Defendants actively induced the combination of the components at issue here, the DigiFIN and the Lateral Controller. This intent to induce combination is shown throughout instruction manuals that ION and Fugro issued and distributed, which instruct end users to use the steering modes of the '520 patent. (Doc. No. 365 at 74.)[3] The undisputed record evidence proves that Defendants supply or cause to be supplied the DigiFIN and Lateral Controller components with the intent that these components will be combined outside of the United States. (Doc. No. 365 at 73.)

The remaining requirement is that the components be combined in a manner that would infringe the patent if such combination occurred within the United States. The Court has ruled on this element already. The only question under Section 271(f)(1) for which the Court sought an answer in the parties' supplemental briefing was "whether both ION and Fugro's supply/cause of the supply of components in such a manner as to encourage their combination—*which ultimately[would have] infringed on WesternGeco's patent [if combined in the United States]*—is sufficient to meet the mental state

---

[3] In its Amended Memorandum and Order, the Court explained as follows:

> As indicated by ION's Lateral Controller User's Manual, DigiFIN operates in its Even Separation Mode (the patented "streamer separation mode") by default. (Doc. No. 276-11 at ION015142, ION015156.) As noted above, Fugro's Project Procedure Navigation, a document which "sets out how to start, execute, and end a marine seismic acquisition project," states that '[d]eployment reflects a DigiFin spread for maintaining even streamer separation and will be the most common spread deployed." (Doc. No. 276-29 at FGRPROD000109764.) These documents make clear that DigiFIN and the lateral controllers are designed and used with steering modes, including the infringing even separation mode.

(Doc. No. 365 at 74.)

requirement of Section 271(f)(1)."[4] (Doc. No. 365 at 73 (emphasis added).) The Court answered that question above. As the Court now has held that Plaintiff's evidence satisfies both of Section 271(f)(1)'s requirements, summary judgment must be granted under this Section.

## II. SECTION 271(f)(2)

### A. Mental State Requirement

Section 271(f)(2) provides as follows:

> Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(2). As with Section 271(f)(1), the Court finds that the language in Section 271(f)(2) is unambiguous as to what it requires. Like Section 271(f)(1), 271(f)(2) requires that the accused infringer intend that the supplied component(s) be combined. 35

---

[4] WesternGeco did not move for, and the Court therefore could not grant, summary judgment of infringement under Section 271(a). (The Court did grant summary judgment for WesternGeco under Section 271(a) in its original Memorandum and Order. (Doc. No. 345 at 64.) However, as ION pointed out in its Motion for Reconsideration (Doc. No. 352 at 5-7), this grant of summary judgment was improper, both because WesternGeco did not move for it, and because the parties' summary judgment briefing did not address whether Defendants infringed the '520 patent under Section 271(a)'s "makes, uses, offers to sell, or sells" requirement for infringement. The Court therefore amended its Memorandum and Order to remove the language granting summary judgment for WesternGeco on the '520 patent under 271(a). (Doc. No. 365 at 64.).) However, the Court did find that the components in question have been combined outside of the United States in manner that would infringe the '520 patent if the combination had been done in the United States. The Court explained, for example, that "ION's Accused Products can, at a minimum, operate in the infringing streamer separation mode." (Doc. No. 365 at 64.) The Court also found that "Fugro used DigiFINs to accomplish the infringing streamer separation mode." (*Id.* at 73.) The Court does not read Section 271(f)(1)'s requirement that the components be combined outside of the United States "in a manner that would infringe the patent if such combination occurred within the United States" to require a plaintiff to submit proof on the "makes, uses, offers to sell, or sells" requirement. Thus, summary judgment is appropriate under Section 271(f)(1) if the combination of components is induced, and if that combination would be infringing in the United States; it does not require an additional finding that a defendant committed an act of infringement (such as made, sold, or offered for sale).

U.S.C. § 271(f)(2) ("Whoever without authority supplies or causes to be supplied . . . any component of a patented invention . . . *intending that such component will be combined* . . . ." (emphasis added)). However, Section 271(f)(2) imposes an additional constraint absent from Section 271(f)(1), requiring that the accused infringer supply such component "knowing that such component is . . . especially made or especially adapted for use in the invention." *Id.* This language parallels the knowledge requirement in 35 U.S.C. § 271(c), which provides that the accused infringer must "know[] the [component] to be especially made or especially adapted for use in an infringement of such patent." 35 U.S.C. § 271(c). Although the plain language of Section 271(f)(2) makes the consideration of legislative history unnecessary, the legislative history of Section 271(f)(2) only confirms what is clear from the plain language of the statute. S. Rep. 98-663 at 7 ("Paragraph [](2), like existing subsection 271(c), requires the infringer to have knowledge that the component is especially made or adapted.").

Because the mental state required for infringement under Section 271(f)(2) is equivalent to that required under Section 271(c), the Court looks to the Supreme Court's analysis Section 271(c) for guidance. In *Aro Manufacturing Co. v. Convertible Top Replacement Co., Inc.*, 377 U.S. 476, 488 (1964), a majority of the Supreme Court held that Section 271(c) "require[s] a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing." The Court therefore concludes that Section 271(f)(2) requires a plaintiff to prove that the defendant (1) intended the combination of components; (2) knew that the combination he intended was patented; and (3) knew that the combination he intended would be infringing if it occurred in the United States.

### B. Analysis

As noted above, WesternGeco has proven that Defendants intended the combination of the components at issue. However, even assuming WesternGeco has proven the second element under Section 271(f)(2)—that Defendants knew that the combination at issue was patented—WesternGeco has failed to meet its burden of proving the third element, that Defendants *knew* that the combination was infringing. First, WesternGeco points to ION's response to Interrogatory Number 13, in which ION admits that it became aware of the patents-in-suit "around the date of the issuance for each WesternGeco Patent-in-Suit." (Doc. No. 276-32 at 6.) ION then says that it "did not undertake an investigation of potential infringement or of the [patents'] enforceability and/or validity until after WesternGeco first accused ION Geophysical of infringement . . . . ION Geophysical has sought opinions of counsel regarding" the WesternGeco patents. (*Id.*) WesternGeco then points to an email from apparent Fugro employee Svein Dale to ION marketing specialist, John Thompson, which asks Mr. Thompson what ION's position is "on this WG patent in relation to DigiFIN." (Doc. No. 276-33.) Next, WesternGeco highlights the response from Mr. Thompson to Mr. Dale, in which Mr. Thomson writes:

> "I know that this was very thoroughly researched during the early days of the DigiFIN development and was one of our considerations before continuing with the project. The short answer is that we have no concerns over the [WesternGeco] patent, but I have passed your question on to our internal patent attorney to get you the official answer."

(Doc. No. 276-35.) WesternGeco also cites email between presumed ION employee Gaetan Mellier and Mr. Dale, which says "The patent I sent you was not the right one. You will find the good one attached." (Doc. No. 276-34.) Finally, WesternGeco cites to a

8

Fugro quarterly report which states that "Western Geco [sic] has indicated to StatoilHydro that there is a branch of IP rights related to the use of DigiFin technology. We have not been contacted by Western Geco [sic] on the issue, but we are investigating potential conflicts in cooperation with ION and StatoilHydro." (Doc. No. 276-43 at FGRPROD000117285.)

Ultimately, the very most these documents prove is that Defendants were considering the possibility of infringement; notably, a number of the documents fail to specify to which WesternGeco patent they refer. Moreover, Defendants have pointed to the opinion of ION's Vice President of Engineering, Mr. Lambert, who reviewed the '520 patent's claims and specification and came to the conclusion that ION's towed streamer system did not perform or contain each of the required limitations of the '520 patent's claims. *(*Doc. No. 298-D, Lambert Decl. ¶¶ 9-11.)[5] Thus, though Defendants apparently were aware of—and arguably concerned about the possibility of infringing—WesternGeco's patents, the record evidence does not meet the high burden of demonstrating knowledge of infringement of the '520 patent.

### III. CONCLUSION

For the foregoing reasons, the remainder of WesternGeco's Motion for Summary Judgment of Willful Infringement of the '520 Patent (Doc. No. 276) must be **GRANTED IN PART** and **DENIED IN PART**. Summary judgment must be **GRANTED** under

---

[5] WesternGeco urges that Defendants' reliance on Mr. Lambert's opinion is improper, as it violates WesternGeco's understanding of a requirement, imposed by this Court in its Scheduling Order, that Defendants disclose any plan to rely on an opinion of counsel to defend themselves by January 13, 2012. (Doc. No. 166-2 at 3.) Even if Defendants failed to comply with the scheduling order in disclosing such information, the Court concludes that it would be improper to ignore this evidence and grant summary judgment when the evidence, though arguably noncompliant with the Court's requirements, helps create a genuine issue of material fact. In any event, though, the Court notes that WesternGeco's summary judgment evidence, even if it were uncontroverted, would be insufficient to support summary judgment under Section 271(f)(2).

Section 271(f)(1). Because a genuine issue of material fact remains as to Defendants' mental state, summary judgment under Section 271(f)(2) must be **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 29th day of June, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE