UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| WESTERNGECO L.L.C., | § | |
|---|---|---|
| Plaintiff, | § | |
| v. | § | CASE NO. 4:09-CV-1827 |
| ION GEOPHYSICAL CORPORATION, et al., | § | |
| Defendants. | § | |

# MEMORANDUM AND ORDER

In a pretrial conference held on Friday, July 13, 2012, the Court addressed a number of motions to exclude and motions in limine, resolving some and holding others over for trial. The Court now writes to resolve Defendants' Motions to Exclude the Expert Testimony of Raymond Sims (Doc. Nos. 250, 256), as well as certain Motions in Limine filed by the parties. (Doc. Nos. 384, 385, 386.)

### I. MOTIONS TO EXCLUDE RAYMOND SIMS

Defendants ION Geophysical Corporation ("ION") and Fugro-Geoteam, Inc.; Fugro Geoteam AS; Fugro Norway Marine Services AS; Fugro, Inc.; Fugro (USA), Inc.; and Fugro Geoservices, Inc. (collectively, "Fugro") have filed motions seeking to exclude the expert testimony of Raymond Sims. (Doc. Nos. 350, 356.) Mr. Sims is the damages expert for Plaintiff WesternGeco L.L.C. ("WesternGeco" or "WG"). Defendants challenge Mr. Sims's damages analysis as to reasonable royalty damages and as to lost profits. After considering Defendants' motions, all responses thereto, oral arguments, and

the applicable law, the Court concludes that Defendants' motions must be granted in part and denied in part.

Federal Rule of Evidence 702 provides that a qualified witness may offer opinion testimony if it will help the trier of fact to understand the evidence or determine a fact in issue. Fed. R. Evid. 702. Courts are charged with the "gatekeeping function" of ensuring that expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592-93, 597 (1993). Rule 702 requires that (1) expert testimony be based on sufficient facts or data, (2) it be the product of reliable principles and methods, and (3) those principles and methods be applied reliably to the facts of the case. Fed. R. Evid. 702.

In *Daubert*, the Supreme Court provided several nonexclusive factors to guide courts in evaluating the reliability of a methodology. Those factors include whether the theory can be and has been tested; whether the theory has been subjected to peer review and publication; the theory's known or potential rate of error; the existence and maintenance of standards and controls; and whether the theory is generally accepted. 509 U.S. at 593-94. Otherwise admissible expert testimony may be excluded under Rule 403. *Daubert*, 509 U.S. at 595; *see also* Fed. R. Evid. 403. The proponent of the expert testimony bears the burden of proving, by a preponderance of the evidence, "that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable." *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

### A. Reasonable Royalty

After considering Mr. Sims's reasonable royalty analysis, the Court is troubled by his application of the hypothetical license negotiation. Originally listed as one of many

reasonable royalty factors in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), the hypothetical negotiation has evolved into an umbrella over all the other factors. *Powell v. Home Depot U.S.A.*, 663 F.3d 1221, 1239 (Fed. Cir. 2012) (amount of the reasonable royalty that should be awarded upon a "reasoned hypothetical negotiation analysis"); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1580 (Fed. Cir. 1989) ("The determination of a reasonable royalty, however, is based not on the infringer's profit margin, but on what a willing licensor and licensee would bargain for at hypothetical negotiations on the date infringement started."). The Federal Circuit has indicated, at times, that the hypothetical negotiation approach is not strictly mandatory. *See Wordtech Sys. v. Integrated Network Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) ("A reasonable royalty can be calculated from an established royalty, the infringer's profit projections for infringing sales, or a hypothetical negotiation between the patentee and infringer based on the factors in *Georgia-Pacific*."). However, other Federal Circuit cases, including one *en banc* decision, have indicated that it is a mandatory approach. *See Fujifilm Corp. v. Benum*, 605 F.3d 1366, 1372 (Fed. Cir. 2011) ("To determine a reasonable royalty, a jury must find the royalty that would have been agreed to in a hypothetical negotiation between a willing licensee and willing licensors at the time infringement began."); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc) ("The royalty may be based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant.") (citation omitted). In the present case, neither party appears to challenge the appropriateness or applicability of the hypothetical negotiation approach generally.

Turning to the law governing the principles of a hypothetical negotiation, the Federal Circuit has characterized the approach thus:

> The methodology encompasses fantasy and flexibility; fantasy because it requires a court to imagine what warring parties would have agreed to as willing negotiators; flexibility because it speaks of negotiations as of the time infringement began, yet permits and often requires a court to look to events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators.

*Fromson v. Western Litho-Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988). In a hypothetical negotiation—as opposed to real-life license negotiations—a number of facts are deemed to be irrebuttably known. One is that the patent is valid, another is that the patent is infringed. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009), *cert. denied*, 130 S. Ct. 1334 (2010) ("The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed."); *Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1570 (Fed. Cir. 1988) (citing trial court's recognition that, in hypothetical negotiations, there is a presumption of "an unquestionably valid patent").

Given that backdrop, the Court cannot assume, as WG's counsel has urged, that ION, in a hypothetical negotiation with WG, would have taken a risk on the infringement question and agreed to a huge, profit-eliminating (and even revenue eliminating) royalty obligation for itself. As a matter of law, no such risk can be taken in a hypothetical negotiation in which infringement is deemed known. With knowledge of validity and infringement, such a financially catastrophic agreement would have been totally unreasonable. The court in *Georgia-Pacific* acknowledged the proposition that negotiators in hypothetical negotiations must be deemed to act reasonably: "The primary inquiry, often complicated by secondary ones, is what the parties would have agreed

4

upon, if both were reasonably trying to reach an agreement." *Georgia-Pacific*, 318 F. Supp. at 1121 (quoting *Faulkner v. Gibbs*, 199 F.2d 635, 639 (9th Cir. 1952) (internal quotation marks omitted). Even putting case law aside, any unreasonable negotiating approach must be rejected, since the ultimate goal is to arrive at what the statute terms a "reasonable royalty." Mr. Sims's methodology inherently arrives at an unreasonable result, and one to which no reasonable negotiator for ION could possibly have agreed. The Court therefore grants ION's motion to exclude Mr. Sims's testimony on reasonable royalty.

### B. Lost Profits

The Court separately considers Mr. Sims's analysis as to lost profits. To recover lost profits, a patentee must "show a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001) (emphasis added). Considering whether such "but-for" causation exists "requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what the patentee 'would . . . have made.'" *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1342, 1350 (Fed. Cir. 1999) (quoting *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 979 F. Supp. 1233, 1236 (N.D. Ind. 1997)). In *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, the Sixth Circuit developed a four-factor test for determining causation. 575 F.2d 1152 (6th Cir. 1978). The test provides that a patentee seeking to recover lost profits on sales that the patentee would have made absent infringement most show: (1) demand for the patented product; (2) absence of acceptable noninfringing alternatives; (3) the patentee's manufacturing and marketing capability to

exploit the demand; and (4) the amount of profit that the patentee would have made. *Id. at* 1156.

In considering WG's lost profits, Mr. Sims evaluated a number of surveys that ION's customers conducted using ION's DigiFIN product. He then reconstructed the market to determine whether WesternGeco would have gotten bids to perform those surveys absent ION's alleged infringement. Out of all surveys performed using DigiFIN, Mr. Sims identified a small subset which he believes WG would have been awarded in his reconstructed market. Mr. Sims then proceeded to consider each of the four *Panduit* factors, ultimately concluding that there was a high demand for steerable streamers, that noninfringing alternatives would not have been acceptable as to this subset of surveys, and that WG had the manufacturing and marketing capability to exploit the demand for steerable streamers.

The Court has considered Defendants' objections to this methodology. Those include their contentions that Mr. Sims's focus on ION's customers' surveys was improper, that he failed adequately to reconstruct the market, that his analysis utilized unreliable data, and that some of the particular surveys included in his analysis could not have been won by WesternGeco, and therefore may not be included as lost profits.

After considering these arguments, the Court is persuaded that the issues raised by Defendants are properly addressed on cross-examination and through Defendants' own presentation of evidence. Mr. Sims applied the methodological approach that all parties agree is appropriate by utilizing the *Panduit* factors. In applying that approach, he went through each of the four factors with a detailed explanation of why he reached his particular conclusions. Although there are undoubtedly other approaches that Mr. Sims

could have taken, Defendants have failed to persuade the Court that his methodology or approach was improper under the *Daubert* standard.

Notwithstanding the general admissibility of Mr. Sims's analysis, there is one survey that concerns the Court from a *Daubert* standpoint. This survey, referred to by Fugro as the Lukoil/Vanco Ghana survey, was one of the surveys that Mr. Sims opined would have been won by WG in the reconstructed market. However, the manager of WesternGeco's CRM database has agreed that WG did not submit a tender for this survey. (Deposition of Samantha Graycon, Doc. No. 356-E at 103:15-104:17.) Without having submitted a tender on this survey, WG cannot legitimately argue—and it would be confusing and unhelpful to the jury to allow Mr. Sims to contend—that this survey would have been won by WG in a reconstructed market. Thus, while the Court finds that Defendants' other challenges are properly addressed at trial, it cannot allow Mr. Sims to testify that the Lukoil/Vanco Ghana survey should be considered a lost profit survey. As such, this survey may not be included in Mr. Sims's analysis at trial.

## II.     MOTIONS IN LIMINE

The Court addressed a handful of the parties' Motions in Limine during the pretrial conference held on Friday, July 13. The Court now considers those unresolved motions that the parties have indicated may present issues during voir dire or opening statements.

### A. ION's Second Motion in Limine

In its second Motion in Limine, ION asks the Court to exclude "[a]ny reference to a presumption of validity of any patent-in-suit." (Doc. No. 384 at 4.) ION contends that "reference to any presumption is not evidence but instead a procedural device without

any independent evidentiary value to be weighed against ION's evidence of invalidity." (*Id.*) The Court disagrees. It is beyond dispute that patents-in-suit must be presumed valid. 35 U.S.C. § 282(a). This presumption is inextricably linked to Defendants' burden to prove invalidity by clear and convincing evidence. The Court finds that the presumption of validity is not only appropriate information for the jury, but that it is helpful. ION's second Motion in Limine therefore is denied.

### B. ION's Third Motion in Limine

In its third Motion in Limine, ION seeks to exclude "[a]ny mention of or reference to any indemnity obligation between ION and the Fugro Defendants." (Doc. No. 384 at 5.) ION bases this on the fact that WesternGeco has no standing to assert any right to indemnity on the part of the Fugro Defendants. WG has indicated that it does not intend to assert any rights on behalf of Fugro, but instead that it seeks to introduce the indemnity relationship as it is related to willfulness. Reference to the indemnity agreement for this purpose is not per se improper, and the Court will not exclude it in advance of trial. If it becomes clear during the course of trial that WesternGeco seeks to introduce this evidence for an improper purpose, the Court will consider excluding it at that time.

### C. WesternGeco's First Motion in Limine

In its first Motion in Limine, WesternGeco seeks to preclude Defendants from disputing a number of facts that WG contends were resolved on summary judgment. (Doc. No. 386 at 1.) The Court ruled on a portion of this motion during the pre-trial conference, and will hold other portions over until trial. However, the Court wishes to clarify certain issues prior to trial.

WesternGeco moves to preclude Defendants from disputing that the DigiFIN includes an active streamer positioning device ("ASPD") capable of controlling the vertical and horizontal position of a seismic streamer. Defendants respond that, because the Court's finding on this matter was made in the context of denying Defendants' motions for summary judgment, and not in the context of granting a motion in favor of WG, this issue remains a factual question for trial. The Court does not agree. When the Court considered this issue at the summary judgment phase, it was in the context of a two-fold inquiry. The first question was whether the DigiFIN includes an ASPD. (Doc. No. 365 at 91.) The second was whether the DigiFIN includes an array geometry tracking system. (*Id.*) In order to infringe the claim at issue, the Court explained, the DigiFIN had to have both of these components. (*Id.*)

The Court held that the DigiFIN *did* have the first component, an ASPD: "The Court is persuaded, in light of the foregoing evidence, that the DigiFIN includes an ASPD capable of controlling the vertical and horizontal position of a seismic streamer." (*Id.* at 92.) As to whether DigiFIN included the second component, an array geometry tracking system, the Court found that a genuine issue of material fact existed. (*Id.* at 93.). Thus, the Court has held, conclusively, that the DigiFIN includes an ASPD, and this issue may not be relitigated. This portion of WesternGeco's first motion in limine is granted.

WesternGeco also moves for a ruling in limine that the term "predicting position" in claim 16 of the '017 patent does not "require something occurring at a future time." (Doc. No. 386 at 2.) As Defendants point out, the Court refused to construe this term and instead held that it has its ordinary meaning. (Transcript of December 15, 2011 Hearing,

Doc. No. 395-B at 55:17-20.) This portion of WesternGeco's first Motion in Limine is denied.

### D. WesternGeco's Fourth Motion in Limine

WesternGeco's fourth Motion in Limine seeks to exclude "prior art not relied upon as a basis for invalidity by Defendants' experts." (Doc. No. 386 at 5.) At the pretrial conference on July 13, the Court held portions of this motion over for trial. However, as to the "Workman Reference," the Court writes to clarify that testimony about this patent will not be excluded. The Court considered the Workman Reference as a potential source of prior art in its most recent Memorandum and Order (Doc. No. 365 at 25-28), concluding that a factual issue remains with respect to the Workman reference as prior at. Allowing Defendants' experts to opine about the Workman Patent as it relates to the '520 Patent would not prejudice WesternGeco and would be helpful to the jury. WesternGeco's fourth Motion in Limine therefore is denied in part.

The remainder of WesternGeco's Motions in Limine need not be resolved prior to trial.

### E. Fugro's First Motion in Limine

In its First Motion in Limine, Fugro asks the Court to preclude WG from eliciting fact or expert testimony, attempting to admit documentary evidence, or otherwise arguing before the jury that bodies of water that lie more than 12 miles outward from the U.S. coastline, the high seas (including the Chukchi Sea), or the United States' Exclusive Economic Zone (including the EEZ in the Gulf of Mexico) are U.S. territories or possessions. (Doc. No. 385 at 1-3.) Fugro also asks the Court to preclude WG from

stating, implying, or attempting to admit evidence to prove the presence of a Fugro ship within 12 miles of the U.S. coastline constitutes infringement. (*Id.*)

WG has indicated that it agrees to this motion, in part. WG avers that it will not argue before the jury that bodies of water more than 12 miles outward of the coastline are U.S. territories. WG disagrees with the latter half of the motion in which Fugro seeks to preclude WG from stating or implying that certain activities constitute infringement. WG contends that these requests are premature and inappropriate, and that certain Fugro activities, including coming to port in the United States, are circumstantial evidence of infringement.

In ruling in favor of Defendants on a portion of their motion for summary judgment of non-infringement of WG's "Zajac" patent's system claims, the Court explained that WG's evidence of Defendants' surveys outside of the United States, evidence of their use of U.S. ports, and unsupported inferences that Defendants may have conducted tests in the United States while they were in transit to the survey locations, did not give rise to a genuine issue of material fact. (Doc. No. 365 at 87.) On that basis, the Court concluded that neither Fugro nor ION made or used the patented system in the United States.

In light of the Court's rulings on summary judgment, WG may not state or imply to the jury that activities described in the Court's opinion—such as coming to port in the United States or conducting surveys outside of the United States—constitute infringement as to WG's method claims or the Zajac patent's "systems" claims. WG may discuss these activities to offer context as to how Fugro and ION operated, but testimony implying that these activities are themselves infringing is impermissible.

### III. CONCLUSION

In light of the foregoing, the Court concludes that Defendants' Motions to Exclude the Expert Testimony of Raymond Sims must be **GRANTED IN PART** and **DENIED IN PART**. The parties' Motion in Limine must be **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**

**SIGNED** at Houston, Texas, on this the 16th day of July, 2012.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE