United States District Court
Southern District of Texas
**ENTERED**
May 04, 2016
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **WESTERNGECO LLC, *et al*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:09-CV-1827** |
| | § | |
| **ION GEOPHYSICAL CORPORATION,** | § | |
| ***et al*,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER AND REPORT AND RECOMMENDATION

On May 2, 2016, the District Court referred nondispositive matters in this case to this Court for decision, and dispositive matters for report and recommendation. (Doc. No. 724). Pending before the Court is WesternGeco L.L.C.'s Motion to Enforce Royalty Damages (Doc. No. 696), ION Geophysical Corporation's Motion for a Stay, or for Relief under Federal Rule of Civil Procedure 60(b)(6) (Doc. No. 700), and Arch Insurance Company and Westchester Fire Insurance Company's Motion to Release/Discharge Supersedeas Bond Relative to Liability for Lost Profits Damages Reversed on Appeal (Doc. No. 721).

In light of the mandate the United States Court of Appeals for the Federal Circuit issued on November 6, 2015, and the District Court received on November 9, 2015 (Doc. No. 695), this Court recommends that the District Court issue Final Judgment without delay. In addition, the Court recommends that the District Court enter an order that Defendant's Request for Relief under Rule 60(b)(6) be **DENIED.** The Court orders that WesternGeco L.L.C.'s Motion to Enforce Royalty Damages be **GRANTED**, orders that Arch Insurance Company and

Westchester Fire Insurance Company's Motion for Release/Discharge of Bond Obligation be **DENIED**, and orders that ION Geophysical Corporation's Motion for a Stay be **DENIED**.

## I.    PROCEDURAL BACKGROUND

WesternGeco LLC ("WesternGeco" or "Plaintiff") originally filed a complaint in the Southern District of Texas alleging that ION Geophysical Corporation ("ION" or "Defendant") infringed multiple claims on four patents related to marine geological exploration and identification of potential oil and gas deposits beneath the ocean floor. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 953 F. Supp. 2d 731, 739 (S.D. Tex. June 19, 2013). Specifically, Plaintiff argued that ION had infringed multiple claims on U.S. Patent No. 7,293,520 (the "'520 Patent"); 7,162,967 (the "'967 Patent"); 7,080,607 (the "'607 Patent") ("Bittleston Patents" collectively); and U.S. Patent No. 6,691,038 (the "'038 Patent" or "Zajac Patent"). *Id.* at 939-40.

Following the parties' pre-trial motions, the District Court granted summary judgment to Plaintiff concerning infringement on claim 18 of the '520 Patent under 35 U.S.C. § 271(f)(1). *WesternGeco L.L.C. v. ION Geophysical Corp.*, 2012 WL 2568167 (S.D. Tex. June 29, 2012). At trial, the parties produced evidence concerning additional claims on the '520 Patent, as well as claims on the remaining Bittleston ('967 and '607 Patents) and Zajac patents. "The jury found infringement and no invalidity with respect to all asserted claims for each of the four patents[1], and awarded $93,400,000 in lost profits and $12,500,000 in reasonable royalties." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 791 F.3d 1340, 1342-43 (Fed. Cir. July 2, 2015). In addition,

---

[1] Specifically, the jury found that "ION infringed claims 19 and 23 of the '520 Patent, claim 15 of the '967 Patent, claim 15 of the '607 Patent, and claim 14 of the '038 Patent under §§ 271(f)(1) and (f)(2). The jury also found that ION infringed claim 18 of the '520 Patent under § 271(f)(2) (infringement under (f)(1) as to claim 18 already having been decided on summary judgment)." *WesternGeco L.L.C. v. ION Geophysical Corp.*, 791 F.3d 1340, 1344 (Fed. Cir. July 2, 2015).

the jury found ION's infringement to be willful. *Id.* at 1344. During and after trial, the parties

engaged in extensive motions practice.

> ION filed motions for judgment as a matter of law or for a new
> trial. ION also filed a motion to dismiss, for the first time alleging
> that WesternGeco did not have standing to assert the '607 patent,
> the '967 patent, and the '520 patent because WesternGeco did not
> own the patents. WesternGeco filed, *inter alia*, a motion for
> enhanced damages under 35 U.S.C. § 284.

*Id.* The District Court denied Defendant's motions for judgment as a matter of law and motion to

dismiss, as well as Plaintiff's motion for enhanced damages. *WesternGeco*, 953 F. Supp. 2d at

739. Following the District Court's entry of final judgment on May 7, 2014 (Doc. No. 687),

Defendant filed an unopposed Motion for Bond on May 12, 2014 (Doc. No. 688), which the

District Court then granted (Doc. No. 689). Arch Insurance Company and Westchester Fire

Insurance Company ("Sureties") secured the supersedeas bond. The bond covered liability of

$120,000,000. Mot. Release of Bond Obligation, Ex. 1 (Doc. No. 721).

Having stayed payment of the final judgment with the approval of a supersedeas bond,

both parties proceeded to appeal decisions of the District Court to the United States Court of

Appeals for the Federal Circuit. ION appealed,

> arguing that WesternGeco is not the owner of the '607, '967, and
> '520 patents and therefore lacks standing to assert them; that the
> district court applied an incorrect standard in granting summary
> judgment as to claim 18 of the '520 patent under 35 U.S.C. §
> 271(f)(1) and that this ruling infected the trial with respect to
> liability for all other claims; and that lost profits were
> impermissibly awarded for conduct abroad.

*WesternGeco L.L.C.*, 791 F.3d 1343. WesternGeco conditionally cross-appealed, arguing that if

the Federal Circuit were to

> find in favor of ION with respect to any of its appealed issues, [the
> Federal Circuit] should set aside the damages award because the
> district court erred in preventing WesternGeco's damages expert
> from testifying on the issue of a reasonable royalty. WesternGeco

> also challenge[d] the district court's refusal to award enhanced
> damages for willful infringement.

*Id.* The Federal Circuit affirmed in all respects, except that it reversed "the district court's refusal to grant [judgment as a matter of law] eliminating the lost profits component of the jury award." *Id.* at 1354. In effect, the appellate court affirmed on liability and upheld the reasonable royalty damages for Plaintiff, but reversed the $93,400,000 of lost profit damages. Judge Wallach dissented in part from the decision to acknowledge that he would have affirmed the award of lost profits damages to Plaintiff. *Id.* (Wallach, J., dissenting). WesternGeco filed a petition for rehearing en banc, which was denied, with three judges dissenting for "the reasons articulated in [Judge Wallach's] dissent from the panel opinion." Order Denying Rehearing, 621 F. App'x 663, 664 (Fed. Cir.) (Wallach, J., dissenting).

On November 9, 2015, the District Court received the formal mandate of the Federal Circuit (Doc. No. 695). Within the month, Plaintiff filed the pending Motion to Enforce Royalty Damages (Doc. No. 696). The parties filed the following with regard to this motion: Sureties' Response in opposition (Doc. No. 699); Defendant's Response (Doc. No. 701); Plaintiff's Reply (Doc. No. 708); and Defendant's Sur-reply (Doc. No. 719). This motion became ripe for decision on January 29, 2016.

Defendant filed the pending Motion for a Stay (Doc. No. 700) on December 18, 2015. Defendant moves alternatively for relief from the judgment under Federal Rule of Civil Procedure 60(b)(6). The parties filed the following with regard to this motion: Plaintiff's Response (Doc. No. 708); Defendant's Reply (Doc. No. 719); and Plaintiff's Sur-reply (Doc. No. 720). This motion became ripe for decision on February 10, 2016.

In addition, on February 12, 2016, the Sureties filed the pending Motion to Release/Discharge Supersedeas Bond Relative to Liability for Lost Profit Damages Reversed on

Appeal. (Doc. No. 721). Plaintiff filed its Response (Doc. No. 722); and the Sureties have filed their Reply (Doc. No. 723). This motion became ripe for decision on March 14, 2016.

On February 26, 2016, WesternGeco petitioned the United States Supreme Court for a writ of certiorari to review the Federal Circuit's reversal of lost profit damages. *WesternGeco L.L.C. v. ION Geophysical Corp.*, 791 F.3d 1340 (Fed. Cir. 2015), *petition for cert. filed* (U.S. Feb. 26, 2016) (No. 15-1085). Defendant's response was filed on April 27, 2016.

Finally, under the Leahy-Smith America Invests Act of 2011, 35 U.S.C. §§ 311 *et seq.*, a person who is not the owner of a patent may file a petition to institute *inter partes* review ("IPR") proceedings of the patent with the Patent Trial and Appeal Board ("PTAB").[2] Petroleum Geo-Services, Inc. initiated collateral *inter partes* review ("IPR") proceedings for some of the claims at issue in this case. The PTAB found all but one of the claims at issue in this case on the Bittleston patents to be invalid.[3] Mot. Stay Exs. 1-3. The PTAB released Final Written Decisions in all three IPR proceedings on December 15, 2015. Mot. Stay Exs. 1-3. Despite the decisions' titles as Final Written Decisions, the cancellations of the patent claims will not take effect until either the time for appeal has expired or an appeal to the United States Court of Appeals for the Federal Circuit has been terminated. 35 U.S.C. § 318(b). Plaintiff has until May 19, 2016 to file an appeal of the PTAB decisions with the Federal Circuit.[4]

---

[2] Parties who have, more than one year prior, been served with a complaint alleging infringement of the patent in question may not initiate IPR proceedings. 35 U.S.C. § 315(b). Because of the instant litigation, Defendant was barred from initiating the IPR proceedings. It sought and was granted joinder on IPR proceedings Petroleum Geo-Services, Inc. initiated. Def.'s Reply and Sur-reply at 9 (Doc. No. 719).

[3] The PTAB reviewed Claims 18 and 19 of the '520 patent, claim 15 of the '967 patent, and claim 15 of the '607 patent, while neither claim 23 of the '520 patent, nor claim 14 of the '038 patent were initiated for *inter partes* review. Mot. Stay at n.9.

[4] Time for appeal generally terminates 63 days after issuance of a Final Written Decision, but this period is stayed pending PTAB action on a request for rehearing. 37 C.F.R. § 90.3(b)(1). Plaintiff sought rehearing in all three matters, and the PTAB issued its three denials of these requests for rehearing on March 17, 2016. The 63 day period has therefore restarted, and Plaintiff has until May 19, 2016 to file any appeal.

## II.     ENTRY OF FINAL JUDGMENT

The District Court received the mandate of the Federal Circuit on November 9, 2015. The mandate transferred jurisdiction back to the District Court and requires that Court to implement the decision of the Federal Circuit. A District Court "must comply strictly with the mandate rendered by the reviewing court" and "may not deviate" from the mandate. *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001); *see also United States v. Rivera-Martinez*, 931 F.2d 148, 150 (1st Cir. 1991) ("When a case is appealed and remanded, the decision of the appellate court establishes the law of the case and it *must* be followed by the trial court on remand."). This mandate rule "requires a district court on remand to effect [the Circuit Court's] mandate and do nothing else." *Gen. Universal Sys. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007).

Although Plaintiff has petitioned the United States Supreme Court for a writ of certiorari, the District Court lacks the authority to stay proceedings pending Supreme Court review. 28 U.S.C. § 2101(f); *see also Metavante Corp. v. Emigrant Sav. Bank*, 2010 WL 3835121, at *2 (E.D. Wis. Spt. 28, 2010) ("Courts interpreting the language of 28 U.S.C. § 2101(f) have universally concurred that the language is exclusive, prohibiting the district court from staying the enforcement of a court of appeals' judgment pending an appeal to the Supreme Court."). "A court of appeals judgment, it must not be forgotten, 'is entitled to a presumption of validity.'" *Revlon, Inc. v. Carson Products Co.*, 647 F. Supp. 905, 906 (S.D.N.Y. 1986) (citing *Graves v. Brown*, 405 U.S. 1201, 1203 (1971)).

As such, all that remains for the District Court is the resolution of the pending motions considered in this Order and Report and Recommendation, and the entry of Final Judgment in accordance with the mandate of the Federal Circuit. This Court recommends that the District

Court's Final Judgment should award reasonable royalty and related damages to Plaintiff and grant Defendant judgment as a matter of law on the lost profit damages. *See WesternGeco L.L.C. v. ION Geophysical Corp.*, 791 F.3d 1340 (Fed. Cir. July 2, 2015). Additionally, as Federal Rule of Civil Procedure 58 requires, the Final Judgment should issue "in a separate document." Fed. R. Civ. P. 58.

## III.   DISPOSITION OF THE SUPERSEDEAS BOND

The parties have filed competing motions on the disposition of the supersedeas bond. The Plaintiff seeks to enforce the bond as to the royalty damages affirmed in the mandate of the Federal Circuit Court. The Sureties seek a release of their supersedeas bond with respect to the lost profit damages because the Federal Circuit Court reversed the award of those damages on appeal. The ultimate disposition turns on the specific language in the bond.

### A.    The Purpose of The Supersedeas Bond

Under Federal Rule of Civil Procedure 62(d), a judgment debtor may post a supersedeas bond to secure a stay of judgment pending appeal. *Revlon, Inc. v. Carson Products Co.*, 647 F. Supp. 905 (S.D.N.Y. 1986). "The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal." *Halliburton Energy Services, Inc. v. NL Industries*, 703 F. Supp. 2d 666, 669 (S.D. Tex. 2010) (quoting *Poplar Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979)). "A judgment debtor who wishes to appeal may use the bond to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal on appeal. At the same time, the bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal." *Id.* "Courts release supersedeas bonds when the bond has served its purpose and no outstanding judgment remains."

*Goss Int'l Corp. v. Tokyo Kikai Seisakusho, Ltd.*, No. 00-CV-35-LRR, 2006 WL 4757279, at *3 (N.D. Iowa Aug. 9, 2006) (citations omitted). Ordinarily, "absent unambiguous language in the supersedeas bond to the contrary, an appellant is liable under a bond only until the court of appeals has issued its mandate in a case or stayed its mandate pending application for certiorari." *Halliburton*, 703 F. Supp. 2d at 669 (quoting *Water Techs. Corp. v. Calco, Ltd.*, 694 F. Supp. 1328, 1331 (N.D. Ill. (1988) (citation omitted)).

It is well established that "a bond, being a contract, is controlled by the language in the bond." *Neeley v. Bankers Trust Co. of Texas*, 848 F.2d 658, 659 (5th Cir. 1988) (citing *Aetna Casualty & Sur. Co. v. LaSalle Pump & Supply Co.*, 804 F.2d 315, 317 (5th Cir. 1986)); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 930 F.2d 1572, 1576 (Fed. Cir. 1991) ("The interpretation of a bond's terms, like any other contract, is a matter of law . . . ."). "No federal statute, provision of the Federal Rules of Civil Procedure, or provision of the Federal Rules of Appellate Procedure defines the conditions that trigger a surety's obligation under a supersedeas bond. The terms of an appeal bond determine the extent to which the surety on the bond is bound." *Beatrice Foods*, 930 F.2d at 1574 (citations omitted). The Supreme Court instructed that "the obligation of sureties upon bonds [is] strictissimi juris [of the strictest law], and not to be extended by implication or enlarged construction of the terms of the contract entered into." *Crane v. Buckley*, 203 U.S. 441, 447 (1906).

"The extent of liability under the supersedeas bond must be determined in accordance with the real or presumed intention of the parties." *Aviation Credit Corp. v. Conner Air Lines, Inc.*, 307 F.2d 685, 688 (5th Cir. 1962). While the parties' intent is controlling, the court must consider whether the language in the bond was boilerplate such that case law interpreting stock language should be considered as it may have influenced the language the bonding company

chose, or was not boilerplate such that the court must construe the language to implement the parties intent as reflected in the specific words included in the bond. *Compare Beatrice Foods*, 930 F.2d at 1574-75 (finding that the bond language defining the obligation to "prosecute this appeal to effect" as old language with well-established meaning that the appellant must have prosecuted the appeal with success to release the bond) *with Neeley*, 848 F.2d at 659 (finding that the explicit language of the bond limited it to the judgment of the court of appeals and thus was discharged when the court of appeals reversed and remanded for a new trial in the district court).

The pertinent language of the bond is as follows:

> Pursuant to Fed. R. Civ. P. 62, 65.1, and Fed. R. App. P. 8, ION GEOPHYSICAL CORPORATION, Defendant, as Principal, and Arch Insurance Company and Westchester Fire Insurance Company, as Sureties, unconditionally bind themselves as set forth below to pay to WESTERNGECO L.L.C., Plaintiff, the total amount of the Final Judgment, if, as, and in the amount affirmed on appeal (or in full, if such appeal is abandoned or dismissed) or modified on appeal or remand, plus additional post-judgment interest accrued since entry of Final Judgment, and any costs or other amounts awarded on appeal to WESTERNGECO L.L.C. ("Total Amount").
>
> . . .
>
> 1. If Principal fails to pay to WESTERNGECO L.L.C. the Total Amount in full after the mandate is returned to the District Court or the appeal otherwise terminated without any mandate, each Surety will pay directly to WESTERNGECO L.L.C. the difference between the Total Amount and any amounts paid by Principal, up to the maximum liability below for each of them.

Mot. Release of Bond Obligation, Ex. 1. The parties' motions will be considered in light of this bond language.

### B.    Motion To Enforce Royalty Damages

The mandate of the Federal Circuit Court affirmed the District Court's judgment awarding Plaintiff reasonable royalty damages. *See WesternGeco L.L.C.*, 791 F.3d at 1354.

Plaintiff asks the Court to enter an order against both the Defendant and Sureties to enforce the reasonable royalty damages in the amount of $20,653,153.70, arguing that the trigger for payment under the supersedeas bond was the return of the mandate from the Federal Circuit. *See* Mot. Enforce at 1-2. Plaintiff argues that despite the potential that "[o]ther issues may remain," immediate enforcement of the affirmed damages is appropriate. *Id.* at 1.

Federal Rule of Civil Procedure 65.1 provides the following:

> Whenever these rules . . . require or allow a party to give security, and security is given through a bond or other undertaking with one or more sureties, each surety submits to the court's jurisdiction and irrevocably appoints the court clerk as its agent for receiving service of any papers that affect its liability on the bond or undertaking. The surety's liability may be enforced on motion without an independent action. The motion and any notice that the court orders may be served on the court clerk, who must promptly mail a copy of each to every surety whose address is known.

Fed. R. Civ. P. 65.1. As an initial matter, Federal Rule of Civil Procedure 65.1 provides only for proceedings against a surety. This rule does not permit a party to move to enforce liability against a nonsurety, such as Defendant. The Defendant is liable for payment pursuant to the Final Judgment, the District Court's Order granting the Motion for Bond, and the language of the bond itself. *See* Final Judgment (Doc. No. 687); Order (Doc. No. 689); and Mot. Release, Ex. 1 (Doc. No. 721).

Paragraph 1 of the bond establishes the trigger for payment as follows: "[i]f [Defendant] fails *to pay* WESTERNGECO L.L.C. the Total Amount in full *after the mandate is returned* to the District Court . . . each Surety will *pay* directly to WESTERNGECO L.L.C. . . ." Mot. Release, Ex. 1 at ¶ 1 (emphasis added). Thus, the explicit language of the bond requires the return of the mandate to the District Court to trigger payment, either from Defendant, or failing that, from the Sureties. Their obligation to pay was triggered on November 9, 2015 when the

District Court received the mandate from the Federal Circuit. Nothing more is required for the Defendant or Sureties to be required to make payment to WesternGeco.

Since the court of appeals judgment is entitled to a presumption of validity notwithstanding the fact that the Plaintiff has filed a petition for writ of certiorari with the Supreme Court, *Revlon,* 647 F. Supp. at 906, payment of the damages the Federal Circuit affirmed in its mandate is appropriate, particularly since this case was initially filed in 2009 and the Defendant did not contest the royalty damages on appeal. *WesternGeco L.L.C.,* 791 F.3d at 1349; *see, e.g., King Instrument Corp. v. Otari Corp.,* 814 F.2d 1560, 1563 (Fed. Cir. 1987) (confirming partial payment of damages protected under supersedeas bond, "In light of the length of time that has elapsed since these parties first were involved in litigation over the '153 patent, the District Court could certainly decline to insist that King wait even longer before receiving compensation for [damages] which are, at this point, both uncontested and absolute.").

Thus, this Court grants Plaintiff's Motion to Enforce Royalty Damages against the Sureties.

### C.    Motion For Release/Discharge Of Bond Obligation For Lost Profit Damages

The Sureties ask the Court to release their obligation under the supersedeas bond for the lost profit damages. They argue that the Federal Circuit reversed lost profit damages, and both the purpose of the bond in maintaining the status quo between the parties and the language of the bond itself require that the Sureties be released of that obligation now that the District Court's Final Judgment will not include a lost profits award to Plaintiff. Mot. Release at 3-5.[5]

---

[5] The Sureties also argue that should the bond be held in place, WesternGeco would be placed in a better position than if Plaintiff had already been paid the lost profit damages after the trial, because Defendant would now be able to seek restitution from Plaintiff for those damages. Mot. Release at 10. Defendant's argument is academic since it posted a bond in lieu of making the payment after trial. The Court need not consider arguments of a merely academic nature. *See Kirscher v. Messerli & Kramer, P.A.,* 2006 WL

In cases where the award of the District Court is reversed or vacated *in its entirety*, courts have generally released the sureties from their liability under the supersedeas bond. *See, e.g., Am. Fed. Grp., Ltd. v. Rothenberg*, 1998 WL 273034 (S.D.N.Y. May 28, 1998); *Singleton v. Guangzhou Ocean Shipping Co.*, 1996 WL 257560 (E.D. La. May 13, 1996); *Revlon, Inc.*, 647 F. Supp. at 906. Here, however, the decision of the Federal Circuit explicitly affirmed the District Court's decision on Defendant's liability to Plaintiff for infringement, affirmed the award of royalty damages, but reversed the award of lost profit damages. *See WesternGeco L.L.C.*, 791 F.3d 1340. Thus, the cases that allow release of the bond when the case was reversed or vacated are inapposite.

Several courts have held that where liability is affirmed, and damages reversed or remanded for recalculation, the surety may remain liable on the bond. *See Beatrice Foods*, 930 F.2d at 1576 (after reviewing decisions from other circuit courts interpreting the bond language that the appeal be "prosecuted to effect," the Federal Circuit concluded that "the regional circuits agree that the surety remains liable when the question on remand is not whether a party will receive damages, but merely how the damages will be calculated."); *cf. Franklinville Realty Co. v. Arnold Constr. Co.*, 132 F.2d 828, 829 (5th Cir. 1943) (without discussing bond language, where judgment was affirmed and remand was limited to determine whether amount of damages should be reduced, bond was not released). Ultimately, this body of cases rests on the specific language of the bond. The bond at issue in this case does not contain the "prosecuted to effect" or other similar language requiring substantial success on appeal to release the bond.[6]

---

145162 at *7 (D. Minn. 2006); *Washington Nat. Life Ins. Co. v. Calcasieu Parish School Bd.*, 2006 WL 1215413 at *3 (N.D. Ill. 2006).

[6] Had the parties included such language in the bond, rather than the "on appeal or remand" language actually used, the Court still would not have released Sureties from their liability. Because the Federal Circuit affirmed Defendant's liability, and reversed only the lost profit damages, the appeal was not "prosecuted to effect." *See Beatrice Foods*, 930 F.2d at 1576.

Although the bond in *Neeley* included "prosecuted with effect" language, it also included language limiting the scope of the bond to "perform[ing] [the court of appeals] judgment, sentence or decree, and pay[ing] all such damages said Court may award against them." 848 F.2d at 659. The court of appeals reversed the contract claim, found fraud liability, and could not determine the amount of actual fraud damages, so it vacated the exemplary damages and remanded for a new trial on damages. On remand, the plaintiff moved the court to stay release of the bond, which the trial court ultimately denied. The Fifth Circuit found that the bond was properly released because there was no judgment to enforce after the appeal since no money damages were awarded and a new trial was necessary. "The bond, limited by its explicit terms to the judgment of the court of appeals, was discharged." *Id.*

The parties agree that the specific language of their bond is controlling on the Court's analysis of the Sureties' liability. The language is specific to this bond and not similar to the bond language in the cases cited. The language relevant to this analysis is found in the preamble of the bond, which specifically defines the scope of the Defendant's and Sureties' liability to

> **unconditionally bind themselves . . . to pay** to . . . Plaintiff, the total amount of the Final Judgment, if, as, and in **the amount affirmed on appeal** (or in full, if such appeal is abandoned or dismissed) **or modified on appeal or remand** . . .

Mot. Release of Bond Obligation, Ex. 1 (Doc. No. 721) (emphasis added).

Unsurprisingly, the parties offer differing interpretations of this language. The Sureties argue that the "appeal or remand" language of the bond is limited to appeals to the Federal Circuit:

> [T]he Supersedeas Bond was only intended to protect the Plaintiff from the risk that the Defendant would be unable to pay the Plaintiff the lost profits and reasonable royalties **to the extent affirmed or awarded by the Federal Circuit.**
>
> . . .

> Moreover, the negotiated terms of the Supersedeas Bond confirm
> that (1) the bond only secures this Court's Final Judgment to the
> extent of the "amount affirmed on appeal . . . or modified on
> appeal or remand" **from the Federal Circuit** . . .

Mot. Release at 5.

Unlike in *Neely*, this bond does not limit "appeal or remand" to the court of appeals or more specifically the Federal Circuit. The Sureties in effect argue that the Court should ***imply*** that the appeal and remand refer to the Federal Circuit even though the terms of the bond do not contain any such limitations. They argue that the proper interpretation of the bond is to read the limitation in paragraph one that triggers payment to receipt of the mandate as requiring a limitation on the scope of their liability as also limited to appeals or remands from the Federal Circuit. Reply Mot. Release at 4 (Doc. No. 723). Even paragraph one does not reference the words "the Federal Circuit." Mot. Release, Ex. 1. The Sureties would have the Court interpret the bond to include language that the parties did not. The parties could have inserted the words "from the Federal Circuit" in the bond if they intended to limit liability to appeal and remand from that court. While we cannot extend the bond by implication, neither should we narrow it with words that the parties did not include. *See Crane*, 203 U.S. at 447.

Plaintiff relies on the negotiating history of the bond language to argue that the scope of the bond is not limited to appeals to the Federal Circuit because the liability paragraph and the payment trigger paragraph are not tied to each other as the Sureties suggest. Resp. Mot. Release at 3-5. While the negotiating history is interesting, the court must only consider the four corners of the contract itself and not resort to parole evidence absent a finding that the contract is ambiguous. *Montalvo v. Bekins Moving Solutions, Inc.*, 613 F. Supp. 2d 892, 897 (S.D. Tex. May 8, 2009) ("Courts interpreting unambiguous contracts are confined to the four corners of the

document, and cannot look to extrinsic evidence to create an ambiguity.") (citations omitted). While the contract could have been more artfully drafted, its terms are not ambiguous.

Thus, the issue for this Court to decide is whether the Sureties remain liable on the supersedeas bond while the matter is on appeal to or remand from either the Federal Circuit or the Supreme Court. This determination turns on the meaning of the words "appeal or remand."

Whether the term "appeal" encompasses petition for writ of certiorari to the Supreme Court is therefore a necessary determination for this analysis. The statute defining the time for filing such petitions mentions both "appeal" and "writ of certiorari." 28 U.S.C. § 2101(c) ("Any other appeal or any writ of certiorari . . ."). In addition, in common usage the word "appeal" is often meant to include appeal to the Supreme Court through a petition for writ of certiorari. *See* Appeal, *Black's Law Dictionary* (10th ed. 2014) ("A proceeding undertaken to have a decision reconsidered by a higher authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal <the case is on appeal> . . . See CERTIORARI."). Further, "certiorari" is defined as a writ "issued by an *appellate* court . . . ." Certiorari, *Black's Law Dictionary* (10th ed. 2014) (emphasis added) (also, included in the definition is the following quote: "The writ of *certiorari* (from the Latin *certiorarie* 'in form') is used today in the United States as a general vehicle of discretionary appeal." Daniel R. Coquillette, *The Anglo-American Legal Heritage* 248 (1999)). Thus, the word "appeal" includes appeals to the Supreme Court on writ of certiorari.

It is beyond dispute that the Supreme Court has the ability to remand matters to the district court:

> The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and *may remand the cause* and direct the entry of such judgment, decree, or

order, or require such further proceedings to be had as may be just
under the circumstances.

*See* 28 U.S.C. § 2106 (emphasis added); *Lawrence ex rel. Lawrence v. Chater*, 516 U.S. 163, 166 (1996) (holding "this Court has the power to remand to a lower federal court any case raising a federal issue that is properly before us in our appellate capacity."); *see, e.g., Cone v. Bell*, 556 U.S. 449, 476 (2009) (vacating judgment of court of appeals and remanding to district court); *Mercer v. Theriot*, 377 U.S. 152, 156 (1964) (reversing and remanding to the district court).

Thus, the Parties' use of the term "appeal" in conjunction with "or remand" indicates an intention to encompass appeal to and remand from the Supreme Court. The language of the bond therefore encompasses liability up to and including proceedings resulting from potential Supreme Court remand. The Sureties have failed to establish that their liability under the bond is limited to appeal to or remand from the Federal Circuit. No such limitation is contained in the bond. Rather, a plain reading of the actual language of the bond, using the common meaning of its terms, supports the Plaintiff's position that "appeal or remand" refers to all appeal or remand that may result from the decision of the trial court, up to and including appeal to or remand from the United States Supreme Court. Therefore, this Court denies the Sureties' Motion for Release/Discharge of the Bond Obligation.[7]

---

[7] Defendant repeatedly suggests that it may not be able to satisfy any judgment because of its precarious financial condition as a result of the current market. Mot. Stay at 17; Resp. Mot. Enforce at 9; Reply Mot. Stay at 4. This argument suggests that Plaintiff could suffer irreparable injury if the Supreme Court were to reinstate the District Court's award, further justifying this Court's determination not to release the supersedeas bond. *See Revlon, Inc.*, 647 F. Supp. at 906 ("Second, plaintiff has presented no evidence of defendant's potential inability to satisfy a judgment in the event the Supreme Court reinstates the award. We thus have no reason to suspect that irreparable injury may occur from a release of the supersedeas bond here.")

## IV.    MOTION FOR A STAY

Defendant asks the Court to stay entry of final judgment pending resolution of ongoing collateral *inter partes* review proceedings before the PTAB, arguing that the IPR proceedings may ultimately invalidate three of the five patent claims on which Plaintiff was awarded damages for infringement. Additionally, Defendant argues that the current precarious financial position of both the oil and gas market and Defendant itself ensure that a stay would be in the interest of justice. Plaintiff argues that a stay will only further delay payment on damages, potentially by years, and that Defendant is simply engaging in dilatory tactics to delay payment of damages for which it has been found responsible.

### A.    Legal Standard for Motion to Stay

The Supreme Court has recognized that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kansas City Southern R. Co. v. United States*, 282 U.S. 760, 763 (1931); *Enelow v. New York Life Ins. Co.*, 293 U.S. 379, 382 (1935). "How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.*

A court may stay litigation pending a Patent and Trademark Office ("PTO") proceeding, but "there is no per se rule that patent cases should be stayed pending PTO proceedings, because such a rule 'would invite parties to unilaterally derail litigation.'" *Unifi Sci. Batteries, LLC v. Sony Mobile Commc'ns AB*, 2014 WL 4494479, at *1 (E.D. Tex. Jan. 14, 2014). Rather, "[t]he party seeking a stay bears the burden of showing that such a course is appropriate." *Id.*

While "[t]he decision to stay litigation is one committed to the sound discretion of the trial court," *In re Ho Keung Tse*, 552 F. App'x 979, 980 (Fed. Cir. 2014), the power of the District Court to stay execution or enforcement pending a petition for certiorari is statutorily limited.[8] 28 U.S.C. § 2101(f); *see also Metavante Corp. v.* Emigrant *Sav. Bank*, 2010 WL 3835121, at \*2 (E.D. Wis. Spt. 28, 2010) ("Courts interpreting the language of 28 U.S.C. § 2101(f) have universally concurred that the language is exclusive, prohibiting the district court from staying the enforcement of a court of appeals' judgment pending an appeal to the Supreme Court.").

Moreover, the Defendant has already sought a stay from the Federal Circuit pending completion of the PTAB proceedings, which the appellate court denied. Resp. Mot. Stay, Ex. 16 (Order Denying Motion to Stay). The Federal Circuit's denial of a stay weighs heavily against Defendants' request. *Versata Software, Inc. v. SAP America, Inc.*, 2014 WL 1600327 at \*1 (E.D. Tex. Apr. 21, 2014).

### B.   Balance of Factors Weighs Against Granting a Stay

In considering whether to grant a stay pending IPR review proceedings, courts typically consider three factors: "(1) prejudice or tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question; and (3) whether discovery is complete and a trial date has been set." *Tesco Corp. v. Weatherford Int'l, Inc.*, 599 F. Supp. 2d 848, 850 (S.D. Tex. 2009) (citing *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005); *Premier Intern. Associates LLC v. Hewlett-Packard Co.*, 554 F. Supp. 2d 717, 724

---

[8] 28 U.S.C. § 2101(f) provides:

> In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court . . . .

(E.D. Tex. 2008). "Based on those factors, courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation." *NFC Technology LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) (granting a stay pending *inter partes* review) (internal citations omitted).

### 1.    Prejudice to the Non-moving Party

### a.  Prejudice to Plaintiff

ION argues that the only real prejudice Plaintiff will suffer if a stay is granted is "delay in the vindication of its patent rights." Mot. Stay at 16. Regarding that potential prejudice, ION points to *NFC Technology LLC v. HTM Am., Inc.*, where the District Court noted that "that factor is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion." 2015 WL 1069111 at *2. That court also noted, however, that "that interest is entitled to weight." *Id.* In any event, delay is not the only prejudice that Plaintiff alleges will occur from a stay in this case. Plaintiff also argues that "[g]iven ION's alleged deteriorating financial condition, further delay may prejudice WesternGeco's ability to ultimately recover the damages it was awarded in 2012." Resp. Mot. Stay at 7. Given the lengthy descriptions of impending financial crisis and predictions of potential financial collapse in Defendant's Motion and related filings, it is not unreasonable for Plaintiff to argue that delay may prejudice its ability to ultimately recover. Additionally, Plaintiff argues that "[a] stay would also put WesternGeco at a tactical disadvantage, affording ION a fifth bite at the apple to invalidate some, but not all, of WesternGeco's infringed patents."[9] *Id.* (original emphasis omitted).

---

[9] The four previous "bites" are described by Plaintiff as follows: "ION lost on summary judgment. ION lost at trial. ION lost on its post-trial motions. And ION could have—but chose not to—appeal validity as well. Courts routinely deny do-overs, let alone do-do-do-do-overs." Resp. Mot. Stay at 7-8 (citations omitted).

The Court in *NFC Technology LLC* concluded "that the prejudice factor cuts slightly against a stay, but no more than would typically be the case when a plaintiff is faced with the prospect of a delay in obtaining monetary relief on its claims." 2015 WL 1069111 at *3. At a bare minimum, WesternGeco alleges the same prejudice from delay as the Plaintiffs in *NFC Technology LLC*, namely delay in payment of damages and tactical disadvantage. Therefore, the Court finds that the prejudice factor here disfavors a stay.

### b. Prejudice to Defendant

Defendant argues that, in conducting its analysis of the first factor, the Court should weigh the prejudice each party will suffer in considering whether to grant the stay. Mot. Stay at 15. Further, ION argues, "the balance of prejudice weighs heavily in favor of a stay; WesternGeco will suffer no real prejudice, while ION may one day pay the ultimate price, insolvency." *Id.* Defendant's filings in connection with this motion are replete with predictions of financial ruin should ION be required to pay the awarded damages. *Id.* For example, in various filings, Defendant states that its "current financial status is precarious and it is in an industry in crisis," Mot. Stay at 17, that "ION is now struggling to survive," *Id.*, that "ION could be devastated," Resp. Mot. Enforce at 9, and that the "harm to ION is potentially lethal." Reply Mot. Stay at 4.

Defendant has not demonstrated that it would suffer undue prejudice. ION rests it argument on the actions of the PTAB, but the decisions of the PTAB are not final until either the time for appeal has passed or the appeal has been returned from the Federal Circuit. 35 U.S.C. § 318(b). As such, at this time Defendant is merely speculating that the final disposition of the PTAB proceedings will be to invalidate the claims. It is also possible, however, that the Federal Circuit will reverse the decisions of the PTAB. In such an event, Defendant's prejudice would

disappear. Defendant's financially precarious position also does not necessarily favor a stay here. As Plaintiff notes, WesternGeco is a member of the same market as ION, and will suffer from nonpayment just as ION alleges it would suffer from payment. Resp. Mot. Stay at 11. Plaintiff also argues that, even in Defendant's best case scenario, with the PTAB having invalidated all three of the patent claims under its review, Defendant would still be liable for infringement of two claims. *Id.* at 12. The parties disagree on the impact this would have on the final amount of damages that would be due. *Id.* at 12-13; Reply Mot. Stay at 6-7.

As Plaintiff notes, "prejudice to the moving party is not one of the factors in the inquiry." Resp. Mot. Stay at 8. In conducting its analysis of the factors favoring or disfavoring granting of a stay, a Court must "consider whether granting a stay would prejudice the nonmoving party . . . ." *Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 6225202 (N.D. Cal. Nov. 25, 2013). The Court has already determined that the nonmoving party, WesternGeco, would be prejudiced by the granting of a stay. Defendant has not demonstrated that it would suffer from more undue prejudice in denial of a stay than would Plaintiff in its granting.

## 2. Simplifying the Issues before the Court

"[T]he focus of this factor is on streamlining or obviating the trial by providing the district court with the benefit of the PTO's consideration of the validity of the patents before either the court or the jury is tasked with undertaking that same analysis." *Smartflash LLC v. Apple, Inc.*, 621 F.App'x 995, 1000 (Fed. Cir. 2015). The posture of this case, post-trial and post-appeal to the Federal Circuit, is such that there is nothing left to simplify. A stay cannot simplify the trial; it has already occurred. Further, the appellate court had already reviewed the trial court decision. All that remains is for the Court to enter its Final Judgment in accord with the Federal Circuit's mandate. Thus, this factor weighs against granting a stay.

### 3.     Status of the Case

Turning to the third factor, whether discovery is complete and whether a trial date has been set, the Court again notes that this case has proceeded well beyond the discovery and trial stage. Discovery has been completed, a trial has been held, post-trial motions have been filed and ruled upon, and appeal to the Federal Circuit has been completed. All that remains is entry of the final judgment by the Court.

In an analogous case, *Versata Software, Inc. v. SAP America, Inc.*, the District Court denied a motion seeking a stay pending Covered Business Method review proceedings by the PTO.[10] The Court found:

> There are no remaining issues in this case to simplify. The trial has been held and the appeal is completed. A stay would clearly unduly prejudice the nonmoving party and provide a clear tactical advantage for the moving party. Moreover, a stay would not reduce the burden of litigation on the parties or the Court. Finally, the fact that the Federal Circuit has already denied Defendants' request for a stay pending completion of the PTAB proceedings weighs heavily against Defendants' request.

*Versata Software, Inc. v. SAP America, Inc.*, 2014 WL 1600327 at *1 .

---

[10] "Those three factors [used to analyze motions to stay for IPR proceedings] largely overlap with the four factors that Congress has expressly set forth as governing the question whether a stay should be granted pending covered business method ('CBM') review proceedings before the PTAB. Those four factors are:

> (A) Whether a stay, or denial thereof, will simplify the issues in question and streamline the trial;
> (B) whether discovery is complete and whether a trial date has been set;
> (C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
> (D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 18(b)(1), 125 Stat. 284, 331 (2011) ('the AIA'). Congress's addition of a fourth factor requiring an inquiry into whether a stay will reduce the burden of litigation on the parties and on the court indicates that special attention should be given to minimizing the burdens of litigation. While that factor has been noted as the basis for a distinction between the standard for stay motions in CBM review proceedings and stay motions in inter partes review proceedings, courts considering stay applications in the inter partes review setting have been attentive to that concern as well." *NFC Technology LLC v. HTC Am., Inc.*, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) (internal citations omitted).

While "there may be circumstances where a stay is appropriate post-trial," the Court does not find them here. *See Smartflash LLC*, 621 F.App'x at 1000. This Court has previously held that this factor "weigh[ed] heavily against a stay" in a case where discovery had closed, but trial had not taken place, and was scheduled in less than three months. *Tesco Corp.*, 722 F. Supp. 2d at 765. Here, at an even more advanced stage of the proceedings, this factor must weigh against the granting of a stay.

### 4. Balance of Factors

Because the *second* and third factors weigh strongly against a stay, and the first factor weighs slightly against a stay, the Court concludes that Defendant's Motion for a Stay must be denied.

## V. MOTION FOR RELIEF UNDER RULE 60(b)(6)

In the alternative, Defendant asks this Court to grant it relief from the judgment under Federal Rule of Civil Procedure 60(b)(6), arguing that it *would* be unjust for the Court to enforce judgment in a case in which ongoing collateral proceedings may render certain patents invalid, and may have impacted the fairness of the trial. Mot. Stay at 20. Additionally, Defendant argues that the financial conditions of both the oil and gas market and itself merit relief as extraordinary circumstances. *Id.*

### A. Rule 60(b)(6) Legal Standard

Rule 60(b)(6) provides that a court may act to relieve a party from a final judgment for "any other reason justifying relief from the operation of the *judgment*." Fed. R. Civ. P. 60(b)(6). "It is a catch-all provision, meant to encompass circumstances not covered by Rule 60(b)'s other enumerated provisions." *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002) (citing *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 747 (5th Cir. 1995)). The Fifth Circuit has stated that

"[a]lthough we frequently have recognized that Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by the preceding clauses, . . . we have also narrowly circumscribed its availability, holding that Rule 60(b)(6) relief will be granted only if extraordinary circumstances are present." *Batts*, 66 F.3d at 747 (internal citations and quotation marks omitted); *Versata Software, Inc.*, 2014 WL 1600327 at *2 (citing *Gray v. Estelle*, 574 F.2d 209, 215 (5th Cir. 1978)). While "[t]he broad language of clause (6) gives courts ample power to vacate judgments whenever such action is appropriate to accomplish justice," *Halliburton Energy Servs., Inc. v. NL Indus.*, 618 F. Supp. 2d 614, 652 (S.D. Tex. 2009), "[t]here must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Ackermann v. United States*, 340 U.S. 193, 198 (1950).

### B.      Rule 60(b)(6) Requires Extraordinary Circumstances Not Present Here

ION offers three reasons to find extraordinary circumstances meriting relief from the judgment here: (1) the PTAB's decisions of unpatentability; (2) *ION's* present financial condition and the risks ION's collapse would pose to the market; and (3) the alleged unfairness of ION's position at trial. Mot. Stay at 20.

The PTAB's Final Written Decisions are currently no more than non-final agency determinations, subject to appeal. Although potential appeal to the Supreme Court is still pending in this case, unlike in *Versata*, where the writ of certiorari had been fully pursued and denied, the Court's finding there is nevertheless persuasive here.

> While there is no concrete definition of "extraordinary circumstances" in the context of Rule 60, the fact that the Defendants have obtained a contrary determination regarding the validity of the asserted patent in another forum does not appear to present such circumstances. Defendants have taken advantage of a full and fair opportunity to litigate the validity of the patent before this Court, before the jury, and before the Federal Circuit, even

pursuing a writ to the United States Supreme Court. To hold that later proceedings before the PTAB can render nugatory that entire process, and the time and effort of all of the judges and jurors who have evaluated the evidence and arguments would do a great disservice to the Seventh Amendment and the entire procedure put in place under Article III of the Constitution. The proceedings before the PTAB are not even final at the time, but this Court does not believe that later finality will change this calculus. Indeed, it is the finality of the judgments issued by the Federal Courts that is at stake here.

*Versata Software, Inc.*, 2014 WL 1600327 at *2.

Neither does ION's alleged financial peril present extraordinary circumstances that merit relief from judgment. Certainly, ION is not the first party in litigation to be faced with difficult financial decisions as a result of an adverse judgment. *Additionally*, the parties dispute the seriousness of ION's financial precariousness. Sur-reply Mot. Stay at 4 ("ION also fails to inform the Court that its 'current market cap' already incorporates a 'loss contingency accrual' covering the entire judgment.") (citing Ex. 2, ION 2015 10-K, at 45-46).

ION argues that, in light of the decisions of the PTAB, it was unfairly prejudiced in proceeding to trial as an adjudged infringer due to the District Court's summary judgment on claim 18 of the '520 patent. Mot. Stay at 21. For the same reasons that the PTAB's Final Written Decisions themselves do not justify Rule 60(b)(6) relief, the Court's *summary* judgment decision does not entitle ION to relief from the judgment, even if potentially contrary to the determination of non-final agency review in a collateral proceeding.

Therefore, the Court recommends that ION's request for relief *from* judgment under Rule 60(b)(6) should be denied.

## VI.    CONCLUSION

For the reasons discussed above, the Court recommends that:

    (1) The District Court should issue Final Judgment in accordance with the Federal Circuit's mandate in a separate document.

    (2) The District Court should deny Defendant's Request for Relief under Rule 60(b)(6).

Further, it is hereby **ORDERED** that:

    (1) Plaintiff's Motion to Enforce Royalty Damages is **GRANTED**.

    (2) The Sureties' Motion to Release/Discharge Supersedeas Bond Relative to Liability for Lost Profits Damages Reversed on Appeal is **DENIED**.

    (3) Defendant's Motion for a Stay is **DENIED**.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

DATE: May 4, 2016

                                **DENA HANOVICE PALERMO**
                                **UNITED STATES MAGISTRATE JUDGE**