**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **WESTERNGECO L.L.C.,** | § | |
| | § | **Civil Action No. 4:09-cv-01827** |
| **Plaintiff,** | § | |
| | § | **Judge Keith P. Ellison** |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **ION GEOPHYSICAL CORPORATION,** | § | |
| | § | |
| | § | **ORAL ARGUMENT REQUESTED** |
| **Defendant.** | § | |

**ION'S RESPONSE TO WESTERNGECO'S MOTION TO CONFIRM JURY VERDICT
OF WILLFULNESS AND FOR ENHANCED DAMAGES**

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF PROCEEDINGS .................................................. 1

II.    ISSUES TO BE RULED UPON BY THE COURT........................................... 1

III.   SUMMARY OF ARGUMENT ........................................................................ 2

IV.    ARGUMENT .................................................................................................... 8

    A.    WG's Alleged Grounds for Enhancement Are Based on Facts That Are No
        Longer Relevant ......................................................................................... 8

        1.    ION Cannot Willfully Infringe Patent Claims That Never Existed................. 8

        2.    ION's Actions Prior to the Issue Date of the '607 Bittleston Patent Actually
             Cut *Against* Willfulness ..................................................................... 10

    B.    ION's Objective Reasonableness, on the Other Hand, Is Still Relevant ............. 11

    C.    The *Read* Factors Confirm Enhancement Is Not Appropriate ............................ 13

        1.    WG Conceded Long Ago ION Did Not Copy................................................. 13

        2.    ION Investigated WG's Patents and Believed It Did Not Infringe ............... 14

        3.    ION's Conduct During and After Litigation Was Reasonable, and WG's Was
             Unreasonable............................................................................................. 15

        4.    ION's Financial Condition Counsels against Enhancement .......................... 16

        5.    Both This Court's and the Federal Circuit's Rulings Show the Case Was Close
             ................................................................................................................... 17

        6.    The Duration of ION's Conduct Was Reasonable......................................... 18

        7.    ION's Remedial Measures Were Reasonable ................................................. 19

        8.    ION Had No Motivation to Harm WG .......................................................... 20

        9.    Efforts to Conceal Misconduct ..................................................................... 21

    D.    WG's Requested Enhancement—Nearly ION's *Total DigiFIN Revenue*—Is
        Vastly Disproportionate to the Facts of the Case................................................. 22

V.     CONCLUSION................................................................................................ 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984)............................................................................................9

*Cuozzo Speed Techs., LLC v. Lee*,
  136 S. Ct. 2131 (2016)......................................................................................8, 9

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-CV-72, 2010 WL 5140718 (E.D. Tex. Sept. 27, 2010)...........................19

*Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*,
  984 F.2d 410 (Fed. Cir. 1993)...............................................................................15

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
  935 F.2d 1263 (Fed. Cir. 1991).............................................................................11

*Flexiteek Ams. Inc. v. PlasTEAK, Inc.*,
  No. 08-60996-CIV, 2012 WL 5364263 (S.D. Fla. Sept. 10, 2012)...........................9

*Floe Int'l, Inc. v. Newmans' Mfg. Inc.*,
  No. 04-5120, 2006 WL 2472112 (D. Minn. Aug. 23, 2006)...................................22

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  721 F.3d 1330 (Fed. Cir. 2013).....................................................................5, 8, 18

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
  897 F.2d 508 (Fed. Cir. 1990)...............................................................................19

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
  136 S. Ct. 1923 (2016)................................................................................. *passim*

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  136 S. Ct. 1979 (Jun. 16, 2016) ............................................................................13

*Kowalski v. Mommy Gina Tuna Res.*,
  No. 05-00679-BMK, 2009 WL 855976 (D. Hawaii Mar. 30, 2009).....................20

*Merck & Cie v. Gnosis S.P.A.*,
  808 F.3d 829 (Fed. Cir. 2015)................................................................................8

*Metso Minerals, Inc. v. Powerscreen Int'l Dist. Ltd.*,
  833 F. Supp. 2d 333 (E.D.N.Y. Dec. 8, 2011).......................................................21

*Odetics, Inc. v. Storage Technology Corp.*,
  185 F.3d 1259 (Fed. Cir. 1999)................................................................14

*Powell v. Home Depot U.S.A., Inc.*,
  715 F. Supp. 2d 1285 (S.D. Fla. May 28, 2010), aff'd, 663 F.3d 1221 (Fed.
  Cir. 2011) ...........................................................................................21, 22

*Read Corp. v. Portec, Inc.*,
  970 F. 2d 816 (Fed. Cir. 1992).................................................13, 16, 17

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
  135 S. Ct. 831 (2015).............................................................................1

*Total Medical Management, Inc. v. US*,
  104 F. 3d 1314 (Fed. Cir. 1997).............................................................8

*U.S. Postal Serv. v. Gregory*,
  534 U.S. 1 (2001)..................................................................................8

*Versata Software, Inc. v. SAP America, Inc.*,
  No. 2:07CV153 RSP, 2014 WL 1600327 (E.D. Tex. Apr. 21, 2014) ..................5, 9

*WesternGeco L.L.C. v. ION Geophysical Corporation*,
  837 F.3d 1358 (Fed. Cir. Sep. 21, 2016)........................................1, 13

ION Geophysical Corporation ("ION") responds to and opposes Plaintiff WesternGeco L.L.C. ("WesternGeco" or "WG")'s Motion to Confirm Jury Verdict of Willfulness and for Enhanced Damages.

## I.      NATURE AND STAGE OF PROCEEDINGS

This case was remanded from the Federal Circuit on October 14, 2016, following a written opinion on September 21, 2016.  The opinion instructed this Court to, as a "predicate," first decide ION's challenge to the jury's finding of subjective willfulness (Dkt. No. 559), and then, only if necessary, consider whether enhanced damages should be awarded.  *WesternGeco L.L.C. v. ION Geophysical Corporation*, 837 F.3d 1358, 1364 (Fed. Cir. Sep. 21, 2016) ("Remand Opinion").

## II.     ISSUES TO BE RULED UPON BY THE COURT

1. As a threshold issue, whether substantial evidence supports the jury's verdict of subjective willfulness (Dkt. No. 559).  The appellate standard of review is also substantial evidence.  *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923, 1930 (2016).

2. If and only if there is substantial evidence on the issue of subjective willfulness, whether it is appropriate to consider enhanced damages at all where the underlying patent claims have been held unpatentable by the Patent Trial and Appeal Board ("PTAB"), particularly where the claims have already been held unpatentable on factual grounds, which are currently before the Federal Circuit on an abuse of discretion standard.  This is a legal issue and thus is subject to *de novo* review.  *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 839 (2015).

3. If and only if there is substantial evidence on the issue of subjective willfulness, whether ION's conduct in this case was so far beyond the pale to support enhanced

1

damages, and if so, the amount of such an enhancement.  This issue is reviewed for

abuse of discretion.  *Halo*, 136 S. Ct. at 1930.

## III.    SUMMARY OF ARGUMENT

This is WG's latest and perhaps most stunning act in its saga of greed.  After finessing its

alleged "pioneering" claims in the Bittleston patents through the Patent Office—claims which

the PTAB has now ruled never should have been granted—WG set out to shake down the

industry.  Its gross overreach has been front and center throughout the case.  First, this Court

excluded—and the Federal Circuit affirmed—WG's expert's initial report in which he opined

that over ***400% of ION's revenue*** from the DigiFIN would be a "reasonable royalty."  Then,

after receiving a windfall jury verdict under a "do-over" damages theory that included nearly

$100 million in lost profits for extraterritorial conduct, WG pushed the envelope even harder and

sought over $60 million in supplemental lost profits damages, which this Court ultimately

rejected as legally impermissible under the known facts.  After the Federal Circuit in turn

reversed the jury's lost profits award, WG petitioned the Supreme Court to restore lost profits—

and was denied.  Yet, incredibly, WG has recently signaled its intent to petition for certiorari yet

again on the same issue from the same part of the panel opinion.  Ex. A (motion for extension to

file cert petition).

In the meantime, the PTAB has held unpatentable all the broad claims of the Bittleston

patents that allowed WG to tell its "pioneering" trial story.  Leveraging in particular the breadth

of claim 18 of the '520 patent (now held by the PTAB to be unpatentable), WG argued its

patents gave it a world-wide monopoly over the lateral steering market: that is, that the lateral

steering market was "proprietary" to WG.  The only surviving Bittleston claim is to a specific

method of steering streamers while turning a ship (which survived because the prior art was held

to show a different method of turning a ship towing streamers), and the surviving claim of the

2

Zajac patent was, by WG's expert's own admission at trial, worth $300,000 at most, and that to codefendant Fugro. The PTAB's Final Written Decisions are on appeal now and should be affirmed before the summer. WG has filed its opening brief. The briefing and appendix will be filed by the end of February 2017, and argument will likely be the first week in April 2017. After the PTAB's ruling are affirmed, the unpatentable claims will be cancelled and will be void *ab initio*: game over for WG's alleged "proprietary market."

Moreover, WG never should have been able to make arguments for damages for a "proprietary market." The marine survey business is almost entirely outside of U.S. waters, and WG's foreign competitors and other equipment suppliers have developed their own methods of lateral steering. *See generally* Dkt. No. 665 at 18. WG cannot claim dominion and control for use outside of the United States, nor should it now be permitted to argue it had a world-wide proprietary market, because the Federal Circuit has confirmed that WG has no rights to enforce its U.S. patents outside of this country. Given that the market for surveys is almost entirely outside of the U.S., WG's supposed lucrative monopoly just does not exist as a matter of law *regardless* of the invalidity of its U.S. patents.

Seeing the handwriting on the wall, WG scrambled to collect as much money as it could before its having to reckon with the possible fall out from the PTAB on the validity of its patents and the Federal Circuit on their territorial reach. Indeed, even though the PTAB issued Final Written Decisions that WG's patents are officially dead, WG repeatedly asked this Court to act out of turn to lock down at least some of its damages, but without entering judgment and while simultaneously seeking even more money both here and in the higher courts. First WG asked the Court to issue an order that it collect on the royalty damages while knowing full well the Federal Circuit would soon withdraw its mandate due to an issue ***WG had petitioned*** to the Supreme

3

Court.  Then, after the Federal Circuit *did* withdraw its mandate, WG again asked this Court to take up the case and enter the same order to collect royalty damages without entry of final judgment, even before the Court had jurisdiction to do so.

As of today, WG has collected tens of millions of dollars from different companies on claims the PTAB has declared unpatentable.  When this Court entered the Order affirming the Magistrate Judge that the Sureties must pay notwithstanding lack of a final judgment, ION nonetheless paid, despite its cash crunch, to put this part of the litigation to rest in light of this Court's ruling and to honor its commitment to the Sureties.  Yet now WG asks for even more.

Both WG's greed and its desperation are apparent both from the tone and the content of its motion, which pervasively overreaches to concoct bad conduct out of whole cloth.  Most tellingly, WG has reduced itself to citing statements from an Intellectual Property Owner's CLE presentation by an unrelated partner at ION's counsel's firm who does not represent ION at all, much less here, in an attempt to show that ION's counsel nefariously attempted to slow down this case.  First, WG's use of a slide presented by an unrelated lawyer (who WG disingenuously presents as "ION's counsel") at a seminar intended to promote free and open discussion among members of the bar is simply inappropriate (especially since both Schlumberger and Kirkland & Ellis are members of this same group).  Second, WG tellingly did not provide the entire presentation to show the context of the two slides it cherry-picked from the deck—there is no connection between the ION timeline on slide 28 and the defendants' strategies on slide 42.  *See generally* Ex. B (entire presentation).  Third, as slide 42 shows, it is both legally proper, and in fact routine, for a party to make strategic decisions that have the effect of speeding up or slowing down a case, and indeed WG's firm has repeatedly taken exactly the same steps for its own clients.  Finally, in context the slides discuss the issues from all angles, in an evenhanded—not

4

underhanded—way.  *See, e.g., id.* at 40 (slide titled "Patent owner: Delay PTO claim cancellation").

Most important, in this case, ION's counsel has never been nefarious or surreptitious about its desire for a stay—it expressly asked for a stay when the IPRs were instituted (a routine request), and again when there were final decisions holding claims unpatentable.  Adverse authority was cited and distinguished.  Nothing was hidden from the Court, and most likely had the roles been reversed Kirkland would have done the same thing.

WG's inappropriate distractions aside, ION's positions here have been completely reasonable.  As briefed and discussed in detail at the June 16, 2016 hearing, ION believed its case was analogous to *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330 (Fed. Cir. 2013), and factually distinguishable from *Versata Software, Inc. v. SAP America, Inc.*, No. 2:07CV153 RSP, 2014 WL 1600327 (E.D. Tex. Apr. 21, 2014), and zealously advocated for defensible arguments—nothing more and nothing less.  Even though ION eventually lost on these points, that does not make the case exceptional by any means.  The record post-verdict shows ION's counsel has been professional and made agreements when possible to move the case forward, when it might otherwise have kept it mired in delay.  *See, e.g*., Stipulation for Final Judgment (Dkt. No. 685).

In fact, the only exceptional thing here is the literally unprecedented relief WG now seeks.  While Versata, and WG in this case, achieved payment of a damages verdict by arguing that preexisting jury awards should take precedence over later PTAB rulings, now the shoe is on the other foot.  Here, the PTAB rulings came long ***before*** any finding or award of enhanced damages, and thus the preexisting PTAB rulings should be given deference.  No case has ever

awarded enhanced damages for patent claims that have ***already*** been held by the PTAB to be

unpatentable, and WG offers no defensible reason for breaking new ground here.

      Instead, WG ignores the issue altogether, and focuses on a now-imaginary world where it

had a proprietary market in lateral steering.  The Federal Circuit has confirmed that the bounds

of U.S. patent law prevent WG from claiming any such proprietary market on the high seas,

where WG's lateral steering surveys were conducted and where foreign companies had entered

the lateral steering market with their own devices.  And the Federal Circuit should soon affirm

the PTAB's determination that WG was not entitled to claims broad enough to give it a

proprietary market within the United States, either.  Once the PTAB's claim cancellations are

affirmed by the Federal Circuit within the next few months, the law will view the claims as ***never***

***having existed*** and thus WG ***never having had a proprietary market anywhere***.

      But in the meantime, WG has used these unpatentable claims as a club to intimidate,

besmirch, and collect many tens of millions of dollars from its competitors as well as ION.  This

constitutes a windfall—an undeserved gift—and for WG now to request enhanced damages as

well is adding insult to injury.  ION has already paid WG much more than anyone else likely will

have to pay going forward, and is still enjoined on the unpatentable claims.  Thus, the main

premise of WG's motion is simply faulty.

      WG makes much of ION's continued sales after the filing of the lawsuit, after summary

judgment, and after trial.  But after ION was enjoined, it moved its manufacturing business

overseas (in a way WG conceded was in compliance with the injunction) in a short period of

time and at minimal cost.  Had ION truly believed it was infringing valid patent claims prior to

the jury verdict and post-trial hearings, it could have moved its DigiFIN business years earlier.

Instead, ION stayed and fought WG's attempt to squelch its market share and sully its good

name in the industry.  ION's contemporaneous conduct speaks for itself that ION truly believed it was not liable, and belies WG's hindsight-based speculation.

While ION has explicitly filed motions for relief, WG has been trying to push this case's timeline in exactly the opposite direction through extensions on briefing schedules and correspondence with the Court about its case.  It sought and received a briefing schedule in the IPR appeals that delayed briefing by two more months, after it had already received another two-month delay when a related set of IPRs (to which ION was not a party) was administratively consolidated into ION's appeals.[1]  Meanwhile, WG has repeatedly prodded this Court to take up the case, including times when it did not even have jurisdiction to do so.  WG is even trying to fast-track the case through its spontaneous filing of the instant motion, which includes renewed argument on ION's pending JMOL motion—not only effectively submitting an uninvited additional brief for ION's pending motion (Dkt. No. 559),[2] but effectively instructing the Court to follow a procedural path deviating from what the Federal Circuit mandated without presenting any authority for it to do so.

In the absence of contrary authority, ION respectfully asks the Court to follow the Federal Circuit's instructed path, first considering as a predicate issue whether enhancement is even reached in view of ION's subjective willfulness JMOL.  In the event the Court finds that it is, ION respectfully requests a finding that ION's conduct and positions—which this Court has

---

[1] Ex. C (WG v. PGS/ION docket) at 6/27/2016 (original due date for Petitioner's brief 8/26/2016); entry for 8/22/2016 (after consolidation, Petitioner's brief due 10/21/2016); entry for 9/30/2016 (granting motion extending deadline for Petitioner's brief by 30 days and extending deadline for responsive briefs by an additional 30 days).

[2] Not only does WG's motion not once acknowledge the relevance or even the existence of ION's pending motion, WG somehow excluded that motion from the list of pleadings in which, WG told the Court, "both parties" had "thoroughly briefed" "the evidence supporting the jury's verdict."  Mot. at 13 n.2.  In fact, WG's list of pleadings includes only submissions by WG, **including WG's opposition and sur-reply to ION's pending motion** (Dkt. Nos. 573, 603).

7

already found to be objectively reasonable—do not warrant enhancement and a further windfall to WG for its unpatentable claims.  While objective reasonableness is no longer a "gating" issue as it was under *In re Seagate*, the panel opinion remanding the case made clear it is still a very important consideration in the analysis.  This is especially so when the PTAB has issued final written decisions that invalidate most of WG's case.

## IV.    ARGUMENT

### A.    WG's Alleged Grounds for Enhancement Are Based on Facts That Are No Longer Relevant

#### 1.    ION Cannot Willfully Infringe Patent Claims That Never Existed

When the PTAB cancels the claims following the Federal Circuit's affirmance,[3] the claims will be void *ab initio*.  *Fresenius*, 721 F.3d at 1346.  This is not the same legal result as when a court holds claims invalid—here, the law will treat WG's canceled claims as though they never existed.  *Id.* at 1345; *cf. Total Medical Management, Inc. v. US*, 104 F. 3d 1314, 1321 (Fed. Cir. 1997) (ordering dismissal of contract action for failure to state a claim after holding contract void *ab initio* due to illegality).

As ION has previously briefed, the PTAB's Final Written Decisions are final determinations from a government agency tasked with reigning in erroneously granted patents, and "a presumption of regularity attaches to the actions of Government agencies…."  *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) (*citing United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)); *see also Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016) (the

---

[3] As ION has previously briefed, the Federal Circuit's overall affirmance rate of the PTAB is 90%, and is even higher in cases such as these, where the PTAB's Final Written Decisions were based on factual findings of obviousness and thus subject to review for substantial evidence. *See, e.g., Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 833 (Fed. Cir. 2015) (finding the PTAB's conclusion of obviousness was supported by substantial evidence even when the record also contained evidence supporting nonobviousness).

Court typically interprets a congressional grant of rulemaking authority as "granting the agency leeway to enact rules that are reasonable in light of the text, nature, and purpose of the statute."), *citing Chevron U.S.A. Inc. v. Natural Resources Defense  Council, Inc.*, 467 U.S. 837, 842-43 (1984).  Indeed, after *Halo*, the Supreme Court confirmed both the standard for claim construction and PTAB procedures were proper (eliminating these grounds for appeal), and that PTAB decisions were entitled to "*Chevron* deference."  *Cuozzo*, 136 S.Ct. at 2142; *see also Flexiteek Ams. Inc. v. PlasTEAK, Inc.*, No. 08-60996-CIV, 2012 WL 5364263 (S.D. Fla. Sept. 10, 2012), *adopted and supplemented by* 2012 WL 5364247 (S.D. Fla. Oct. 31, 2012) (granting Rule 60 relief, terminating permanent injunction and staying execution of final judgment based on BPAI decision that claims were unpatentable).

Unlike the underlying royalty award here and the one in the *Versata* case, any enhanced damages would be a ***new*** award, coming well after the PTAB ruling.  In such an instance, deference to PTAB is even more deserving.  Consider the analogous situation where the PTAB had cancelled all of these claims, and the cancellation was on appeal to the CAFC, prior to any trial on liability.  In that situation, it is almost certain that the Court would not let the trial go forward unless there was a reversal at the CAFC.  The result should be no different here.

Further, in considering all the facts and circumstances, the Court should not ignore that WG has committed to filing a second petition for certiorari from the same adverse ruling by the Federal Circuit panel in 2015.  WG is still pressing for more damages, and as in *Fresinius*, the case remains open no matter what this Court does now.

WG has made no attempt to prove enhanced damages solely with respect to the two remaining claims, with good reason, as Zajac was admittedly trivial in terms of damages, and the

remaining Bittleston dependent claim is on a narrow issue.[4]  To the contrary, all of WG's facts

are inextricably tied to WG's trial theme (and, indeed, the theme it still continues in its most

recent briefing) that its patents, and specifically the now-cancelled claims, protected its so-called

"proprietary market" on lateral steering.[5]  This is especially true of Claim 18 of the '520 patent,

which is the broadest claim, and has now been held unpatentable.

Thus, when properly granting deference to the PTAB's rulings, no grounds remain for

providing an additional windfall to a holder of invalid patents.  Perhaps for that reason, WG

cannot identify a single case where enhanced damages have been awarded following a Final

Written Decision of unpatentability by the PTAB.  This is not the case to break such new ground.

### 2.     ION's Actions Prior to the Issue Date of the '607 Bittleston Patent Actually Cut *Against* Willfulness

WG dropped the earlier-issued '017 Bittleston patent immediately before trial, and

counsel for neither party noticed that documents pre-dating the next-earliest Bittleston patent

should have been removed from the exhibit list.  While it is admittedly too late for those exhibits

to be retroactively eliminated from the record, they of course should have no bearing on

willfulness or enhanced damages as to patents that did not exist at the time they were created.

Similarly, ION's actions prior to the issuance of the remaining Bittleston patents cannot

---

[4] WG's damages expert admitted at trial that the Zajac patent merited at most $300,000 in
royalty damages, and only against Fugro.  Ex. D (Trial Tr.) at 2439:18-2440:16.
[5] WG's very first words to the jury were unequivocal, and cemented in the jurors' minds that
WG's patents covered any and all lateral steering:

> MR. LOCASCIO: This is a big case, but it is also a simple case.
> WesternGeco, through invention, a lot of hard work and over a hundred
> million dollars in investment, developed a revolutionary system to image
> the sea floor and underneath the sea floor to find oil and gas reserves. ***For
> their work, WesternGeco received four United States patents.  They cover
> a system you will hear called lateral steering***. Lateral being side to side,
> steering streamers.

Ex. D (Trial Tr.) at 181:17-25 (emphasis added).

constitute willful infringement of those patents, regardless of prior publication.  This is yet another reason why the jury's finding of subjective willfulness cannot be supported by substantial evidence: the record upon which the jury might have relied was cluttered with facts that were legally irrelevant to willfulness.

Indeed, the vast majority of ION's DigiFIN business plan, which WG featured prominently at trial, after trial, and indeed in its current motion, is dated July 13, 2006, before the earliest Bittleston patent asserted at trial had issued.  Thus, ION's business plan is the last thing from evidence of willful infringement—instead, it is incontestable evidence that ION not only had already begun development of the DigiFIN, it was nearly complete before WG's first asserted Bittleston patent, the '607, issued on July 25, 2006.  And the earlier published application does not help WG—a published application cannot serve as notice with respect to a later-issued patent because the scope of any claims that may later issue is not yet known.  *See, e.g., Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1266 (Fed. Cir. 1991) ("an inventor has no enforceable rights under the patent laws until the patent securing those rights has issued").[6]

### B.      ION's Objective Reasonableness, on the Other Hand, Is Still Relevant

This Court repeatedly found that ION's litigation positions were objectively reasonable. *See, e.g.*, Dkt. No. 634 at 25-27 (finding ION's non-infringement and invalidity positions reasonable); Dkt. No. 661 at 10-11 (finding ION's positions on post-verdict DigiFIN sales reasonable).

Indeed, were ION's positions as unreasonable as WG now tries to paint, the Court would not have repeatedly ruled in ION's favor on its defenses over the course of the litigation.   WG

---

[6] True to form, after its underlying application published, claim 15 of the '607 patent was completely rewritten before issue.  *Compare* Ex. E (US20050188908) *with* Ex. F (PTX003).

did not even move for summary judgment on many of ION's defenses, and most of the defenses

upon which WG *did* move—including anticipation, obviousness, and enablement of claim 18 of

the '520 patent, were denied.  Dkt. No. 365 at 24-25 (denying MSJ of § 112 validity, including

enablement); *id.* at 27-28 (denying MSJ of no anticipation by Workman, the reference ION

raised at trial and the primary reference the PTAB later used to hold most of WG's claims

unpatentable, finding that "the Court does read the quoted language as potentially anticipating

the streamer separation mode of the '520 patent."); *id.* at 29 (denying MSJ of obviousness).

WG's brief seems carefully written to infer that, after *Halo*, the Court's prior

determinations carry ***no weight*** in deciding whether to enhance.  Nothing could be further from

the truth.  The Federal Circuit directly addressed this issue in its recent opinion:

> ***After Halo, the objective reasonableness of the accused
> infringer's positions can still be relevant for the district court to
> consider when exercising its discretion***.  *Halo* looked to *Octane
> Fitness* for the relevant standard.  *Halo*, quoting *Octane Fitness*,
> held that there is "'no precise rule or formula'" to determine
> whether enhanced damages should be awarded and that district
> courts should generally "'exercise[] [their discretion] in light of the
> considerations' underlying the grant of that discretion."  *Halo*, 136
> S. Ct. at 1932 (quoting *Octane Fitness*, 134 S. Ct. at 1756).
> *Octane Fitness* in turn held that, in determining whether to award
> attorney's fees under § 285, a district court should "consider[] the
> totality of the circumstances."  *Octane Fitness*, 134 S. Ct. at 1756.
> In that connection *Octane Fitness* relied on "the comparable
> context of the Copyright Act," *id.*, noting that "[i]n *Fogerty v.
> Fantasy, Inc.*, for example, [the Court] explained that in
> determining whether to award fees under a similar provision in the
> Copyright Act, district courts could consider a 'nonexclusive' list
> of 'factors,' including 'frivolousness, motivation, objective
> unreasonableness (both in the factual and legal components of the
> case) and the need in particular circumstances to advance
> considerations of compensation and deterrence,'"  *id.* at 1756 n.6
> (emphasis added and internal citation omitted).  ***Thus, objective
> reasonableness is one of the relevant factors***.

Remand Opinion at 1363 (emphasis added).  Indeed, three days after *Halo* was decided, the

Supreme Court ruled on this issue in the context of a copyright case and held objective

reasonableness was an important factor that should be given "substantial weight" when

considering fee awards.  *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988-89 (Jun.

16, 2016).

As further discussed below, not only do the Court's determinations throughout the

litigation show the reasonableness of ION's positions, they clearly show the pervasive closeness

of the case that WG's brief tries to erase from the history books.

### C.     The *Read* Factors Confirm Enhancement Is Not Appropriate

As explained above, little to none of WG's facts allegedly supporting enhancement

remain proper for a *Read* analysis, given WG's explicit choice to remove its parent '017 patent

from the case and the PTAB's determination that all but one narrow claim of the Bittleston

patents are unpatentable.  But even if the Court were to take ION's now-irrelevant conduct into

account under the *Read* factors, enhancement still would not be appropriate.

### 1.     WG Conceded Long Ago ION Did Not Copy

WG spends several pages of its overall brief and nearly half a page of its analysis of this

factor inferring that ION copied WG's technology, only to finally admit that WG dropped its

allegations of copying at trial.  WG's inferences are particularly inappropriate given that its

claims to lateral steering in general have been held unpatentable, and it is undisputed that ION's

DigiFIN does not operate the same as WG's Q-Fin.[7]  But even setting that aside, WG's conduct

---

[7] As one example, the Q-Fin has two wings, one for vertical and one for lateral control, while
DigiFIN has only one wing for lateral control and depth is controlled by the separate, unaccused
DigiBIRD.  Ex. D (Trial Tr.) at 330:14-331:9. See *also, e.g.,* Dkt No. 168, WG's Motion for
Summary Judgment of Non-Infringement of ION's '992 Patent (distinguishing its system as far
different from ION's product).

stands in stark contrast to its arguments elsewhere that arguments ION simply lost, much less

voluntarily chose to drop, should be considered evidence of bad-faith litigation conduct.

As WG admits, this factor is neutral at a minimum.  But in fact, the Federal Circuit has

affirmed findings that the absence of copying actually ***weighs against*** enhancement.  *See, e.g.,*

*Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999).  That finding is

particularly appropriate here where, after spending the entire case holding its allegations of

copying over ION's head, WG simply scuttled them mid-trial in an effort to keep inconvenient

facts from reaching the jury.

**2.**     **ION Investigated WG's Patents and Believed It Did Not Infringe**

As ION explained in its summary judgment and post-trial motions years ago (including in

ION's pending motion for JMOL on subjective willfulness, Dkt. No. 559 at 19-21), ION had a

good-faith belief that it did not infringe any valid claim of WG's patents.   WG never cried out

that those motions were filed in bad faith, nor did the Court find them to be in bad faith.  In

ruling on the JMOL and new trial motions, neither the Court nor WG condemned ION or its

counsel for bad faith filing.  The PTAB has now largely validated ION's belief by holding all but

the two narrowest and least consequential claims unpatentable.  Further, ION's pre-suit conduct

makes for a close case on willfulness even though the jury found against ION on willfulness

(which, as ION shows in its pending JMOL, is wrong).  ION specifically invited WG to attend—

and WG indeed attended—a presentation on ION's new DigiFIN system at a trade show in June

2006.  Ex. G (ION 78).  WG did not allege infringement for nearly three years afterward as ION

14

built significant market share for the DigiFIN, never pointing out a single claim or a single patent that it thought ION infringed.[8]

Then, when WG suddenly changed course and alleged infringement, ION immediately sought to meet with WG to understand the grounds.  *See* Ex. D (Trial Tr.) at 2948:12-2949:19, 2951:12-2952:16, and 3285:17-25.  But WG would not explain them, and at first would not even disclose the patents it believed were infringed.  *Id.* at 3688:16-3691:24. As discussed above, ION's decision to defend its good name in court rather than simply and inexpensively move its business overseas, as it ultimately did, speaks for itself.  *See, e.g., Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 414 (Fed. Cir. 1993) (affirming denial of enhancement where there was no copying and a good-faith conclusion of no-infringement).  Even if the JMOL on willfulness were denied, this shows the closeness of the case.  This factor does not weigh in favor of enhancement.

### 3.  ION's Conduct During and After Litigation Was Reasonable, and WG's Was Unreasonable

As this Court noted years ago:

> This was a complicated case that spanned many years and nearly a month of trial.  ION initially had to defend itself against 163 claims of infringement, which would require a defense strategy that includes many filings, defenses, and arguments.  ***The Court***

---

[8] WG's damages expert Raymond Sims testified that he had seen WG documents from 2005-2006 discussing the likely impact to WG's business in the 2008 time frame.  Ex. D (Trial Tr.) at 2480:19-2481:14.  Indeed, ION's trial exhibit 274, entitled "WG Technology Strategy and R&D Portfolio" and dated June 2005, shows that WG fully expected product development to ION and others to significantly reduce its pricing differential for marine surveys after 2007.  Ex. H (ION 274) at WG00870732.  (Ironically enough, this document recommends that WG counter these anticipated market forces by continuing to develop and differentiate WG's Q-Marine line, not by intimidating and suing the industry using bad patents.)  Putting this forecast together with ION's frank and public presentation of DigiFIN to WG in June 2006, it is even more clear that (1) ION was hiding nothing, and (2) WG was fully aware of what it considered to be competitive pressures in the market.  If WG really believed ION was infringing and that infringement would result in significant losses in its survey business, it is inexplicable that it would have waited until early 2009 to say the first word to ION about the matter.

> *noted multiple times that the issues were close questions of law and fact*.  Furthermore, ***ION's defenses and counterclaims were hotly contested as evidenced by the long Memoranda and Orders issued by this Court***.  The Court has seen this case from its inception and does not find that ION's litigation conduct rises to the high level necessary to find this case exceptional.

Dkt. No. 634 at 30 (emphasis added).

ION's post-trial conduct has been similarly professional, and indeed conciliatory where ION legitimately could have drawn out things longer.  For example, during the dispute over whether lost profits were properly included in the original supplemental damages award, ION agreed to have a bench trial to address evidentiary issues.  Ex. I (Mar. 7, 2014 Hearing Tr.) at 20:8-18.  Similarly, ION worked with WG in good faith to reach a joint stipulation to advance the case to appeal.  Dkt. No. 685.  Most recently, ION told WG it would pay the $20.8 million royalty award rather than dispute it further (even though it respectfully disagrees with payment absent a Rule 54(b) or 58 final judgment).  Ex. J (11/16/16 letter from ION to WG).  In response, WG filed its enhancement motion *that evening*.

## 4.    ION's Financial Condition Counsels against Enhancement

ION's current financial condition is a significant reason not to enhance, for all the reasons repeatedly briefed by ION over the past year.  WG's suggestion to focus on ION's financial condition at the time of trial is unsupported by case law and makes no sense.  The purpose of this factor is to evaluate whether ION will be unduly harmed by an enhancement. *Read Corp. v. Portec, Inc.*, 970 F. 2d 816, 827 (Fed. Cir. 1992) ("Exemplary damages should not unduly prejudice the defendants' non-infringing business.") (internal citation and quotation marks omitted).  By definition, harm to ION must be measured by examining ION's financial condition *today*, not several years ago.

WG trumpets ION's report of a June 30 cash balance of $52 million[9], ignoring the fact that ION just paid $20.8 million to WG, and WG's motion seeks more than the remainder.  Cash is the oxygen of any company—no one can operate without it.  WG is attempting to asphyxiate ION.  None of WG's cited cases even suggest that it is appropriate to threaten a company's solvency through an enhancement, and for good reason: the exact opposite is true.  *Id.*  This factor strongly counsels against enhancement.

### 5.      Both This Court's and the Federal Circuit's Rulings Show the Case Was Close

This Court spoke to the closeness of the case on the fourth day of trial, when suggesting that the parties should strongly consider settlement:

> Perhaps because the attorneys are so very good and so very well prepared, I don't think anybody has landed a knockout punch. Maybe that will happen.  I mean, defendants haven't put on a witness yet, but ***I don't think there's been a knockout punch, and I'm increasingly concerned there's not going to be anything like that***.  And we're asking the jury to absorb an awful lot of technical data.  Those two factors, ***no dispositive witness, no dispositive issue***, and secondly a very difficult diet of testimony for the jury means that, at the end of the case, I think there will be an extraordinary high degree of variance as to a possible outcome.

Ex. D (Trial Tr.) at 894:21-895:7 (emphasis added).  During post-trial briefing, this Court reinforced that notion: "The Court noted multiple times that the issues were close questions of law and fact.  Furthermore, ION's defenses and counterclaims were hotly contested as evidenced by the long Memoranda and Orders issued by this Court."  Dkt. No. 634 at 30.  WG's attempt to revise history is misguided.

WG's arguments are largely hindsight-driven, concocting a so-called "one-sided result" simply by focusing on the points ION ultimately lost.  WG, however, also lost issues, such as

---

[9] Further, cash balances are subject to fluctuation as the company deals with operating expenses, extraordinary expenses, and collects revenue.

whether U.S. patents reach this country's exclusive economic zone ("EEZ"), far beyond the 12-mile limit of its territorial waters, as well as its expert's first royalty theory.  WG's scorekeeping also ends at the jury verdict, ignoring subsequent significant wins by ION including (1) this Court eliminating supplemental lost profits damages; (2) the Federal Circuit eliminating lost profits damages from the jury verdict; and (3) the PTAB holding unpatentable all but one narrow claim of the asserted Bittleston patents.

Nor can closeness or lack thereof be measured by a party's strategic decisions about what points to appeal, based on considerations such as standard of review and briefing constraints. ION could not raise its non-infringement positions and invalidity positions for each claim, especially since the standard of review would have required detailed explanations.  Indeed, strategic decisions on appeal are critical here:  ION won on an issue subject to *de novo* review that knocked out nearly 90% of the jury verdict, so plainly ION made a sound strategic decision to appeal that issue rather than attempt to overcome a higher burden on the muddied factual issues of infringement and invalidity.  WG's hyperbole to the contrary is one final attempt to resurrect the same arguments this Court repeatedly rejected.

If anything, today's state of play—in which nearly 90% of WG's initial $196 million damages award has been eliminated—reflects a "not close" case in ***ION's*** favor, not WG's. Indeed, the only real "closeness" left in the case is how close WG is to officially having no remaining "pioneering" patent claims.  Its arguments here continue to deny that reality.[10]

### 6.    The Duration of ION's Conduct Was Reasonable

---

[10] It is instructive that in all the "not close" cases WG cites, the patentee received summary judgment of infringement on most if not all claims.  When the Federal Circuit affirms the PTAB's invalidity rulings and the claims are canceled, claim 18 of the '520 patent—and thus this Court's grant of summary judgment of infringement thereon—will be void *ab initio*.  *Fresenius*, 721 F.3d at 1346.

Again, WG's argument pretends the PTAB has not ruled:  the asserted claims of the only Bittleston patents ION admitted to knowing about prior to launching DigiFIN (the '607 and '967 patents) have been held unpatentable by the PTAB.  And ION denied that it knew of the '520 patent, the only partially surviving Bittleston patent, before launching DigiFIN.  Ex. 6, Dkt. No. 751-08 (Trial Tr.) at 2790:11-16.  WG did not identify the '520 patent (or any other patent) to ION until February 2009.  Ex. D (Trial Tr.) at 2996:20-2997:7. And in any event, merely knowing of WG's patents does not show willfulness, nor does ION's continued manufacture and sale of DigiFIN following WG's identification of the patents and the filing of this suit:

> Whether an act is "willful" is by definition a question of the actor's *intent*, the answer to which must be inferred from all the circumstances.  Hence a party cannot be found to have "willfully" infringed a patent of which the party had no knowledge.  Nor is there a universal rule that to avoid willfulness one must cease manufacture of a product immediately upon learning of a patent, or upon receipt of a patentee's charge of infringement, or upon the filing of suit.  Exercising due care, a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer.  That such a defense proves unsuccessful does not establish that infringement was willful.

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990) (internal citation omitted).

Even setting that discontinuity aside and giving WG the benefit of the doubt, the resultant period of approximately six years "does not [weigh] strongly for or against enhancing damages." *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72, 2010 WL 5140718, at *4 (E.D. Tex. Sept. 27, 2010) (finding six years of infringement to be neutral in the analysis).  This factor should be neutral.

### 7.   ION's Remedial Measures Were Reasonable

The Court found that ION shipping DigiFINs out of the country before trial was wrong. Yet those DigiFINs ultimately only ended up in the royalty base because they were shipped out of the country. Likewise, the Court found that ION filling pre-existing orders post-verdict was wrong. ION argued this conduct was proper and in fact it would have been in breach when the verdict was still being contested. Regardless, these DigiFINs too only ended up in the royalty base due to ION supplying them outside of this country. These acts were also in part the reason for the injunction. ION made its arguments, lost, and paid the price. Since an injunction was later entered, ION has never once been accused of failing to comply with it. ION largely stopped selling DigiFINs from the United States following the Court's summary judgment motion on claim 18 of the '520 patent (a claim the PTAB has held unpatentable), and completely stopped soon thereafter. This Court has already found that ION's positions throughout the post-summary-judgment period were not unreasonable. Dkt. No. 661 at 10-11. This factor is thus neutral. *Kowalski v. Mommy Gina Tuna Res.*, No. 05-00679-BMK, 2009 WL 855976, at *3 (D. Hawaii Mar. 30, 2009) (holding that the voluntary decision to cease operations following the court's infringement determination renders this factor neutral). [11] While the Court found ION's movement of DigiFIN's out of the country shortly before trial improper, as well of its delivery of prior orders post-verdict, royalties have now been paid on all of these DigiFINs. ION has never been accused of violating the injunction.

### 8.      ION Had No Motivation to Harm WG

ION had no motivation to specifically harm WG—a long-time, and still-current ION customer—and had in fact considered WG a potential DigiFIN customer. *See* Mot. Ex. 3, Dkt.

---

[11] WG's appeal to a case where damages were enhanced when the defendant offered "unlimited indemnity"—immediately after excoriating ION for allegedly "attempting to avoid indemnifying its licenses [sic]" (Mot. at 23)—is puzzling to say the least.

No. 751-05 (ION 125) at 1, 6; Ex. D (Trial Tr.) at 2944:2-2945:25; *cf.* Ex. D (Trial Tr.) at 2855:23-2856:24.  The entirety of WG's "evidence" regarding alleged motivation to harm would at most be normal business development activities, which the case law clearly holds is distinct from actual motivation to harm under this prong.  *See, e.g., Metso Minerals, Inc. v. Powerscreen Int'l Dist. Ltd.*, 833 F. Supp. 2d 333, 341 (E.D.N.Y. Dec. 8, 2011) (holding that the motivation "was not malicious, but was due to competitive reasons" and thus the factor weighed against enhancement); *Powell v. Home Depot U.S.A., Inc.*, 715 F. Supp. 2d 1285, 1299 (S.D. Fla. May 28, 2010), aff'd, 663 F.3d 1221 (Fed. Cir. 2011) (holding that because the infringement was principally motivated by economic self-interest, not a desire to harm the patentee, the factor weighed against enhancement).  And in any event, as extensively briefed here and in the Federal Circuit, ION does not even compete with WG.  *See, e.g.*, Dkt. 562 at 8-9; Ex. D (Trial Tr.) at 2846:14-20 (ION sells equipment; WG does not); *cf.* Ex. D (Trial Tr.) at 2853:2-21 (identifying Sercel as the competitor necessitating a quick DigiFIN launch).  Indeed, even today, ION and WG do business together. Ex. K (ION-WG press release).

Because ION's motivation was not malicious, this factor weighs against enhancement.[12]

### 9.    Efforts to Conceal Misconduct

ION never sought to conceal its actions. As discussed, ION openly displayed its DigiFIN system at a trade show in Vienna, Austria to WG and others.  *Supra* IV.C.2; *see Metso*, 833 F. Supp. 2d at 341 (holding no attempt to conceal, finding that accused devices were "prominently displayed at trade shows, press releases, manuals, and sales brochures").  Likewise, ION never sought to test its system "under the radar" but instead desired to publicize Fugro's testing.  *See*

---

[12] WG's repeated appeal to its alleged lost profits in the context of a motion for enhanced damages—whether or not intended to suggest to the Court that enhanced damages should be is particularly misplaced given that WG apparently intends to petition for certiorari for the second time on lost profits.  Ex. A (motion for extension to file cert petition).

Ex. 11, Dkt. No. 751-13 (Young Email) (Fugro's employee stating that although he "planned to test this new functionality under the radar," Concept, a division of ION, "wants to make this public").

Finally, the fact that ION publicly sold its system dispels any indication that it attempted to conceal the misconduct.  *Powell*, 715 F. Supp. 2d at 1299; *Floe Int'l, Inc. v. Newmans' Mfg. Inc.*, No. 04-5120, 2006 WL 2472112, at *6 (D. Minn. Aug. 23, 2006).  The alleged Dubai "shell game"—selling ION's system through ION S.A.R.L.—fails to even suggest an attempted concealment; these transactions, occurring post-suit, were not concealed.  This factor weighs against enhancement.

### D.   WG's Requested Enhancement—Nearly ION's *Total DigiFIN Revenue*—Is Vastly Disproportionate to the Facts of the Case

WG's damages expert Dr. Sims testified at trial that ION's total non-Fugro DigiFIN revenue was $42.3 million.  Ex. D. (Trial Tr.) at 2439:18-25.  This represented a total of 2,547 DigiFINs (*Id.* at 4851:10-11), or roughly $16,608 in revenue per DigiFIN.  Multiplying by the 4,464 total DigiFINs included in the final judgment[13] results in roughly $74.1 million total revenue.  Dr. Sims testified that ION's total profit margin for DigiFINs was 54%.  *Id.* at 2427:19-2428:2.  Thus, even taking WG's own elicited testimony at face value, ION's total profit for the DigiFINs at issue would be just over $40 million.[14]  WG has asked the Court to treble the existing damages, to $64.4 million.  Mot. at 24.

These straightforward numbers cut directly through WG's pages of hand waving and insinuations that ION would somehow still retain ***profit*** from its DigiFIN sales were damages

---

[13] The 2,547 units presented by Mr. Sims at trial and thus included in the jury verdict, plus 1,917 units the parties stipulated would be subject to supplemental damages (Dkt. No. 685 at ¶ 11).
[14] The $74.1 million in revenue multiplied by the 54% profit margin.

trebled.  Mot. at 2, 20.  In reality, as shown above from the testimony of WG's own damages expert, a trebling of damages to $64.4 million would approach ION's ***entire DigiFIN revenue***.[15] This is yet another overreach for damages by WG, fully in the spirit of its three prior rejected efforts.  The Court should reject this one as well.

## V.       CONCLUSION

ION's JMOL of no subjective willfulness should be granted.  Alternatively, WG's instant Motion to Confirm the Jury Verdict of Willfulness and for Enhanced Damages should be denied.

---

[15] This is not surprising given that WG's expert's "reasonable royalty" rate was 35.3% of the DigiFIN system revenue.  Ex. D (Trial Tr.) at 2438:8-11.  As WG notes, the jury slightly discounted WG's requested royalties, resulting in a royalty rate of 29.6% ($12.5 million in royalties for $42.3 million in revenue).  Thus, even assuming WG's self-serving calculations of ION's profitability to be true (and ignoring the immense litigation and appellate costs ION has expended over the past seven years defending against WG's bad patents), ION's DigiFIN profits would be completely eliminated by an 80% enhancement (the assumed 54% profit margin minus the 30% already awarded royalty rate, divided by the 30% royalty rate).

Respectfully submitted,

*/s/ David J. Healey*
David J. Healey
Attorney-in-Charge
**FISH & RICHARDSON, P.C.**
State Bar No. 09327980
Federal ID No. 000035021
1221 McKinney Street, 28th Floor
Houston, Texas 77010
Telephone: (713) 654-5310
Facsimile: (713) 652-0109
E-mail: healey@fr.com

**OF COUNSEL:**

Brian G. Strand
State Bar No. 24081166
Federal ID No. 1838971
strand@fr.com
Bailey Harris
bharris@fr.com
State Bar No. 24083139
Federal ID No. 1725405
**FISH & RICHARDSON, P.C.**
1221 McKinney Street, 28th Floor
Houston, TX 77010
Telephone: (713) 654-5300
Fax: (713) 652-0109

Justin Michael Barnes
California Bar No. 217517
Justin.barnes@troutmansanders.com
**TROUTMAN SANDERS LLP**
11682 El Camino Real, Suite 400
San Diego, CA 92130
Telephone: (858) 509-6000
Facsimile: (858) 509-6040

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that a true and correct copy of the foregoing instrument was forwarded to all counsel of record via the Court ECF/CFM system on this 21st day of December 2016.

<u>*/s/ David J. Healey*</u>
David J. Healey