**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| WESTERNGECO L.L.C., | ) |
| | ) |
| *Plaintiff*, | ) Civil Action No. 4:09-CV-01827 |
| | ) |
| v. | ) Judge Keith P. Ellison |
| | ) |
| ION GEOPHYSICAL CORPORATION, | ) Jury Trial Demanded |
| | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

**WESTERNGECO'S REPLY IN SUPPORT OF ITS MOTION
FOR WILLFULNESS AND ENHANCED DAMAGES**

*Of Counsel:*

Gregg F. LoCascio, P.C.
gregg.locascio@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Tel.: (202) 879-5000
Fax: (202) 879-5200

Timothy K. Gilman
timothy.gilman@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel.: (212) 446-4800
Fax: (212) 446-4900

Dated:  January 11, 2017

Lee L. Kaplan
lkaplan@skv.com
TBA No. 11094400
SD Texas ID No. 1840
SMYSER KAPLAN
 & VESELKA, L.L.P.
Bank of America Center
700 Louisiana, Suite 2300
Houston, TX  77002
Tel.: (713) 221-2323
Fax: (713) 221-2320

*Attorneys for Plaintiff
WesternGeco L.L.C.*

Pursuant to the Scheduling Order (D.I. 753), WesternGeco ("WG") submits this Reply in further support of its Motion for Willfulness and Enhanced Damages (D.I. 751 ("WG Br.")).

## SUMMARY OF ARGUMENT

ION's opposition (D.I. 754) rails against WG's "greed" in seeking enhanced damages while largely failing to address whether ION's infringement was subjectively willful—the core question for enhancement on remand. The key facts are undisputed: (1) ION knew of WG's patents before launching DigiFIN; (2) ION's customers warned ION that they "were not at ease with the [Western]Geco patent issues"; (3) ION then fought customers over indemnity and who should pay for infringement; (4) ION mislabeled and sold Louisiana-manufactured DigiFINs as coming from "Dubai"; (5) ION ignored WG's Complaint, the Court's summary judgment, and the jury's verdict, and chose to keep infringing; and (6) ION's witnesses perjured themselves and were impeached repeatedly for trying to conceal the nature and extent of ION's infringement. Whether or not a 2006 Business Plan is considered—ION's main argument in opposition—this substantial evidence confirms the jury's verdict of willful infringement, and empowers the Court to enhance damages by up to $43.8 million.

ION's discussion of collateral PTAB proceedings is inapposite. No matter the outcome of those proceedings, ION will remain an adjudicated infringer of at least two valid WesternGeco patents. Moreover, none of the infringed claims have been cancelled; the Federal Circuit may very well reach the same conclusion this Court and the jury did in rejecting ION's defenses on summary judgment, at trial and on JMOL (before ION abandoned them on appeal). Speculation about what might happen months from now should not derail the proximate conclusion of this litigation.

While alleging financial hardship to the Court, ION has told the public that paying only $20.8 million in damages has been a "win", ratifying ION's knowing decision to violate WG's

intellectual property as a business strategy. In 2012, ION told investors that the jury's $105.9 million verdict would "***have minimal impact*** on our revenues." (Ex. 26)  In 2015, when the Federal Circuit affirmed liability and royalty damages (ultimately $20.8 million), ION called it "***a total victory*** for our Company." (Ex. 57)  Now, ION touts that losing liability, being enjoined, and paying only $20.8 million is a result "***in ION's favor***." (Opp. 18) Even after paying those royalty damages, ION admits that it will retain at least $20 million (actually $50 million—see calculations below) in infringing profits. (*Id.* at 22) ION made a calculated business decision to infringe—betting that the profits would outweigh any eventual judicial liability—and then boasted when it achieved that result. If ever there were a case where royalty damages alone were insufficient to deter or punish willful infringement, this is it.

## I.      ION's Misrepresentations

ION's opposition is rife with misrepresentations and unsupported *ad hominen* attacks. A few relevant examples are illustrated below, and more are discussed herein:

| ION's Statement | Analysis |
|---|---|
| "WG's patents are officially dead." (Opp. 3)  "[T]he underlying patent claims have been held unpatentable" (Opp. 1) | False. The validity of infringed claims from two of WG's four patents was affirmed by the PTAB, no claim has been cancelled, and the remaining claims await review (largely *de novo*) by the Federal Circuit. (Exs. 58-61) |
| Federal Circuit argument "will likely be the first week in April." (Opp. 3) | False. The April argument calendar will be set before the appeal is fully submitted on February 28. The average for recent PTAB appeals has been argument 3-5 months after submissions, *i.e.*, argument is likely to be no earlier than the summer, with a decision thereafter and the mandate possibly not issuing until 2018. |
| "WG never should have been able to make arguments for damages for a 'proprietary market.'" (Opp. 3) | False. "Every patent shall . . . grant to the patentee . . . the right to exclude others from making, using, offering for sale, or selling the invention." 35 U.S.C. § 154(a)(1). Notably, ION is permanently enjoined from re-entering this "proprietary market." (D.I. 634 at 46) |

| ION's Statement | Analysis |
|---|---|
| "ION petitioned the Supreme Court to restore lost profits—and was denied." (Opp. 2) | False. The Supreme Court granted WG's petition, vacated the judgment, and "remanded to the United States Court of Appeals for the Federal Circuit for further consideration [of willfulness] in light of *Halo* …." *WG LLC. v. ION Geophysical Corp.*, 136 S. Ct. 2486 (2016). The Supreme Court did not reach the lost profits question, which is why WG may re-raise the issue. |
| WG "instruct[s] the Court to follow a procedural path deviating from what the Federal Circuit mandated." (Opp. 7) | False. The Federal Circuit "remand[ed] . . . [on] two questions. The first of these is subjective willfulness. … The second issue . . . if the jury's finding of willful infringement is sustained, is whether enhanced damages should be awarded." *WG L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1363-64 (Fed. Cir. 2016). These are the exact two issues on which WG moved, and in the same order. (WG Br. 10) |
| "ION's DigiFIN business plan" for eroding WG's market share "is dated July 13, 2006," *i.e.*, prior to the '607 patent (Opp. 11) | False. ION witnesses confirmed the business plan is dated August 3, 2006, *i.e.*, after the '607 patent issued. (Ex. 62 at 2011:3-5, 2227:11-19, 2843:3-2844:2)  In any event, the infringed '607, '967 and '038 patents all issued—and were known to ION—prior to ION's decision to launch DigiFIN in 2007. (Ex. 6 at 2790:11-16) ION also knew of the infringed '520 patent by February 2009. (Ex. 62 at 2996:20-2998:2) ION kept selling DigiFIN until at least 2013. |
| "ION investigated WG's patents and believed it did not infringe." (Opp. 14) | False. No evidence of any such "investigation" exists, and the Court instructed the jury to "discount all the way to nothing" ION's insinuations at trial of any legal investigation. (WG Br. 13-14) |

## II.    The Supreme Court Abrogated the "Objective" Test on which ION Still Relies

In 2013, the Court applied the "*objective* prong" of the Federal Circuit's then-applicable *Seagate* test to deny enhanced damages—notwithstanding the verdict that ION's infringement was *subjectively* willful—because the Court found ION's trial defenses "not unreasonable." (D.I. 634 at 29-30) ION's opposition in 2017 largely rehashes the same "objective reasonableness" of its litigation arguments. (Opp. 11-13, 15-16, 17-18) ***But the Supreme Court abrogated that test in 2016***. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) (disparaging *Seagate* for allowing attorney arguments to trump an infringer's actual intent).

ION's *subjective* intent at the time of infringement alone—not *post hoc* argument invented for trial (or thereafter, i.e., the PTAB proceedings)—defines whether ION's infringement was willful and should be enhanced. While the closeness of litigation defenses *may*

form part of the totality of the circumstances in deciding *how much* to enhance, the Supreme Court made clear that "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, ***without regard to whether his infringement was objectively reckless***." *Halo*, 136 S. Ct. at 1933; *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("[A]n objectively reasonable litigation-inspired defense to infringement is no longer a defense to willful infringement.").

### III.    ION Knew of WG's Patents and Chose to Risk Infringement

ION admitted it knew of three WG patents prior to launching DigiFIN in 2007, and that it knew of the fourth by February 2009. (Ex. 6 at 2790:11-16; Ex. 62 at 2996:20-2998:2) By April 2009, ION's customers were concerned that they "can be potentially infringing the[] patents on every single survey we do," warning ION in April 2009 that they are "still not at ease with [the Western]Geco patent issues." (Exs. 10, 12) Customers fought with ION over indemnity and who should pay for infringement—ION does not dispute that it sought to minimize its exposure through its "Product Assurance Pledge" or that it refused to honor indemnity requests. (WG Br. 6-7) WG filed its Complaint in June 2009, the Court entered summary judgment of infringement of the '520 patent, and the jury found infringement of all four patents in 2012, yet ION chose to continue infringing into 2013. ***None of these facts are disputed***. They comprise substantial evidence supporting the verdict of willful infringement and justify enhanced damages.

Additionally, in finding that ION infringed every asserted claim under 35 U.S.C. § 271(f)(2), the jury found for each claim that "***ION knew that the intended combination is patented and that the combination would be infringing***." (D.I. 530 at 15) The Federal Circuit affirmed this infringement. *WG L.L.C. v. ION Geophysical Corp.*, 791 F.3d 1340, 1348-49 (Fed. Cir. 2015). ***This fact of ION's knowledge as to each claim is binding on remand as law-of-the-case, and further supports the jury's verdict.*** ION's opposition fails to address this fact.

4

ION's argues that one exhibit—a 2006 DigiFIN Business Plan—should have been excluded because it predated the '607 patent (which issued on July 25, 2006). (Opp. 10-11) Putting aside that ION itself introduced copies of this Plan into evidence, ION's witnesses testified that the Plan was from August 3, 2016, *i.e.*, **after** the '607 patent issued. (Ex. 62 at 2843:3-25) In any event, ION admitted that it was aware of the '607 patent—as well as the infringed '967 and '038 patents—prior to the actual launch of DigiFIN in 2007. (Ex. 6 at 2790:11-16) And ION was also aware of the '520 patent by February 2009. (Ex. 62 at 2996:20-2998:2) Despite this knowledge, ION chose to continue infringing through 2013, even touting in subsequent Business Plans that it was eroding WG's revenue "[d]ue to the market penetration of DigiFIN." (Ex. 8 at ION783248)[1]  This evidence, discussed herein and previously, is substantial evidence confirming the jury's verdict, whether or not the 2006 Plan is considered.

ION also argues that "merely knowing of WG's patents does not show willfulness, nor does ION's continued manufacture and sale of DigiFIN following WG's identification of the patents and the filing of this suit." (Opp. 19) But the Federal Circuit has affirmed subjective willfulness and enhancement based on just such conduct. *See WBIP*, 829 F.3d at 1341-42 (affirming enhancement where "Kohler had knowledge of the patents in suit at the time of infringement"); *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1091–92 (Fed. Cir. 2014) (affirming enhancement in light of "confirmation of Citrix's knowledge of the [] Patent"). In any event, ION had more than mere knowledge of the patents: ION's customers told ION that DigiFIN infringed, ION fought them over who should pay, the Court entered summary judgment that ION infringed, and a jury found that ION infringed, yet ION chose to continue infringing. (WG Br. 5-9) That is willful infringement, as the jury found. (D.I. 536 at 7)

---

[1] Because ION was aware of the patents **before** the suit was filed, ION's reliance on *Gustafson, Inc. v. Intersystems Industrial Products, Inc.*, 897 F.2d 508 (Fed. Cir. 1990), is misplaced.

ION also attempts to shift blame, arguing that WG "did not allege infringement for nearly three years after[]" attending a June 2006 trade show where ION displayed DigiFIN. (Opp. 14) But the display did not show the infringing features, DigiFIN was not launched until late 2007, by 2008 WG was voicing its infringement concerns, and by early 2009, WG and ION were meeting to discuss ION's infringement. (Ex. 62 at 2017:21-24; 2961:15-20, 2996:20-2998:2) When discussions broke down—with ION choosing to continue infringing—WG promptly filed this litigation in June 2009. There is no evidence that WG misled ION into believing that DigiFIN did not infringe—the Court dismissed ION's laches, equitable estoppel and waiver defenses as a matter of law for failure of proof. (D.I. 528) WG's notifying ION of the infringement before litigation actually favors enhancement. Ex. 30, *Dominion Res. Inc. v. Alstom Grid, Inc.*, No. 15-224, 2016 WL 5674713, at *20 (E.D. Pa. Oct. 3, 2016) (enhancing damages where defendants were on notice five months prior to suit and continued infringing during litigation). And "any delay by [WG] … was not the cause of [ION's] infringement. [ION] is responsible for its own actions." Ex. 33, *Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*, No. 14-62369, 2016 WL 4249951, at *8 (S.D. Fla. July 27, 2016).

ION also argues that its refusal to take remedial actions somehow proves that it was an unintentional infringer, because a rational actor would have stopped infringing once it saw a risk. (Opp. 6-7, 15) But ION offers no evidence that anyone within ION actually held a subjective belief that ION did not infringe. And ION's attorney-logic—that a rational actor would necessarily stop infringing if it became aware of the infringement—ignores the scenario (found here) where a rational actor concluded that the potential profits simply outweighed the infringement risk. Notably, courts have rejected ION's logic and reached the opposite conclusion, *i.e.*, that failure to take available remedial actions confirms willfulness and the need

for enhancement. Ex. 33, *Arctic Cat*, 2016 WL 4249951, at \*8 (enhancing damages where defendant "did not voluntarily cease making or selling the infringing products at any point or take steps to implement a non-infringing alternative"); Ex. 30, *Dominion*, 2016 WL 5674713, at \*23 (doubling damages where defendant's "unwillingness to immediately issue a patch tellingly indicates ongoing intransigence in light of the jury's verdict"). "ION's decision to defend its good name in court," rather than ceasing infringement (which it claims would have been "simpl[y]" and "inexpensive[]"), is substitute for actual evidence about the actual subjective intent of ION's decision-makers. (Opp. 15) The jury's verdict, on the other hand, is supported by substantial record evidence, as detailed above.

## IV.    ION OFFERS NO EXCUSE FOR ITS CONCEALMENT OR PERJURY

ION engaged in a concerted effort to conceal its infringement and to mislead the Court and the jury about the nature and extent of its infringement. (WG Br. 5-9 (detailing ION's infringement and litigation history)) ION does not defend David Gentle, its Director of Sales, who testified at his 30(b)(6) deposition that he did not know of indemnity discussions despite the fact that he held such discussions just one week before his deposition, or Crawford Macnab, who admitted to changing his testimony about DigiFIN's technical capabilities after meeting with ION's lawyers, leading to repeated impeachments at trial (*id.* at 8). ION likewise has no answer for its former CEO, Mr. Peebler's, unambiguously false testimony that ION stopped selling DigiFIN after the Court's summary judgment (*id.*), or why ION was stamping DigiFINs as coming from "Dubai" when they were manufactured in and sold from Louisiana (*id.* at 7-8). These efforts to mislead about the nature and scope of ION's infringement further support enhancing damages. *See* Ex. 2, *PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, No. 11-761, 2016 WL 6537977, at \*8 (N.D.N.Y. Nov. 3, 2016) (doubling damages where

defendant "concealed its infringement").[2]

## V.    Collateral PTAB Proceedings Are Irrelevant

ION suggests throughout its brief that WG's patents have been cancelled, and that as a result, ION cannot willfully infringe as a matter of law. (*See, e.g.*, Opp. 2 ("claims which the PTAB has now ruled never should have been granted"); *id.* at 4 ("the PTAB issued Final Written Decisions that WG's patents are officially dead ....")) ION is wrong.

First, the PTAB ***confirmed*** the validity of claims from two patents (the '038 and '520) that ION infringed, and those findings were not appealed. Regardless of other proceedings, ION will remain an adjudicated infringer of at least these two WG patents. Both sides' damages experts at trial confirmed that the royalty damages—objectively comparing the profitability of the infringing DigiFIN to the closest non-infringing analogue, DigiBIRD—should be the same regardless of the number of claims infringed. (Ex. 62 at 2661:13-2662:6, 4655:12-4656:3) ION's egregious conduct, discussed above and previously, permeated its infringement of each and every claim, *e.g.*, the jury found ***for each claim*** that "ION knew that the intended combination is patented and that the combination would be infringing." (D.I. 530 at 15) Even if ION's collateral attack argument had any theoretical merit, it has no application in this case—ION will remain a willful infringer with the same damages and subject to the same enhancement.

Second, no claims have been cancelled. As Judge Palermo previously noted, in a report and recommendation the Court adopted, these collateral PTAB rulings lack any effect "[d]espite the decisions' titles as Final Written Decisions." (D.I. 725 at 5). Rather, the Federal Circuit must evaluate the validity of the patents on appeal. 35 U.S.C. § 318.[3] And, as the Court found, the

---

[2] To deflect from its own conduct, ION hurls allegations of "bad-faith litigation conduct" by WG. ION's allegation are baseless and, in any event, irrelevant to ION's willful infringement.

[3] When Congress thought interim PTAB decisions should be "granted deference" prior to appeal,

PTAB proceedings should not delay resolution of this 2009 case.  (D.I. 725 at 19-23)

Third, the claim constructions underlying the PTAB decisions—which differed from this Court's—will be reviewed *de novo* by the Federal Circuit with no deference or "presumption of regularity" given. And WG has appealed whether the patent office proceedings were void *ab initio* because the PTAB lacked standing to hear ION's challenges that were submitted through its customer-proxy PGS. Specifically, ION tried invalidity before this Court and was statutorily barred from filing an *inter partes* review, and the issue is whether ION's *customer's* challenge should have been likewise barred because ION was a privy/real party-in-interest for the challenge. Last week the Federal Circuit agreed to review this "§ 315(b)" bar *en banc*, and the PTAB's rulings may be accordingly vacated in their entirety. Ex. 63, *Wi-Fi One, LLC v. Broadcom Corp.*, Fed. Cir. Nos. 15-1944, -1945, -1946 (Jan. 4, 2017). But even if the Federal Circuit's review were limited to factual issues, ION's guarantees of victory ring hollow where judge and jury rejected similar arguments, and ION acquiesced, abandoning them on appeal.

## VI.    ION Profited from Its Calculated Business Decision to Infringe

It is undisputed that, even after paying royalty damages, ***ION retains over $20 million in profits from infringing DigiFIN sales***. ION has gone so far as to tout losing liability, a permanent injunction, and $20.8 million in damages as "a total victory for our Company" and an overall result "in ION's favor." (Ex. 57; Opp. 18) Absent enhancement, ION will profit handsomely from its intentional violation of WG's rights, and the royalty damages will offer no deterrence to future willful infringement by ION or others.

Additionally, ION's profitability figure is understated by ignoring convoyed sales—those products that ION bundled with DigiFIN and only sold because of its willful infringement. As

it explicitly wrote that into the statute. *See* § 315(e)(2) (applying estoppel to litigation defenses prior to appeal). No such deference was given to unpatentability orders.

presented at trial, ION had $67.8 million in convoyed sales—"pull through sales" in ION's parlance (*e.g.*, Ex. 3)—which yielded an additional $18.6 million in profit from its infringement. (Ex. 56; Ex. 62 at 2429:15-2432:4)[4] Applying ION's ratio of total-DigiFINs to trial-DigiFINs (4,464/2,547) yields $32.6 million in total ION profits from convoyed sales. Combined with the direct profits on DigiFINs, ***ION earned over $70 million in profits from its intentional infringement***, in line with the $75.82 million in net profit ION predicted when it chose to infringe in 2007. (Ex. 3 at ION 16372)  Even if damages were trebled, ION will still profit from its willful malfeasance, albeit less than ION has profited to date.

## CONCLUSION

The jury's verdict of willful infringement, *i.e.*, "that ION knew or should have known that its actions constituted an unjustifiably high risk of infringement," is amply supported by the record. Accordingly, how much to enhance damages, up to an additional $43.8 million, is discretionary with the Court.[5] ION's brazen disregard of the Court's judgment and the jury's verdict—calling liability, injunction and $20.8 million in damages a "win" for ION—ratifies its intentional and knowing violation of WG's patent rights. This is precisely the type of behavior that § 284 enhancement was enacted to police—when royalty damages alone are insufficient to deter infringement and willful disregard of property rights as a conscious business tactic.

---

[4] By awarding WG almost all of its requested royalty, the jury necessarily found that these convoyed sales were due to ION's infringement. (Ex. 56) And ION never challenged post-trial or on appeal that that convoyed sales were properly included.

[5] The parties agree damages can be enhanced by up to $43.8 million. This differs from trebling the $20.8 million paid in royalty damages due to how the parties agreed pre- and post- judgment interest and the "Polarcus credit" are treated. (D.I. 738 at 1-2) The Court has the discretion to award any amount it sees fit, but for its convenience:  a doubling (*i.e.*, 100% enhancement) would add $21,908,118.41; and trebling (*i.e.*, 200% enhancement) would yield the requested $43,816,236.42.

Dated:  January 11, 2017

Respectfully submitted,

*Of Counsel:*

Gregg F. LoCascio, P.C.
gregg.locascio@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Tel.: (202) 879-5000
Fax: (202) 879-5200

Timothy K. Gilman
timothy.gilman@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel.: (212) 446-4800
Fax: (212) 446-4900

*/s/ Timothy K. Gilman*
Lee L. Kaplan
lkaplan@skv.com
TBA No. 11094400
SD Texas ID No. 1840
SMYSER KAPLAN
& VESELKA, L.L.P.
Bank of America Center
700 Louisiana, Suite 2300
Houston, TX  77002
Tel.: (713) 221-2323
Fax: (713) 221-2320

*Attorneys for Plaintiff*
*WesternGeco L.L.C.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure on this 11th day of January, 2017.

*/s/ Timothy K. Gilman*
Timothy K. Gilman