# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| WESTERNGECO L.L.C., | ) |
| | ) |
| *Plaintiff*, | ) Civil Action No. 4:09-CV-01827 |
| | ) |
| v. | ) Judge Keith P. Ellison |
| | ) |
| ION GEOPHYSICAL CORPORATION, | ) Jury Trial Demanded |
| | ) |
| *Defendant*. | ) |

## WESTERNGECO'S RESPONSE IN OPPOSITION TO SURETIES' MOTION TO RELEASE/DISCHARGE SUPERSEDEAS BOND

*Of Counsel:*

Gregg F. LoCascio, P.C.
gregg.locascio@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Tel.: (202) 879-5000
Fax: (202) 879-5200


Timothy K. Gilman
timothy.gilman@kirkland.com
Sarah K. Tsou
sarah.tsou@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel.: (212) 446-4800
Fax: (212) 446-4900

Dated:  February 3, 2017

Lee L. Kaplan
lkaplan@skv.com
TBA No. 11094400
SD Texas ID No. 1840
SMYSER KAPLAN
  & VESELKA, L.L.P.
Bank of America Center
700 Louisiana, Suite 2300
Houston, TX  77002
Tel.: (713) 221-2323
Fax: (713) 221-2320

*Attorneys for Plaintiff
WesternGeco L.L.C.*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

NATURE AND STAGE OF PROCEEDINGS .................................................................. 2

ARGUMENT ..................................................................................................................... 4

I.  THE COURT ALREADY DENIED THE SURETIES THE RELIEF THEY SEEK .................................................................................................................. 4

II. THE BOND IS A CONTRACT THAT EXPRESSLY PROTECTS DAMAGES "MODIFIED ON APPEAL OR REMAND" ........................................... 7

    A.  The Bond's Terms Unambiguously Cover Damages Modified "On Remand" ................................................................................................. 7

    B.  **Parol Evidence Fails To Contradict The Bond's Express Terms** ...................... 9

        1.  Fed. R. Civ. P. 62 Does Not Contradict The Plain Language Of The Bond .................................................................................................. 10

        2.  The Court's Subsequent Order Does Not Contradict The Plain Language Of The Bond ........................................................................... 12

        3.  The Drafting History—If Considered—Does Not Contradict The Plain Language Of The Bond ............................................................... 14

CONCLUSION .................................................................................................................. 15

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Addicks Servs., Inc. v. GGP-Bridgeland, LP*,
   596 F.3d 286 (5th Cir. 2010) ..................................................................................................14

*Adhikari v. Daoud & Partners*,
   95 F. Supp. 3d 1013 (S.D. Tex. 2015) ......................................................................................5

*Aetna Cas. & Sur. Co. v. LaSalle Pump & Supply Co.*,
   804 F.2d 315 (5th Cir. 1986) ....................................................................................................7

*Aviation Credit Corp. v. Conner Air Lines, Inc.*,
   307 F.2d 685 (5th Cir. 1962) ..................................................................................................12

*Beatrice Foods Co. v. New England Printing & Lithographing Co.*,
   930 F.2d 1572 (Fed. Cir. 1991) ..........................................................................................7, 10

*Calpetco 1981 v. Marshall Expl., Inc.*,
   989 F.2d 1408 (5th Cir. 1993) ..................................................................................................5

*Crane v. Buckley*,
   203 U.S. 441 (1906) .................................................................................................................9

*Gonzalez v. Denning*,
   394 F.3d 388 (5th Cir. 2004) ................................................................................................7, 8

*Hunton v. Guardian Life Ins. Co. of Am.*,
   243 F. Supp. 2d 686 (S.D. Tex. 2002), *aff'd*, 71 F. App'x 441 (5th Cir. 2003) ......................14

*Ibe v. Jones*,
   836 F.3d 516 (5th Cir. 2016) ....................................................................................................7

*Jones v. Bank of N.Y. Mellon*,
   No. CIV.A. H-13-2414, 2015 WL 1737402 (S.D. Tex. Apr. 16, 2015) ........................1, 4, 5, 7

*King Instrument Corp. v. Otari Corp.*,
   814 F.2d 1560 (Fed. Cir. 1987) ..............................................................................................13

*Montalvo v. Bekins Moving Sols., Inc.*,
   613 F. Supp. 2d 892 (S.D. Tex. May 8, 2009) .......................................................................14

*Neeley v. Bankers Trust Co. of Tex.*,
   848 F.2d 658 (5th Cir. 1988) ....................................................................................................7

*Taylor v. Tesco Corp. (US)*,
   No. CIV.A. H-11-00517, 2013 WL 4875035 (S.D. Tex. Sept. 11, 2013) .................................4

*Tolleson v. Livingston*,
   No. 2:12-CV-201, 2014 WL 1386319 (S.D. Tex. Apr. 9, 2014) ...........................................5, 6

*WesternGeco LLC v. ION Geophysical Corp.*,
   2016 WL 2344347 (S.D. Tex. May 4, 2016) ..........................................................................11

WesternGeco L.L.C. ("WesternGeco") opposes the Sureties' Motion to Release/Discharge the Supersedeas Bond. (D.I. 756)

## INTRODUCTION

The Sureties' bond has been discussed at length in prior briefs, motions and hearings. It is no form document—the terms were negotiated and crafted as part of a global compromise on myriad issues to wrap up years of litigation before the Court. It protects, up to an agreed limit, "the [damages] amount affirmed on appeal . . . ***or modified on appeal or remand***." The bond is a contract, and these express terms control.

After eleven months of submissions and argument, the Court confirmed that the bond language means what it says: the bond covers the damages affirmed on appeal, or as modified on appeal or remand. This includes the royalty damages affirmed on appeal. And it includes the enhanced damages pending on remand, *i.e.*, up to $65,000,000. The Sureties argued the contrary—that the enhanced damages should be excluded—and the Court disagreed. (D.I. 750)

Cutting-and-pasting prior submissions, the Sureties seek reconsideration of that decided issue—albeit without acknowledging as much to the Court. But nothing has changed to call the Court's prior ruling into question. Because the Sureties offer no new circumstances or errors in the Court's prior ruling, the Court can reject the motion *a priori* as an improper "vehicle for rehashing evidence or legal theories" that were already addressed. Ex. 1, *Jones v. Bank of N.Y. Mellon*, No. CIV.A. H-13-2414, 2015 WL 1737402, at *1 (S.D. Tex. Apr. 16, 2015). This litigation is nearing its conclusion after seven years—delaying distractions need not be entertained.

If the bond scope is reconsidered on the merits, WesternGeco remains entitled to the protections it negotiated for the bond, and the same order should issue. Simply put, damages

"modified on appeal or remand" means damages modified on appeal or remand, as discussed previously and below.  WesternGeco deserves the benefits of its bargained-for exchange.

## NATURE AND STAGE OF PROCEEDINGS

WesternGeco sued to halt ION's willful infringement on June 12, 2009.  (D.I. 1)  After years of discovery, motions, summary judgment, trial and post-trial motions, the parties submitted a Joint Stipulation for Final Judgment on April 23, 2014.  (D.I. 685)  That stipulation resolved pending disputes with a global compromise that addressed many issues, including the calculation of supplemental damages for ION's post-verdict infringement, an offset for WesternGeco's settlement in related litigation, the scope of the permanent injunction against ION, and the amount and form of ION's supersedeas bond.  (*Id.*)  The parties then spent three weeks negotiating the final bond language, compromising on various terms and departing significantly from boilerplate language.  (D.I. 688-1)  The final bond was $120,000,000—by agreement *less* than the final judgment—but up to that limit it covered "the amount affirmed on appeal . . . *or modified on appeal or remand*."  (*Id.*) (emphasis added)

On November 9, 2015, the Federal Circuit reversed the lost-profit portion of the damages but otherwise affirmed the judgment.  (D.I. 695)  On remand, WesternGeco moved to collect on the affirmed damages, while noting that the bond continued to protect other outstanding damages.  (D.I. 696)  On December 18, 2015, the Sureties opposed in part, arguing that the bond should be lowered because it did not protect any additional damages that could be awarded on appeal or remand.  (D.I. 699 at 1-2)  On February 12, 2016, the Sureties filed another motion seeking the same relief, *i.e.*, that the bond should not protect additional damages awarded on

appeal or remand.[1]  (D.I. 721)  On referral from this Court (D.I. 724), Magistrate Judge Palermo denied the Sureties' motion on May 4, 2016.  (D.I. 725 at 1-2)

The Sureties objected to Judge Palermo's Order on May 18, 2016.  (D.I. 726)  While the Court was considering that objection, the Supreme Court remanded this case to apply a new test for enhanced damages.  The parties and the Sureties discussed the impact of this ruling on the bond with the Court in June 2016.  *See* Ex. 2, 6/16/16 Hearing Tr. at 32:15-33:11, 36:3-37:19.  And on July 1, 2016, the Sureties argued to the Court that the bond "does not cover any enhanced damages" on remand.  (D.I. 734 at 4)  In a subsequent joint submission, the parties reiterated their positions, *i.e.*, WesternGeco stated that the bond should cover "royalty damages, interests and costs, ***and any enhanced damages determined on remand***", and the Sureties disagreed that enhanced damages were covered.  (D.I. 738 at 4-5) (emphasis added)

On November 10, 2016, the Court affirmed Judge Palermo's determinations and reset the bond to $65,000,000, *i.e.*, the affirmed royalty damages and any enhanced damages awarded on remand for ION's willful infringement.  (D.I. 738 at 4; D.I. 750)[2]  ION subsequently paid the $20.8 million in royalty damages, and the question of how much to enhance ION's damages for its willful infringement—up to an additional $43.8 million—has been fully briefed and submitted to the Court. (D.I. 751; D.I. 754; D.I. 757; D.I. 760)

---

[1]  In parallel, WesternGeco had petitioned the Supreme Court to reinstate the lost-profit damages and to remand on enhanced damages for willful infringement.

[2]  In granting WesternGeco's petition as to enhanced damages, the Supreme Court did not reach the issue of whether the lost-profit damages should be reinstated as well.  Accordingly, WesternGeco may re-petition the Supreme Court to address that issue.  But as previously noted, "in the interest of progressing this [case], WesternGeco agree[d] that the bond can be reduced" to only cover the affirmed royalty damages and enhanced damages, *i.e.*, up to a total of $65,000,000.  (D.I. 738 at 4, n.1)

On December 30, 2016, the Sureties moved again for an order excluding enhanced damages on remand from the scope of the bond. (D.I. 756)

Other than a ruling on enhanced damages, and the Sureties' present motion, nothing remains outstanding before the Court.

## ARGUMENT

### I. THE COURT ALREADY DENIED THE SURETIES THE RELIEF THEY SEEK

In their December 30, 2016 motion, the Sureties request that "the Supersedeas Bond [] be discharged/released" because it "does not cover any enhanced damages." (D.I. 756 at 14)  This is similar to the Sureties' arguments from December 2015 and February 2016 that the bond should be lowered to cover only royalty damages. (D.I. 699; D.I. 721)  It is identical to the Sureties' argument from July 2016. (D.I. 734 at 7) ("the Supersedeas Bond does not cover any enhanced damages")  And it is identical to the Sureties' position submitted in the August 2016 Joint Response to the Court. (D.I. 738 at 4-5) ("The Sureties contend that the Supersedeas Bond does not cover any enhanced damages that could conceivably be awarded to WesternGeco.")

The Court rejected these arguments. After all of the submissions above, the Court ordered that the bond protect royalty damages and enhanced damages. (*Compare* D.I. 738 at 4 (noting that "royalty damages, interest and costs, and any enhanced damages determined on remand . . . comes to a maximum of $64,624,545.48") *with* D.I. 750 at 2 (maintaining bond at $65,000,000)).  Having considered the same arguments and evidence the Sureties repeat in their Motion, the Court denied the Sureties the relief they now re-seek.

"Motions for reconsideration are usually 'not the proper vehicle for rehashing evidence or legal theories, or raising arguments that could have been presented earlier.'"  Ex. 1, *Jones*, 2015 WL 1737402, at *1; *see also* Ex. 3, *Taylor v. Tesco Corp. (US)*, No. CIV.A. H-11-00517, 2013 WL 4875035, at *1 (S.D. Tex. Sept. 11, 2013).  Although a court may "reexamine its prior

4

interlocutory rulings 'for any reason it deems sufficient,'" "this broad discretion must be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays." *Adhikari v. Daoud & Partners*, 95 F. Supp. 3d 1013, 1015 (S.D. Tex. 2015) (Ellison, J.); Ex. 4, *Tolleson v. Livingston*, No. 2:12-CV-201, 2014 WL 1386319, at *2 (S.D. Tex. Apr. 9, 2014) (citing *Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1415 (5th Cir. 1993)).

The resolution of this seven-year-old litigation need not be delayed so that the Sureties can re-submit arguments that the Court has already rejected. A comparison of the Sureties' motion and three previous submissions confirms that they are relying merely on "rehash[ed] evidence [and] legal theories." Ex. 1, *Jones*, 2015 WL 1737402, at *1. The Court accordingly need not suffer the "burdens and delays" of reconsidering decided issues. Ex. 4, *Tolleson*, 2014 WL 1386319, at *2.

For example, the Sureties argue that Fed. R. Civ. P. 62(d) warrants release of the bond because "that Rule does not authorize, require, or contemplate that security will be provided to a plaintiff ***relative to damages that may be awarded as a result of a plaintiff's separate cross-appeal.***" (D.I. 756 at 10) (emphasis added) The Sureties made nearly the same argument using the same language on July 1, 2016, *i.e.*, that Fed. R. Civ. P. 62 "does not authorize, require, or contemplate that a defendant will secure bonding ***relative to categories of damages that were not actually awarded to a plaintiff based upon the possibility such damages could be awarded in the future [appeal].***" (D.I. 734 at 4-5) (emphasis added) This argument was rejected by the Court's November 10, 2016 decision to maintain the bond at $65,000,000. (D.I. 750 at 2) It still fails for the same reasons previously briefed by WesternGeco, (*e.g.*, D.I. 735 at 3) and as summarized below. *See infra* at II.B.1.

5

Similarly, the Sureties currently argue that the "drafting history" of the bond supports excluding damages awarded on appeal or remand. (D.I. 756 at 13-14) Relying on parol evidence, the Sureties argue "[n]either the Defendant nor the Sureties intended to secure any enhanced damages that could potentially be awarded to the Plaintiff." (D.I. 756 at 14) Putting aside that this parol evidence is irrelevant in light of the unambiguous terms of the bond, the Sureties offered the exact same evidence and made the exact same argument to the Court last summer, *i.e.*, that "[n]either the Defendant nor the Sureties intended to secure any enhanced damages that could potentially be awarded to the Plaintiff following remand." (D.I. 734 at 6) The Court rejected this argument the first time the Sureties offered it. It is no better than it was then. (D.I. 735 at 3; *see also infra* at II.B.3)

The Sureties' present argument that "no enforceable/collectible judgment for enhanced damages existed at the time the Supersedeas Bond was issued" was also presented to this Court before the Court denied the Sureties' requested relief. (*Compare* D.I. 756 at 12 *with* D.I. 734 at 5) So was the Sureties' discussion of the Court's Order approving the bond. (*Compare* D.I. 756 at 11-12 *with* D.I. 726 at 3-4, 17-18) And so was the Sureties' parsing of the "disjunctive" and "conjunctive" nature of the bond language. (*Compare* D.I. 756 at 12-13 *with* D.I. 734 at 2-3) The seven pages of "[a]rgument and [a]uthorities" seeking a full release of the bond (D.I. 756 at 8-14) are almost entirely a cut-and-paste rehash of the Sureties' previous submissions.

The Sureties have provided no reason why the same arguments, evidence and case law presented in 2015 and 2016 compel a different result when re-presented in 2017. The Sureties have not even attempted to justify their request for rehearing nor distinguished their request from the "perpetual reexamination of orders and the resulting burdens and delays." Ex. 4, *Tolleson*, 2014 WL 1386319, at *2. In the interest of expedient resolution of all remaining issues, the

Court can deny the Sureties' motion *a priori* as an improper "vehicle for rehashing evidence or legal theories, or raising arguments that could have been presented earlier.'" Ex. 1, *Jones*, 2015 WL 1737402, at *1. And if necessary to re-address on the merits, the Sureties' repeated motion should re-fail for all of the reasons addressed previously and as set forth below.

## II. THE BOND IS A CONTRACT THAT EXPRESSLY PROTECTS DAMAGES "MODIFIED ON APPEAL OR REMAND"

### A. The Bond's Terms Unambiguously Cover Damages Modified "On Remand"

"[A] bond, being a contract, is controlled by the language in the bond." *Neeley v. Bankers Trust Co. of Tex.*, 848 F.2d 658, 659 (5th Cir. 1988) (citing *Aetna Cas. & Sur. Co. v. LaSalle Pump & Supply Co.*, 804 F.2d 315, 317 (5th Cir. 1986)); *Beatrice Foods Co. v. New England Printing & Lithographing Co.*, 930 F.2d 1572, 1574 (Fed. Cir. 1991) ("The terms of an appeal bond determine the extent to which the surety on the bond is bound."). Judge Palermo confirmed this as well. (D.I. 725 at 7) ("The ultimate disposition turns on the specific language in the bond.") Throughout the last year of submissions, the parties have consistently agreed with this principle. (*See, e.g.,* D.I. 699 at 7; D.I. 721 at 11; D.I. 722 at 6; D.I. 729 at 8)

The Court "must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). WesternGeco and ION carefully negotiated and drafted a unique bond that deviates significantly from any boilerplate language. The Court earlier noted that the bond has "language different from that which [the Court is] used to seeing." Ex. 2, 6/16/16 Hearing Tr. at 39:11-19. But as Judge Palermo found, the bond's bespoke terms "are not ambiguous." (D.I. 725 at 15) In other words, the bond is "so worded that it can be given a definite or certain legal meaning." *Ibe v. Jones*, 836 F.3d 516, 527 (5th Cir. 2016). By its express terms, the bond covers "the amount

7

affirmed on appeal . . . *or modified on appeal or remand*."  (D.I. 688-1) (emphasis added)  This language is clear and must be "give[n] effect."  *Gonzalez*, 394 F.3d at 392.

Enhanced damages have been remanded for disposition by the Court.  (*See* D.I. 751 at 4)  Any enhanced damages awarded by this Court—in response to WesternGeco's appeal and the remands from the Supreme Court and the Federal Circuit—would be a "modifi[cation] on appeal or remand," *i.e.*, within the scope of the bond.  In confirming the bond at $65,000,000, the Court properly ordered that these potential damage modifications on remand remain protected.

The Sureties seek to rewrite this bond language by reading in a phantom limitation that any "remand" referenced in the bond is limited to issues raised in "the Defendant's appeal," not WesternGeco's cross-appeal.  (D.I. 756 at 5, 12-13)  ***But Sureties point to no language in the bond that supports that position.***  As Judge Palermo similarly concluded in rejecting a related argument from the Sureties, "[t]he parties could have inserted the words 'from the Federal Circuit' in the bond if they intended to limit liability to appeal and remand from that court" as opposed to the Supreme Court:

> Thus, the Parties' use of the term "appeal" in conjunction with "or remand" indicates an intention to encompass appeal to and remand from the Supreme Court.  The language of the bond therefore encompasses liability up to and including proceedings resulting from potential Supreme Court remand.  The Sureties have failed to establish that their liability under the bond is limited to appeal to or remand from the Federal Circuit.  No such limitation is contained in the bond.  ***Rather, a plain reading of the actual language of the bond, using the common meaning of its terms, supports the Plaintiff's position that "appeal or remand" refers to all appeal or remand that may result from the decision of the trial court, up to and including appeal to or remand from the United States Supreme Court.***  Therefore, this Court denies the Sureties' Motion for Release/Discharge of the Bond Obligation.

(D.I. 725 at 14, 16) (emphasis added)  If the parties intended to limit the "remand" to only issues raised by ION's appeal and not by WesternGeco's cross-appeal—as the Sureties argue—they

could have used such language. Simply put, "[t]he Sureties would have the Court interpret the bond to include language that the parties did not." (*Id*. at 14)  Judge Palermo's admonition holds true today: "While we cannot extend the bond by implication, neither should we narrow it with words that the parties did not include." (*Id*.) (citing *Crane v. Buckley*, 203 U.S. 441, 447 (1906))[3]

The fulsome scope of the bond was a protection for which WesternGeco specifically negotiated and it is reflected in the plain language of the bond. (*See* D.I. 722 at 6-7) WesternGeco made certain concessions (*e.g.*, limiting the maximum coverage of the bond to $120 million) in exchange for certain protections (*e.g.*, covering existing damages as well as those WesternGeco sought on appeal). The Court has recognized this as well, stating that "it would be very odd that -- given the history of this litigation that -- that WesternGeco would ever have agreed that a favorable ruling on -- from the Supreme Court would not be enforceable against the bond. Why would -- why WesternGeco have agreed to that?" Ex. 2, 6/16/16 Hearing Tr. at 39:11-19. The favorable willfulness ruling from the Supreme Court on appeal falls within the plain language of the bond's express terms, and any enhanced damages resulting therefrom on remand remain protected, as recognized in the Court's November 10, 2016 order.

### B. Parol Evidence Fails To Contradict The Bond's Express Terms

The bulk of the Sureties' brief focuses on arguments unrelated to the bond language itself, *e.g.*, the Sureties argue that the Federal Rules, the Order approving the bond, and the drafting history of the bond should trump the bond's plain language. (D.I. 756 at 8) But it is

---

[3] The Sureties' argument that the issue of enhanced damages relates to a separate appeal with no relation to the other damages awarded is belied by ION's own statements to the Court. At the June 16, 2016 Hearing, ION explained: "If there is to be a consideration of willfulness, the willfulness would be, as the current status quo is, on the royalty award. It would be part and parcel of the same dollars, the same underlying results, the same claim, the same sales as the royalty award." Ex. 2, 6/16/16 Hearing Tr. at 17:3-7.

"[t]he terms of an appeal bond [that] determine the extent to which the surety on the bond is bound." *Beatrice Foods Co.*, 930 F.2d at 1574. As discussed above, those terms are clear and control. But to the extent any aspect of the bond were ambiguous or any of these parol sources were consulted, they fail to support the Sureties' position as addressed in turn below.

1. Fed. R. Civ. P. 62 Does Not Contradict
   The Plain Language Of The Bond

First, the Sureties argue that "[a] supersedeas bond issued under Fed. R. Civ. P. 62 does not provide a plaintiff with an additional source of recovery of any new damages that may be awarded as a result of a plaintiff's separate cross-appeal." (D.I. 756 at 9) In other words, the Sureties contend that "the Defendant's appeal is the only relevant appeal," for construing the bond's usage of "on appeal or remand." (*Id.*) But Fed. R. Civ. P. 62 merely addresses the procedure for a supersedeas bond; it does not specify the bond's terms or requirements, nor does it trump the express language that the parties choose. As Judge Palermo summarized:

> No federal statute, provision of the Federal Rules of Civil Procedure, or provision of the Federal Rules of Appellate Procedure defines the conditions that trigger a surety's obligation under a supersedeas bond. The terms of an appeal bond determine the extent to which the surety on the bond is bound.

(D.I. 725 at 8) (quoting *Beatrice Foods Co.*, 930 F.2d at 1574) Indeed, the Sureties ***admit***—as they have had to in the past—"the terms of Fed. R. Civ. P. 62 do not, in [and] of themselves, govern a surety's liability under a supersedeas bond." (D.I. 756 at 9; *see also* D.I. 734 at 4)

This case involves a unique bond with "language different from" that of typical supersedeas bonds. *See* Ex. 2, 6/16/16 Hearing Tr. at 39:11-19. As WesternGeco has previously explained, "[t]he evolution of the bond language was not arbitrary. The amendments were a deliberate result of the *quid pro quo* negotiations between the parties attempting to reach a global compromise on numerous issues." (D.I. 722 at 14) Thus, the generalized provisions of Rule

10

62—and Sureties' arguments focusing on the bare minimum protections provided by that rule—are of little help in applying the express language in the bond at hand.

Similarly, the case law that the Sureties cite to argue for release of the bond based on "the purpose of a supersedeas bond . . . under Fed. R. Civ. P. 62(d)" is inapposite. (D.I. 756 at 10) As Judge Palermo stated, in discerning the parties' intent "the court must consider whether the language in the bond was boilerplate such that case law interpreting stock language should be considered as it may have influenced the language the bonding company chose, ***or was not boilerplate such that the court must construe the language to implement the parties' intent as reflected in the specific words included in the bond.***" (D.I. 725 at 8-9) (emphasis added) In this case, the parties intentionally *rejected* boilerplate language to craft a unique bond. At no point did the Sureties ever demonstrate that the bond language in any of the cases they cite is similar to the language at issue here. (*See* D.I. 756 at 10-11) Case law interpreting and applying contract language that the parties chose *not* to use is of little relevance to the terms the parties *did* include.

Other case law cited by the Sureties deals with bonds when a judgment was entirely reversed or vacated on appeal. (*See id*. at 11) But liability was affirmed here. WesternGeco has repeatedly distinguished Sureties' cases (D.I. 722 at 13-15; D.I. 729 at 14-15) and Judge Palermo confirmed that they are inapposite as well. (D.I. 725 at 12)

The Sureties cite Judge Palermo's Order (*WesternGeco LLC v. ION Geophysical Corp.*, 2016 WL 2344347 (S.D. Tex. May 4, 2016) (D.I. 725)) for the proposition that "[c]ourts release supersedeas bonds when the bond has served its purpose and no outstanding judgment remains," to argue that the "purpose" of a bond—as expressed in Rule 62(d)—relates only to issues that ION raised on appeal. (D.I. 756 at 10-11) But this tautology—the bond is necessary to serve its purpose—offers no insight into the bounds of that purpose. As discussed above, the purpose of

11

this bond is expressed in its plain language. Sureties offer no authority that endorsed applying Rule 62(d) or any alleged "purpose" of that Rule to deny a bondholder the benefits of bargained-for contract terms. This bond in this case is expressly purposed to protected damages "modified on appeal or remand." (*See* D.I. 725 at 16) It should be applied to effectuate that intent.

### 2. The Court's Subsequent Order Does Not Contradict The Plain Language Of The Bond

Second, the Sureties argue that "[t]his Court's Order approving the Supersedeas Bond further confirms that the Defendant's appeal is the only relevant appeal." (D.I. 756 at 11) (emphasis omitted) In particular, the Sureties suggest that the Court's use of the language "pending appeal" necessarily limits the bond to coverage of damages associated with ION's appeal. (*Id.*) But again, the bond is the controlling instrument and it is a contract interpreted under general principles of contract law, *i.e.*, "[t]he extent of liability under the supersedeas bond must be determined in accordance with the real or presumed intention of the parties." (D.I. 725 at 8) (citing *Aviation Credit Corp. v. Conner Air Lines, Inc.*, 307 F.2d 685, 688 (5th Cir. 1962)). Here, the plain language of the bond indicates the "intention[s] of the parties." (*Id.*) The Court's Order approving the bond is not only extrinsic parol evidence that cannot contradict clear bond language; it logically has no bearing on those intentions ***because the Court's Order was issued after the terms were negotiated and accepted by the parties***. Moreover, the Court's Order merely states that the bond is in effect "pending appeal"—the language is not limited to "pending the Defendant's appeal." (D.I. 689) Even if a Court could re-write a bond's scope with such an order—an unlikely assumption given that bonds are matters of contract between the parties—the language this Court employed in this Order evidences no intent to do so.

Sureties relatedly argue that "[t]he word 'appeal' in this Court's Order approving the Supersedeas Bond should have the meaning of the word 'appeal' in the Supersedeas Bond."

12

(D.I. 756 at 12)  But they provide no reason why the word "appeal" should be limited in *either* clause.  Indeed, for the same reasons that Judge Palermo found that "appeal or remand" in the bond "refers to all appeal or remand that may result from the decision of the trial court," the word "appeal" in the Court's Order approving the bond should also be viewed as not limited to "the Defendant's appeal."  (D.I. 725 at 16; D.I. 756 at 11-12)

The Sureties also attempt to manufacture a contradiction in the Court's order by arguing that "[i]f the word 'appeal' included the Plaintiff's separate cross-appeal" then the stay would remain in effect and WesternGeco should not have been paid the confirmed royalty damages. (D.I. 756 at 11-12)  In other words, the Sureties argue that if the bond continues to protect damages "modified on appeal or remand", then it was premature for WesternGeco to collect the royalty damages that were affirmed on appeal.  This argument is inapposite—as previously discussed at length, the bond's trigger for payment is separate from the scope of the bond's protection.  (*See* D.I. 722 at 7-8; D.I. 729 at 13)  Judge Palermo confirmed this fact (D.I. 725 at 10-11, 14-16), and the Court adopted that aspect of Judge Palermo's report and recommendation. (D.I. 750 at 1-2)  Thus, the payment of the royalty damages—once they were resolved through all appeals—is supported by the bond language.  So is the continuing protection of enhanced damages as they remain pending on remand.  No contradiction exists, and this treatment is consistent with established law that allows for the execution of partial, resolved damages while other issues remain.  *King Instrument Corp. v. Otari Corp.*, 814 F.2d 1560, 1563 (Fed. Cir. 1987).  Nothing prevents the collection of different forms of damages as each is finalized.  Even if the subsequent Court Order approving the bond were relevant to determining the parties' intent in drafting the bond—which it is not—it does not support the Sureties' argument.

13

### 3. The Drafting History—If Considered—Does Not Contradict The Plain Language Of The Bond

Third, the Sureties argue that the drafting history "confirms that the Defendant never intended to secure any damages that were not awarded to the Plaintiff at the trial court level but may later be awarded as a result of the Plaintiff's cross-appeal." (D.I. 756 at 13)  As an initial matter, "[c]ourts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity." (D.I. 725 at 14-15) (quoting *Montalvo v. Bekins Moving Sols., Inc.*, 613 F. Supp. 2d 892, 897 (S.D. Tex. May 8, 2009)); *see also Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010). As Judge Palermo concluded, the bond's "terms are not ambiguous." (D.I. 725 at 15)  Therefore, Sureties argument should be rejected at the outset because "[t]he parol evidence rule precludes consideration of extrinsic evidence to contradict, vary or add to the terms of an unambiguous written agreement absent fraud, accident or mistake." *Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 708 (S.D. Tex. 2002), *aff'd*, 71 F. App'x 441 (5th Cir. 2003).

But even if considered, the parol evidence merely confirms the plain language of the bond.  The Sureties cite to a statement from ION that they "don't think we are bonding anything you lost or did not get in the trial court for which you are taking a cross-appeal." (D.I. 756 at 13-14)  But this was made in the context of WesternGeco seeking to broaden the scope of the bond's coverage to include amounts "modified on appeal or remand." (*See* D.I. 735 at 3)  That is, WesternGeco proposed to expand the bond's coverage, ION initially hesitated (with the language above), **but ION ultimately acceded to WesternGeco's proposal and accepted WesternGeco's proposed modifications**.  ION's initial reservations about what it "thought" it was bonding cannot overcome what ION actually agreed to later.  The plain language of the bond demonstrates the parties' final positions after extensive negotiation and horse-trading.  Under

14

that final language, the enhanced damages pending on remand after appeal fall under the scope of damages "modified on appeal or remand," and remain protected by the parties' agreed-on bond language.

## CONCLUSION

After seven years of litigation, the Court is poised to close the book on this case. WesternGeco negotiated and received a bond that protected damages, including as "modified on appeal or remand." The Court correctly afforded that language its plain meaning and WesternGeco the benefit of its bargain. No reconsideration is necessary, and the bond should remain at $65,000,000 while the Court resolves the final issue of willfulness and enhanced damages.

Dated: February 3, 2017

*Of Counsel:*

Gregg F. LoCascio, P.C.
gregg.locascio@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
Tel.: (202) 879-5000
Fax: (202) 879-5200

Timothy K. Gilman
timothy.gilman@kirkland.com
Sarah K. Tsou
sarah.tsou@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Tel.: (212) 446-4800
Fax: (212) 446-4900

Respectfully submitted,

*/s/ Timothy K. Gilman*
Lee L. Kaplan
lkaplan@skv.com
TBA No. 11094400
SD Texas ID No. 1840
SMYSER KAPLAN
  & VESELKA, L.L.P.
Bank of America Center
700 Louisiana, Suite 2300
Houston, TX  77002
Tel.: (713) 221-2323
Fax: (713) 221-2320

*Attorneys for Plaintiff
WesternGeco L.L.C.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure on this 3rd day of February, 2017.

                                                  */s/ Timothy K. Gilman*
                                                  Timothy K. Gilman